## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN, INFANTS, AND            )
CHILDREN GROCERS ASSOCIATION            )
P.O. Box 5416                           )
Norman, Oklahoma  73070,                )
                                        )
NUTRITIONAL FOOD DISTRIBUTORS, INC.     )
111 N. Peters, Suite 300                )
Norman, Oklahoma  73069,                )
                                        )
COUNTY FOOD SERVICES, INC.              )
1112 N. Flamingo Rd.                    )
Rogers, Arkansas 72756, and             )
                                        )
DILLARD FOODS, INC.                     )
103 Utley Ct.                           )
Hot Springs, Arkansas  71913,           )
                                        )
                    Plaintiffs,         )
                                        )
          v.                            )          Civil Action No. _____
                                        )
FOOD AND NUTRITION SERVICE              )
3101 Park Center Drive                  )
Alexandria, Virginia 22303,             )
                                        )
                    Defendant.          )
_____     )

## COMPLAINT

The National Women, Infants and Children Grocers Association ("NWGA"), Nutritional

Food Distributors, Inc. ("Nutritional Food Distributors"), County Food Services, Inc. ("County Food

Services"), and Dillard Foods, Inc. ("Dillard Foods") for their Complaint against the Food and

Nutrition Service ("FNS"), allege as follows:

### I.     SUMMARY OF THE CASE

1.      This case involves the purported promulgation of an interim final rule ("Rule") that

implements new vendor cost containment requirements in the Special Supplemental Nutrition

1

Program for Women, Infants, and Children ("WIC Program"), which was required by section 203 of

the Child Nutrition and WIC Reauthorization Act of 2004 ("Reauthorization Act"). The Rule will

drive down food reimbursements to unsustainable levels for a discrete segment of food retailers,

vendors that derive virtually all of their annual food sales revenue from the WIC Program. The Rule

refers to these vendors as "above-50-percent vendors." These vendors are referred to in this

Complaint as "WIC-only stores," in keeping with industry terminology.

      2.     Plaintiffs seek to have this Court enjoin FNS from implementing the Rule on

December 30, 2005 because the Rule is procedurally and substantively deficient in the following

regards:

> a. First, the Rule is unlawful because it is inconsistent with the underlying statute and with Congressional intent.
>
> b. Second, FNS failed to conduct a Regulatory Flexibility Analysis consistent with the requirements of the Regulatory Flexibly Act ("RFA"). Had FNS done so, it would have promulgated a rule that is consistent with Congressional intent and does not have a draconian impact on WIC-only stores.
>
> c. Third, FNS failed to comply with the notice and comment rulemaking requirements of the Administrative Procedure Act ("APA").
>
> d. Fourth, in the alternative, FNS failed to comply with the longstanding policy of the United States Department of Agriculture ("USDA") that utilizes public comment even when not required by law.

      3.     Plaintiffs do not seek wholesale exemption from vendor cost containment. Rather,

they only seek fairness and equity in the rulemaking process so that they are not arbitrarily forced

out of business.

## II.    **DESCRIPTION OF THE PARTIES**

4.    Plaintiff NWGA is a District of Columbia corporation with its principal place of business in Norman, Oklahoma. NWGA is a small, voluntary, not-for-profit trade association that consists of retail grocery stores that are primarily, if not exclusively, WIC-only stores. It operates exclusively for the benefit of its members by supporting the WIC Program and representing its membership, and the related industry, in advocating for fair and balanced policies for the WIC Program. NWGA and most of its members meet the Small Business Act's definition of "small business concern."

5.    Plaintiff Nutritional Food Distributors is incorporated under the laws of the State of Oklahoma, and its corporate office is located at 111 N. Peters, Suite 300, Norman, Oklahoma 73069. The company operates five WIC-only stores in the State of Oklahoma. Nutritional Food Distributors was incorporated in August 1992 and has been in business continuously since then. Nutritional Food Distributors is exclusively engaged in the business of providing specialty vendor services to WIC Program participants in Oklahoma. Nutritional Food Distributors is a "small business concern."

