IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS, AND CHILDREN GROCERS ASSOCIATION, NUTRITIONAL FOOD DISTRIBUTORS, INC., COUNTY FOOD SERVICES, INC., and DILLARD FOODS, INC.,<br><br>Plaintiffs,<br>v.<br><br>FOOD AND NUTRITION SERVICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-2432 (EGS)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL DECLARATION OF EANN ROBINSON

I, EAnn Robinson, declare as follows:

1. Based on our operational experience and knowledge of the market, we expect to operate at a substantial loss upon implementation of the Rule, due to its limitation of payments to the average of payments to non-WIC-only vendors.

2. Oklahoma further tightened their cost containment practices immediately after the WIC Reauthorization Act was passed in June 2004. For the fiscal year ending July 2004, our pre-tax profits were 3.6% of sales. For the fiscal year ending July 2005, our pre-tax profits were ½ % of sales.

3. I establish my pricing by purchasing WIC items at supermarkets in my peer group, averaging their prices and adopting those price levels. My inventory purchases are from Affiliated Foods, Inc. and Hiland Dairy. Their wholesale prices are approximately the same as Wal Mart retail prices. I am not aware of opportunities for reducing costs sufficiently to approach Wal-Mart prices.

4. I do not know the precise level of average payments to non-WIC-only stores in Oklahoma. I have requested that information, but the Oklahoma WIC officials indicated that FNS told them not to provide me that information unless they have to. I have filed a formal request for that information, but it has not yet been provided.

5. However, I know that average per voucher payments to all non-WIC-only stores would require an operational loss. Like the supermarkets in my peer group, my prices are significantly higher than Wal-Mart and the large box stores. In Oklahoma, WalMart Supercenters and WalMart Neighborhood Markets combine for a total of 48.89% of every grocery dollar spent in the state. Shelby Report Southwest December 2005, Vol. 30, No. 12. Shelby Publishing, 517 Green St., Gainesville, GA 30501, www.shelbypublishing.com.

6. Since all Oklahoma Wal Marts are WIC authorized and many other grocers are not, I expect the average payment to non-WIC-only vendors to approximate Wal-Mart prices. For our stores to meet Wal Mart prices would result in a significant operational loss.

7. Because my company operates 5 of the 6 WIC-only stores in Oklahoma, there is no potential for the State Health Department to allow me payments that are above the average of all non-WIC-only vendors and compensate for doing so by imposing higher prices on the only other WIC-only store in Oklahoma. I believe that the only other WIC-only store in Oklahoma has lower sales than any of the stores my company operates.

8. The practice of calculating food costs by comparing food package purchases redeemed at WIC Only stores to the same food package purchase as traditional

stores without consideration that the food packages are more completely filled at WIC Only stores is flawed. Any cost savings attained by disregarding this factor is simply created by short changing the participant. The FNS may be able to serve more people but participants won't be achieving the full benefit of the good nutrition intended by the program because they won't receive all of the food the nutritionists prescribe.

9. The Oklahoma State Vendor Manager has informed me that his arguments with the FNS regional office regarding WIC-only stores have emphasized his observation that program participants are more likely to fully fill their food prescription on vouchers redeemed at WIC-only stores than stores redeemed at regular stores.

10. The statement that the agency has been "open-minded in accepting comments regarding the interim rule" is outrageous. I contacted and joined the National WIC Association (paying $2,500 in dues) earlier this year in an effort to work with the people who write these rules and enforce them. I felt strongly then and still do that there is a way to have WIC-only stores and serve the best interests of the WIC program and its clients. I also flew to Washington D.C. in March along with many of my fellow store operators in an effort to engage the FNS in a meaningful dialogue regarding this rule. I flew to St. Louis in May for yet another National WIC Association/FNS meeting in an attempt to participate in the process of developing this rule. Two of my colleagues were invited to leave a meeting in July where this rule and guidance were being discussed. FNS officials consistently rejected our attempts to have a substantive dialogue regarding the Rule.

Under penalty of perjury, I declare the foregoing statements are true to the best of my knowledge and belief.

Dated: December 26, 2005

_____
EAnn Robinson