IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS, AND CHILDREN GROCERS ASSOCIATION, NUTRITIONAL FOOD DISTRIBUTORS, INC., COUNTY FOOD SERVICES, INC., and DILLARD FOODS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FOOD AND NUTRITION SERVICE, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 05-2432 (EGS) ) ) ) ) ) |

## SUPPLEMENTAL DECLARATION OF MICHAEL DILLARD

I, Michael Dillard, declare as follows:

1. Implementation of the FNS cost containment rule (the Rule) will cause certain, great and actual harm to Dillard Foods, Inc. on December 30, 2005 because the Rule will require Dillard Foods, Inc. to operate at a substantial loss upon implementation.

2. Dillard Foods, Inc. estimates its monthly gross sales at $220,000, all of which is WIC Program sales. For 2005, Dillard Foods, Inc. has achieved a profit of approximately 6% of gross sales, approximately $13,200 per month. According to the payment schedule provided by the State of Arkansas, the average payment made to all regular vendors in Arkansas is approximately 15.2% less than payments made to our stores. Therefore, I estimate that under the Rule, Dillard Foods, Inc. will experience a $33,400 decline in monthly gross revenue and result in a monthly operating loss of approximately $20,200.

3. The principal operational costs of Dillard Foods, Inc. are inventory, building lease, utilities, maintenance, liability/workers compensation insurance, and

personnel costs. Dillard Foods, Inc. typically has only one person operating a store. I am aware of no significant opportunities to reduce operating costs or to obtain food products at a lower price.

4. On November 29, 2005, I received the attached e-mail string, which included the attached e-mail letter to State Health Officials from US Department of Agriculture Under Secretary for Food, Nutrition and Consumer Services, Eric Bost.

5. The Rule's recoupment provision makes clear that the Rule's payment reducing effect will apply as of December 30, 2005. FNS has been clear that it will closely monitor states and in a letter to State agencies Under Secretary Bost stated that the agency "will determine if overpayments occurred and will pursue recovery of any overpayments." As a condition of remaining an authorized WIC Program vendor, I was required by the State of Arkansas to agree to refund to the State any payments I may receive in excess of the average per voucher payment in Arkansas made to non-WIC-only vendors each month. The substantial operating loss that the Rule will cause requires us to close our business as soon as the Rule takes effect.

6. Based on our discussions with State of Arkansas administrators, we regard as absurd the assertion that the State of Arkansas may, under the Rule, provide Dillard Foods, Inc. payments substantially above the average payment to all other vendors. Dillard Foods' stores constitute approximately 17% percent of Arkansas WIC-only store sales. I am not aware of any basis for allowing higher prices to Dillard Foods, Inc. than other Arkansas WIC-only stores.

7. All WIC-only stores in Arkansas have the same wholesale supplier of non-dairy foods – Affiliated Foods, Inc. Affiliated Foods, Inc. wholesale prices are

2

comparable to the retail prices of Wal-Mart. No WIC-only stores in Arkansas can survive at the payment limitation established by the Rule. Certainly, no WIC-only store in Arkansas could survive at payment levels below the average payment limitation established by the Rule.

8.  Together, WalMart Supercenters and WalMart Neighborhood Markets have 53.04% of the grocery sales in Arkansas, while Kroger accounts for 12.26% of grocery sales, according to Shelby Report Southwest December 2005, Vol. 30, No. 12. Shelby Publishing, 517 Green St., Gainesville, FA 30501, www.shelbypublishing.com.

9.  Dillard Foods, Inc. faces significant costs associated with going out of business, including lease buy out costs. Since the Rule would force Dillard Foods, Inc. to operate at a substantial loss effective December 30, 2005, making a prudent business decision, any delay in closing down the Dillard Foods, Inc. business would only result in deepening losses and increasing the potential for bankruptcy.

10. Dillard Foods, Inc. is continuing to deplete inventory. At this time, two of the four stores operated by Dillard Foods, Inc. have been closed and inventory consolidated in the remaining two stores. In our closed stores, the windows have been papered over and a sign posted, "Closed for the Holidays." These stores can be totally restocked and open to the public within a 48 hour time frame, if the Rule is not implemented.

11. We plan to close our remaining stores as inventory is depleted. We anticipate closing one store on Tuesday, December 27, 2005 and the remaining store on or about Friday, December 30, 2005.

3

12. The sole reason for closing our business is implementation of the Rule, which dictates the pricing that I can charge for my products.

Under penalty of perjury, I declare the foregoing statements are true to the best of my knowledge and belief.

Dated: December 26, 2005

*Michael Dillard*
Michael Dillard