6.    Plaintiff County Food Services is incorporated under the laws of the State of Arkansas, and its corporate office is located at 1112 N. Flamingo Rd., Rogers, Arkansas 72756. County Food Services is a successor to Solvents on Site, incorporated in May 1997. Since October 2002, the corporation has been continuously operating as County Food Services and engaged exclusively in the business of providing specialty vendor services to WIC Program participants in Arkansas. The company operates five WIC-only stores in the State of Arkansas. County Food Services is a "small business concern."

7.    Plaintiff Dillard Foods is incorporated under the laws of the State of Arkansas with corporate offices at 103 Utley Ct., Hot Springs, Arkansas 71913. Dillard Foods has been in business

3

continuously since February 2002. The company operates four WIC-only stores in the State of Arkansas. Dillard Foods is a "small business concern."

8.      Defendant FNS is an agency of the United States within USDA to which day-to-day oversight of the WIC Program has been delegated. FNS has offices at 3101 Park Center Drive, Alexandria, Virginia.

### III.      FACTUAL BACKGROUND

9.      The WIC Program provides supplemental foods, nutrition education, and referrals to health clinics and other social services to pregnant and postpartum women, infants, and young children at nutritional risk. It is widely regarded as one of the federal government's most effective health and nutrition programs.

10.      There are two basic eligibility requirements for the WIC Program. One is that the individual be determined to be at nutritional risk by a health professional. The other is based on income, and a recipient's income must be at or below 185 percent of the U.S. Poverty Income Guidelines. The income guidelines are adjusted annually. Currently, for example, a family of four must have an annual income of $35,798 or less to meet the WIC Program's income eligibility guidelines.

11.      The WIC Program is expected to serve roughly 8.5 million participants in Fiscal Year 2006 ("FY 2006"). In FY 2005, the last full year for which statistics are available, the WIC Program served approximately 8 million participants, which includes approximately 1.9 million women, 2.1 million infants, and 4 million children ages five and under.

12.      Approximately half of all infants born in the United States each year are WIC beneficiaries.

4

13.     To meet the demand for WIC services, Congress has appropriated over $5.2 billion to fund the program for FY 2006. State agencies are expected to receive nearly $2 billion in additional funding through statutorily mandated rebates from infant formula manufacturers. These funds are also channeled into the program, which makes its total FY 2006 budget roughly $7 billion.

14.     FNS estimates that implementation of the Rule as drafted will save $75 million per year, slightly more than one percent of available funding.

15.     There are approximately 45,000 retail vendors authorized to redeem WIC food instruments, which typically are paper vouchers redeemable at authorized vendors for specific food products.

16.     According to FNS, there are approximately 1,200 WIC-only stores, which account for a small percentage of all authorized WIC vendors. Only 20 states have WIC-only stores.

17.     The number of WIC-only stores has grown in recent years because they offer a more efficient and respectful shopping venue for WIC participants than traditional grocery stores.

18.     Because of the WIC Program's use of a narrowly tailored list of specific food products, a WIC transaction is the most complicated transaction a traditional retail store typically encounters.

19.     WIC recipients cite the difficulties of redeeming vouchers at traditional retail vendors as a barrier to participation. These difficulties range from the embarrassment of being unable to purchase a certain item because it is the wrong size to the humiliation of being overtly identified as a WIC recipient (even though stores are prohibited from making such an identification).

20.     WIC-only stores focus on their customers' needs by stocking only WIC-approved foods and often hire current and former WIC participants. This helps ensure that WIC participants

are assisted by someone who is knowledgeable about the Program and, importantly, sympathetic to providing a dignified shopping experience.

21.    WIC-only stores are more likely than traditional vendors to fully redeem a recipient's food benefits. This is because traditional vendors often do not stock the right package sizes and/or brands of authorized foods.

22.    By hiring from the communities they serve, many WIC-only stores are also able to provide a shopping experience that is free of any language barriers, and to assist non-English speaking participants in understanding the voucher redemption process. WIC-only stores typically have store personnel that can communicate in languages appropriate for their clientele.

23.    It is common for WIC-only stores to be located in close proximity to local WIC clinics, military bases, and other areas with a high percentage of WIC recipients. WIC-only stores are traditionally located in underserved urban areas and provide a shopping alternative to participants in areas where there are extremely limited choices.

## IV.    JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction under 5 U.S.C. § 706 and 28 U.S.C. §§ 1331(a) and 1361. Declaratory judgment as a remedy is authorized under 28 U.S.C. §§ 2281 and 2282.

25.    Venue is proper in this District under 28 U.S.C. § 1391(e).

## V.    STATUTORY AND REGULATORY BACKGROUND

26.    The WIC Program is authorized by section 17 of the Child Nutrition Act of 1966 ("Child Nutrition Act"), P.L. No. 89-642 (codified at 42 U.S.C. § 1786). The purpose of the WIC Program is to provide "supplemental foods and nutrition education . . . [and to] serve as an adjunct to good health care, during critical times of growth and development, to prevent the occurrence of

health problems, including drug abuse, and improve the health status of" program recipients. *Id.* § 1786(a).

27.     The authority to administer the Program on the federal level has been delegated to FNS, which is required to "provide assistance to State and local agencies and evaluate all levels of Program operations to ensure that the goals of the Program are achieved in the most effective and efficient manner possible." 7 C.F.R. § 246.3(a).

28.     State agencies are responsible for implementing the program within their states, and, among other things, are responsible for authorizing the participation of retail food stores ("authorized vendors"), creating a vendor agreement that governs the contractual relationship between the State and authorized vendors, establishing price limitations for paying authorized vendors, training authorized vendors, and monitoring compliance. *See id.* §§ 246.3(b) and 246.12.

29.     Among other services, WIC Program participants receive supplemental foods (a "food package") that are often tailored to meet individual recipient needs. For example, a pregnant woman may receive a food package that includes fluid milk, eggs, cereal, juice, and dry beans. *Id.* § 246.10(c)(5). These benefits typically are provided in the form of a food instrument (*e.g.*, a single paper voucher for all of the products in a participant's food package) that can be redeemed at an authorized vendor.

30.     On June 30, 2004, the President signed into law the Child Nutrition and WIC Reauthorization Act of 2004, Pub. L. No. 108-265 ("Reauthorization Act"). This law reauthorized the WIC Program through 2009, and made a number of substantive changes to the underlying Child Nutrition Act.

31.     Section 203(e)(10) of the Reauthorization Act mandated new vendor cost containment requirements that oblige state administering agencies to: (1) establish a "vendor peer

7

group system," and (2) establish competitive price criteria and allowable reimbursement levels for each vendor peer group. 42 U.S.C. § 1786(h)(11)(A)(i). A "vendor peer group system" is the system in which state agencies categorize WIC authorized vendors into groups of similar vendors for the purpose of determining reimbursement levels (e.g., Wal-Mart with Super Target; corner store with corner store). See new 7 C.F.R. § 246.2 (definition of "vendor peer group system"), 70 Fed. Reg. at 71,722.

32.     WIC-only stores are singled out for special treatment in achieving additional program cost containment because they do not experience the price competition pressures that apply to traditional vendors. However, the Reauthorization Act states that it is not intended to "compel a State agency to achieve lower food costs if program participants redeem supplemental food vouchers" at WIC-only stores rather than other retail vendors. 42 U.S.C. § 1786(h)(11)(A)(i). The goal is to ensure that vendor reimbursement levels "do not result in average payments per voucher to [WIC-only stores] that are higher than average payments per voucher to comparable vendors" that are not WIC-only stores. Id. § 1786(h)(11)(E) (emphasis added).

33.     The legislative history of the Reauthorization Act outlined Congress' expectations for how FNS was to achieve the objectives of the vendor cost containment provision. The history is clear that FNS was to develop objective and readily discernable criteria to implement the provision and that WIC-only stores were to always be compared fairly to comparable stores. See, e.g., 150 CONG. REC. E1328 (2004) (statement of Rep. Bohener).

34.     The Reauthorization Act included two important implementation clauses that relate to the vendor cost containment provision. First, FNS "may promulgate interim final regulations. . . ." Reauthorization Act § 501(b)(2) (emphasis added); see 42 U.S.C.A. § 1758 note. Second, FNS

"shall promulgate final regulations" not later than two years after the date of enactment. Reauthorization Act § 502(b)(2); *see* 42 U.S.C.A. § 1758 note.

35.     State agencies were given until December 30, 2005 to comply with the vendor cost containment provision.  42 U.S.C. § 1786(h)(11)(G).

36.     The Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601-612, requires that federal agencies consider alternatives when developing and implementing a regulatory initiative.  When a rule is promulgated an agency must provide "a description of and an estimate of the number of small entities to which the rule will apply" and "a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected."  5 U.S.C. §§ 604(a)(3) and (5).

37.     Judicial review can be commenced under the RFA by "a small entity that is adversely affected or aggrieved . . . ."  *Id.* § 611(a)(1).  A "small entity" is defined as having "the same meaning as the terms 'small business' [and] 'small organization' . . . ."  *Id.* § 601(6).

38.     The term "small business" is defined as a "small business concern" under the Small Business Act, 15 U.S.C. §§ 631 *et seq.*, and "small organization" is "any not-for-profit enterprise which is independently owned and operated and is not dominant in its field . . . ."  *Id.* §§ 601(3) and (4).

39.     FNS did not conduct a Regulatory Flexibility Analysis despite its acknowledgement that the RFA applies.  In the preamble, FNS stated the "rule has been reviewed with regard to the

requirements of the Regulatory Flexibility Act" and that it will publish a Regulatory Flexibility Analysis for comment at a later date. 70 Fed. Reg. at 71,709.

40.    FNS also stated in the preamble that it plans to "collect data on the implementation of this interim final rule and the options States select in order to better assess the impact for the final rulemaking . . . ." *Id.*

41.    USDA has a longstanding written policy to solicit public comment in the rulemaking process even when it is not required to do so by law. Since 1971, all USDA agencies, including FNS, have been required to "give notice of proposed rule making and to invite the public to participate in rule making where not required by law." 36 Fed. Reg. 13,804 (July 24, 1971) (emphasis added). The stated reason for this policy is that greater public participation "will outweigh any disadvantages such as increased costs or delays." *Id.*

42.    USDA's policy states that exemptions from notice-and-comment rulemaking will be strictly limited to "where an agency finds good cause that compliance would be impracticable, unnecessary or contrary to the public interest [and] will be used sparingly, that is, only when there is a substantial basis therefor." *Id.* (emphasis added.)

43.    FNS transmitted a draft of the Rule to the Office of Management and Budget ("OMB") on August 8, 2005. OMB signed off on the Rule and returned it to FNS on November 4, 2005, but an FNS official did not approve it for publication until November 22, 2005. After that, FNS waited until November 29, 2005 to publish the Rule in the Federal Register.

44.    Seventeen months after the Reauthorization Act was signed into law and only 30 days before the statutory implementation date, FNS published the Rule to implement the new vendor cost containment provision on November 29, 2005. 70 Fed. Reg. 71,708. Among other things, the Rule will require that state agencies demonstrate that their cost containment systems ensure that payments

10

to WIC-only stores "do not result in average payments to these vendors that are higher than average payments per food instrument to comparable vendors." *New* 7 C.F.R. § 246.12(g)(4)(vi), 70 Fed. Reg. at 71,724 (emphasis added). The Rule will require that this determination be based on comparison of WIC-only stores with "food instruments redeemed by all authorized vendors . . . ." *Id.* (emphasis added).

45.    The effective date of the Rule is December 29, 2005. 70 Fed. Reg. 71,708.

46.    The preamble to the Rule stated "Under Secretary [of Agriculture for Food, Nutrition, and Consumer Services] Eric M. Bost has determined, in accordance with 5 U.S.C. 553(b), that prior notice-and-comment would be unnecessary, and that good cause exits for making this rule effective without first publishing a proposed rule." *Id.* at 71,712.

47.    FNS stated that it will accept comments on the Rule. To be assured of consideration, comments must be submitted to FNS within a year of publication (*i.e.*, by November 29, 2006.) *Id.* at 71,708.

## VI.    **PLAINTIFFS' EFFORTS TO WORK WITH FNS**

48.    NWGA's members made numerous unsuccessful attempts to work cooperatively with FNS in the development of the Rule.

49.    On March 9, 2005, NWGA members met with Roberto Salazar, the FNS Administrator, to discuss the rulemaking process. Administrator Salazar did not commit to any course of action at that meeting, but said FNS would consider reviewing any comments submitted by NWGA.

50.    On April 1, 2005, counsel for some NWGA members wrote to FNS providing options for consideration during the rule development process. FNS never responded to this letter.

11

51.    On June 22, 2005, NWGA members met with officials at the Office of Management and Budget (OMB) to discuss the status and development of the Rule.

52.    Some NWGA members were invited by members of the National WIC Association to the Mid Atlantic Regional WIC Nutritional Conference on Vendor Management Training and WIC Vendor Provisions of Public Law 108-265 held July 19 – July 21, 2005.  This meeting was led by FNS to discuss development of the Rule.  When the NWGA members arrived at the meeting, they were instructed to leave because FNS would not discuss development of the Rule with WIC-only store operators.

## VII.    IRREPARABLE HARM

53.    The Rule will have a significant adverse impact on NWGA members and their hundreds of thousands of customers.

54.    The inappropriate comparison of the prices of WIC-only stores to all other authorized vendors will result in reducing reimbursement rates to WIC-only stores to unsustainable levels.

55.    Unless enjoined by this Court, FNS's actions will cause irreparable harm to NWGA members by forcing many of them out of business on or about January 1, 2006.  In turn, this will result in some of their customers dropping out of the WIC Program, thereby losing the health benefits associated with the Program.

56.    NWGA and its members do not have an adequate remedy at law for these injuries.

## VIII.    FIRST CAUSE OF ACTION:  THE RULE IS INCONSISTENT WITH THE UNDERLYING STATUTE.

57.    Plaintiffs reallege and restate paragraphs 1 through 56 and incorporate them herein.

58.    The Rule will require that WIC-only stores maintain pricing at or below the average prices charged by all stores in the state.  In each state, a relatively small number of large "big box

stores" typically account for most of the below-average prices charged and a large percentage of the vouchers redeemed.  The above-average prices are generally charged by smaller WIC-authorized retailers.  The Rule will require WIC-only stores to charge lower prices than comparable stores, typically traditional supermarkets.  The latter category comprises the vast majority of WIC-authorized vendors in the state and is only incidentally affected by the Rule.

59.    The cost containment paragraph of the Reauthorization Act directs that its provisions not "be construed to compel a State agency to achieve lower food costs if program participants redeem supplemental vouchers at [WIC-only stores] rather than at [traditional WIC-authorized vendors that are not WIC-only stores.]"  42 U.S.C. § 1786(h)(11)(A)(i).

60.    The Reauthorization Act provides:  "The State agency shall establish a vendor peer group system" for the purpose of cost comparisons and containment.  Specifically, it requires states to impose controls so that prices at WIC-only stores "do not result in average payments per voucher that are higher than average payments per voucher to comparable vendors other than [WIC-only stores]." 42 U.S.C. § 1786(h)(10)(E) (emphasis added).

61.    The Rule incorporates the vendor peer group system and the specific test for limiting per voucher payments of WIC-only stores.  However, it makes a nullity of that central requirement by limiting WIC-only store payments per voucher to the average payment per voucher of all traditional vendors in the state.  This second price limitation is not provided for in the Reauthorization Act, is contrary to congressional intent, renders irrelevant the Reauthorization Act's express requirement for a comparison to prices of "comparable stores," and requires a comparison of vouchers without accounting for significant differences between the vouchers.  Thereby, the Rule limits prices at WIC-only stores to a level lower than the average cost of vouchers redeemed by comparable vendors. *See e.g.*, *new* 7 C.F.R. § 246.12(g)(4)(vi), 70 Fed. Reg. at 71,724.

13

62.    By requiring an inappropriate comparison of vendors, the Rule violates the Child Nutrition Act. Therefore, FNS's purported promulgation of the Rule was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A).

## IX.    SECOND CAUSE OF ACTION:  FNS FAILED TO CONDUCT A REGULATORY FLEXIBILITY ANALYSIS

63.    Plaintiffs reallege and restate paragraphs 1 through 62 and incorporate them herein.

64.    The RFA requires an agency to conduct and publish a Regulatory Flexibility Analysis whenever the agency promulgates a final rule under 5 U.S.C. § 553. The Rule FNS published on November 29, 2005 is a final rule – it goes into effect on December 29, 2005, FNS expects full compliance with the Rule, and the Rule will have the force and effect of law.

65.    FNS acknowledged in the preamble to the Rule that the RFA applies, but it broadly stated "FNS does not believe this rule will have a significant economic impact on a substantial number of small entities." 70 Fed. Reg. at 71,709.

66.    FNS recognized that "the rule may have a significant economic impact on a small number of vendors that have been authorized to participate in the WIC Program." *Id*. This "small number" of vendors may constitute a small percentage of all WIC vendors, but it is essentially all of the stores that will be subject to the Rule.

67.    The RFA requires that the Regulatory Flexibility Analysis focus on small entities affected by a rule (here, WIC-only stores), not a broader universe of all entities such as those referenced in the preamble. Accordingly, FNS was required to conduct and publish a Regulatory Flexibility Analysis, including a review of alternatives to the Rule and identification of the steps

FNS took to minimize the significant economic impact on WIC-only stores, consistent with the objectives of the Reauthorization Act.

68.     The preamble also stated that a Regulatory Flexibility Analysis will be published for comment at some point in the future. *Id.* A post-implementation review of the impact on WIC-only stores affords them no protection.

69.     FNS's failure to conduct a Regulatory Flexibility Analysis and fulfill its admitted obligation to comply with the RFA violates the RFA.  5 U.S.C. § 604.

70.     FNS's failure to conduct and publish a Regulatory Flexibility Analysis also constitutes agency action not in accordance with law and without observance of procedure required by law, in violation of the APA.  5 U.S.C. §§ 706(2)(A) and (D).

### X.     THIRD CAUSE OF ACTION: FNS VIOLATED THE APA'S NOTICE-AND-COMMENT RULEMAKING REQUIREMENTS

71.     Plaintiffs reallege and restate paragraphs 1 through 70 and incorporate them herein.

72.     The APA requires that federal agencies engage in notice-and-comment rulemaking except "when the agency for cause finds (and incorporates the finding in a brief statement of reasons thereof in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B).  *See also* 5 U.S.C. §§ 553(c) and (d).

73.     The APA provides that a "[s]ubsequent statute may not be held to supercede or modify [the APA's requirements], except to the extent that it does so <u>expressly</u>."  5 U.S.C. § 559 (emphasis added).

74.     In purporting to promulgate the Rule, FNS stated in the preamble to the Rule that prior notice-and-comment would be "unnecessary" and that "good cause" existed for bypassing prior notice-and-comment procedures.  The only justification provided to support that assertion regarding

the existence of "good cause" was the reference to section 501(b) of the Reauthorization Act, which permits, but does not require, FNS to issue an interim final rule.

75.    Nothing in the Reauthorization Act expressly overrides the APA's notice-and-comment requirements.  In order for FNS to issue an interim final rule without notice-and-comment, the APA requires that FNS have "good cause" that notice-and-comment are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B).

76.    FNS's reliance on section 501(b) of the Reauthorization Act is insufficient to meet the agency's burden of establishing "good cause" under 5 U.S.C. § 553(b)(3)(B).

77.    By failing to establish "good cause" for forgoing the notice-and-comment requirements of the APA, FNS's actions are not in accordance with law and without observance of procedure required by law, in violation of the APA.  5 U.S.C. §§ 706(2)(A) and (D).

XI.    **FOURTH CAUSE OF ACTION:  IN THE ALTERNATIVE, FNS FAILED TO FOLLOW USDA'S POLICY OF UTILIZING NOTICE-AND-COMMENT PROCEDURES EVEN WHEN NOT REQUIRED BY LAW**

78.    Plaintiffs reallege and restate paragraphs 1 through 77 and incorporate them herein.

79.    In the alternative, USDA has a definitive, long-standing policy requiring its agencies to undertake notice-and-comment rulemaking even when such procedures are not required by law. The policy requires USDA agencies to have a "substantial basis" for bypassing notice-and-comment procedures, and to explain any such decision not to utilize notice-and-comment procedures.

80.    The only justification relied upon by FNS in its determination that notice-and-comment were "unnecessary" under the APA was section 501(b) of the Reauthorization Act.  FNS did not provide any "substantial basis" to justify why the agency decided to forgo notice-and-comment as prescribed in USDA's policy.

16

81.     FNS's reliance on section 501(b) of the Reauthorization Act is insufficient to meet its burden of establishing a "substantial basis" for foregoing notice-and-comment procedures under USDA's policy.

82.     By failing to provide a "substantial basis" for its decision not to adhere to USDA's notice-and-comment policy, FNS's actions are arbitrary and capricious, an abuse of discretion, and not in accordance with law, in violation of the APA.  5 U.S.C. § 706(2).

## XII.   FIFTH CAUSE OF ACTION:  THIS COURT SHOULD STAY THE EFFECTIVE DATE OF FNS'S RULE PENDING REVIEW

83.     Plaintiffs reallege and restate paragraphs 1 through 82 and incorporate them herein.

84.     The APA provides that "on such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending a conclusion of the review proceedings."  5 U.S.C. § 705 (emphasis added).

85.     To prevent irreparable injury to Plaintiffs, the effective date of the Rule should be stayed pending review.

## XIII.   REQUESTED RELIEF

**WHEREFORE, Plaintiffs respectfully request that this Honorable Court:**

a.     **Declare** that the Rule is unlawful because FNS has failed to comply with the RFA, the requirements of the APA for notice-and-comment rulemaking, and USDA's policy of utilizing notice-and-comment even when not required by law.

b.     **Declare** that the Rule is unlawful because it is inconsistent with the Reauthorization Act and the Child Nutrition Act.

c.     **Enjoin** FNS from implementing the Rule.

17

      d.    **Enjoin** FNS from implementing any rule under Section 203 of the Reauthorization Act until FNS has complied with the RFA, the Reauthorization Act, the Child Nutrition Act, the notice-and-comment rulemaking provisions of the APA, and USDA's policy of utilizing notice-and-comment rulemaking even when not required by law.

      e.    **Award** reasonable attorneys' fees and costs of prosecuting this action to Plaintiffs.

      f.    In the alternative, **stay** the effective date of the Rule pending judicial review.

      g.    **Grant** such other and further relief that this Court deems just and proper.

December 16, 2005

                            Respectfully submitted,

                            Philip C. Olsson, D.C. Bar No. 172163
                            Arthur Y. Tsien, D.C. Bar No. 411579
                            OLSSON, FRANK AND WEEDA, P.C.
                            1400 Sixteenth Street, N.W.
                            Suite 400
                            Washington, D.C.  20036
                            202/789-1212
                            202/234-3537 (FAX)

                            Attorneys for National Women, Infants, and
                            Children Grocers Association, Nutritional
                            Food Distributors, Inc., County Food
                            Services, Inc., and Dillard Foods, Inc.