**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL WOMEN, INFANTS, AND CHILDREN GROCERS ASSOCIATION, NUTRITIONAL FOOD DISTRIBUTORS, INC., COUNTY FOOD SERVICES, INC., and DILLARD FOODS, INC., | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 05-2432 (EGS) |
| | ) | |
| FOOD AND NUTRITION SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXCERPTS OF ADMINISTRATIVE RECORD CITED BY PLAINTIFFS

Plaintiffs National Women, Infants, and Children Grocers Association, Nutritional Food Distributors, Inc., County Food Services, Inc., and Dillard Foods, Inc. respectfully submit the following excerpts from the Administrative Record that Plaintiffs have cited in support of their motion for summary judgment.

| | |
|---|---|
| AR 01013-01017 | E-mail from Patricia Bonner to Debbie Whitford and Jane Monahan (4-27-05) regarding "FY 2004 Redemption Data for Alabama, Florida and North Carolina" |
| AR 01038-01042 | "Potential Above-50-Percent Vendors—FY 2004" |
| AR 01729-01739 | "Significant/Economically Significant Regulation Routing Slip" (includes OGC Legal Sufficiency, Cost Benefit Assessment, Agency Head Clearance, and Civil Rights Assessment) |
| AR 01831 | E-mail from Eric Norman to Geraldine Tompkins (10-14-05) regarding "Number of >50% Vendors" |
| AR 01837-01838 | E-mail from Michelle Stewart to Geraldine Tompkins (9-28-05) regarding "Questions in Preparation of Vendor Meeting" |

AR 02072-02078      E-mail from Phillip Kaufman to Debbie Whitford (11-9-05) regarding "Staff Analysis on Comparable Vendors for Above-50% Stores"

Dated:  January 17, 2006            Respectfully submitted,

Philip C. Olsson, Bar No. 172163
Arthur Y. Tsien, Bar No. 411579
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212
(202) 234-3537 (fax)

Attorneys for  National Women, Infants, and
Children Grocers Association, Nutritional Food
Distributors, Inc., County Food Services, Inc., and
Dillard Foods, Inc.

**Tompkins, Geraldine**

| | |
|---|---|
| **From:** | Bonner, Patricia |
| **Sent:** | Wednesday, April 27, 2005 11:06 AM |
| **To:** | Whitford, Debbie; Monahan, Jane |
| **Cc:** | Benton-Davis, Sandy; Tompkins, Geraldine |
| **Subject:** | RE: Request for Redemption Data |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

The requested reports from AL, FL and NC are attached. Please note that the AL report contains estimates, as was discussed with Geraldine. Please let me know if you have any questions. We are currently working with GA on identification of WIC only stores. It looks like they will have 33 WIC only vendors. I am requesting that they provide to me the names so that the TIP report can be revised.

Patty

---

**From:** Whitford, Debbie
**Sent:** Tuesday, April 12, 2005 9:16 PM
**To:** Monahan, Jane
**Cc:** Bonner, Patricia; Benton-Davis, Sandy; Tompkins, Geraldine
**Subject:** FW: Request for Redemption Data

As you know, FNS is in the process of developing the WIC Vendor Cost Containment Interim Rule to implement the cost-containment provisions of the Child Nutrition and WIC Reauthorization Act of 2004. As part of this process, we must analyze the potential impact of the rule on WIC food costs. To assist us with the analysis, we are requesting data from the Alabama, Florida, and North Carolina WIC State agencies on the average payments made to WIC-only stores, non-WIC-only stores, and all authorized vendors in the month of September 2004.

As shown on the attached survey forms for the three State agencies, we would like to receive data on average payments for the five most frequently redeemed non-formula food instruments in September 2004. We would appreciate receiving this information by April 29, 2005.

The Georgia WIC Program did not report having any WIC-only stores in its fiscal year 2004 TIP Report; but we are aware that Georgia had at least one WIC-only store in 2004. Please clarify for us what is happening in Georgia with respect to WIC-only vendors, so that we can determine whether the State Agency needs to revise its TIP data submission.

If you have any questions, please contact Geraldine Tompkins at 703-305-2743 or by email. Thank you.

Deb

01013

## FY 2004 Redemption Data for WIC-Only and Non-WIC-Only Vendors

To help FNS determine the cost of WIC-only and non-WIC-only stores, please provide the following information on the average redemption price for food instruments by vendor type.

*Before asking about average prices, we need a little bit of information about the vendors in your state[1]:*

| | |
|---|---|
| How many vendors did you have authorized in your state as of September 2004? | 1,936 |
| For all of these vendors combined, what was the total amount of redemptions paid in September 2004? | $12,563,388.62 |
| How many of the authorized vendors were WIC-Only vendors in September 2004? | 57 |
| Of these WIC-Only vendors, what was the total amount of redemptions paid in September 2004? | $1,104,518.49 |

*In the grid below, please provide the food instrument number and a description of the food items on the five (5) most commonly redeemed non-formula food instruments, along with the average redemption value by vendor type for September 2004:*

| Food instrument description: | Average redemption price at all vendors | Average redemption price at WIC Only vendors | Average redemption at Non- WIC Only ven |
|---|---|---|---|
| **EAXA -** ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE) UP TO THIRTY-SIX (36) OUNCES CEREAL TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE ONE (1) POUND CHEESE | $677,775 / 36,403 = $18.62 | $42,274 / 1,571 = $26.90 | 635,501 / 34,832 = $18.24 |
| TWO (2) GALLONS MILK (NONFAT, LOWFAT, OR WHOLE) THREE (3) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE ONE (1) DOZEN GRADE "A" LARGE OR EXTRA-LARGE EGGS | | | |
| ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE) TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE ONE (1) DOZEN GRADE "A" LARGE OR EXTRA-LARGE EGGS ONE (1) 1-LB BAG DRIED BEANS OR PEAS OR ONE (1) 18-OZ JAR PEANUT BUTTER | | | |
| **XAXX –** TWO (2) GALLONS MILK (NONFAT, LOWFAT, OR WHOLE) THREE (3) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE ONE (1) DOZEN GRADE "A" LARGE OR EXTRA-LARGE EGGS | $225,105/ 17,440 = $12.91 | $19,328 / 1105 = $17.49 | $205,777 / 16,335 = $12.59 |
| **EAXX –** ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE) UP TO THIRTY-SIX (36) OUNCES CEREAL | $228,671 / 12,500 = $18.29 | $16,442 / 613 = $26.82 | $212,229 / 11887 = $17.85 |

[1] Data from the State agency's fiscal year 2004 TIP report has been inserted. Please revise as needed.

| | | | |
|---|---|---|---|
| TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE<br>ONE (1) POUND CHEESE | | | |
| TWO (2) GALLONS MILK (NONFAT, LOWFAT, OR WHOLE)<br>THREE (3) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE<br>ONE (1) DOZEN GRADE "A" LARGE OR EXTRA-LARGE EGGS | | | |
| **EXXA – 12,098**<br>ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE)<br>UP TO THIRTY-SIX (36) OUNCES CEREAL<br>TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE<br>ONE (1) POUND CHEESE | $228,899 / 12,400 = $18.46 | $20,964 / 778 = $26.94 | $207,935 / 11622 = $17.89 |
| ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE)<br>TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE<br>ONE (1) DOZEN GRADE "A" LARGE OR EXTRA-LARGE EGGS<br>ONE (1) 1-LB BAG DRIED BEANS OR PEAS OR ONE (1) 18-OZ JAR  PEANUT BUTTER | | | |
| **EXXX –**<br>ONE (1) GALLON MILK (NONFAT, LOWFAT, OR WHOLE)<br>UP TO THIRTY-SIX (36) OUNCES CEREAL<br>TWO (2) 11.5 OZ/12 OZ FROZEN OR 46 OZ CONTAINERS OR 11.5 OZ CONCENTRATE JUICE<br>ONE (1) POUND CHEESE | $257,776 / 13,911 = $18.53 | $29,656 / 1100 = $26.96 | $228,120 / 12811 = $17.80 |

*Please provide the following information so that we can contact you if we have any questions about your answers:*

| State: | |
|---|---|
| **Contact Person:** | |
| **Phone Number:** | |

## FY 2004 Redemption Data for WIC-Only and Non-WIC-Only Vendors

**To help FNS determine the cost of WIC-only and non-WIC-only stores, please provide the following information on the average redemption price for food instruments by vendor type.**

*Before asking about average prices, we need a little bit of information about the vendors in your state[1]:*

| | |
|---|---|
| How many vendors did you have authorized in your state as of September 2004? | 958 |
| For all of these vendors combined, what was the total amount of redemptions paid in September 2004? | 5,991,716 |
| How many of the authorized vendors were WIC-Only vendors in September 2004? | 19 |
| Of these WIC-Only vendors, what was the total amount of redemptions paid in September 2004? | 262,280 |

*In the grid below, please provide the food instrument number and a description of the food items on the five (5) most commonly redeemed non-formula food instruments, along with the average redemption value by vendor type for September 2004:*

| Food instrument description: | Average redemption price at all vendors | Average redemption price at WIC Only vendors | Average redemption price at Non-WIC Only vendors |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*Please provide the following information so that we can contact you if we have any questions about your answers:*

| | |
|---|---|
| State: | Alabama |
| Contact Person: | Dana Driscoll |
| Phone Number: | 334-206-7955 |

---

[1] Data from the State agency's fiscal year 2004 TIP report has been inserted. Please revise as needed.

**FY 2004 Redemption Data for WIC-Only and Non-WIC-Only Vendors**

**To help FNS determine the cost of WIC-only and non-WIC-only stores, please provide the following information on the average redemption price for food instruments by vendor type.**

*Before asking about average prices, we need a little bit of information about the vendors in your state[1]:*

| | |
|---|---|
| How many vendors did you have authorized in your state as of September 2004? | 2,292 |
| For all of these vendors combined, what was the total amount of redemptions paid in September 2004? | $18,532,293 |
| How many of the authorized vendors were WIC–Only vendors in September 2004? | 71 |
| Of these WIC–Only vendors, what was the total amount of redemptions paid in September 2004? | $2,131,558 |

*In the grid below, please provide the food instrument number and a description of the food items on the five (5) most commonly redeemed non-formula food instruments, along with the average redemption value by vendor type for September 2004:*

| Food instrument description: | Average redemption price at all vendors | Average redemption price at WIC Only vendors | Average redemption price at Non-WIC Only vendors |
|---|---|---|---|
| (008) 1 gal milk, 1 lb cheese, 1 can juice, 1 doz eggs | $10.64 | $12.18 | $10.43 |
| (032) 1 ½ gal milk, 1 can cheese | $7.57 | $8.80 | $7.40 |
| (161) 2 gal milk, 1 lb cheese, 2 cans juice, 36 oz cereal, 1 doz eggs, 1 lb beans | $24.76 | $30.06 | $23.86 |
| (162) 2 gal milk, 1 lb cheese, 2 cans juice, 36 oz cereal, 1 doz eggs, 18 oz peanut butter | $25.31 | $31.65 | $24.59 |
| (333) 3 12-oz cans powdered Good Start Supreme infant formula | $25.97 | $30.19 | $25.45 |

*Please provide the following information so that we can contact you if we have any questions about your answers:*

| | |
|---|---|
| **State:** | Florida |
| **Contact Person:** | Bill Eustis |
| **Phone Number:** | (850) 245-4202 |

---

[1] Data from the State agency's fiscal year 2004 TIP report has been inserted.  Please revise as needed.

# Potential Above-50-Percent Vendors - FY-2004

| State Agency | WIC Vendors Authorized | WIC Vendors Authorized by FSP | No WIC/FSP Match[1] | WIC-to-FSP + WIC Redemptions Ratio Above 50% | Total Potential Above-50% Vendors | GS | CS | SM | CO | CG | SF | MC | CM | CR | OF | HF | PS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Northeast Region** | | | | | | | | | | | | | | | | | |
| Connecticut | 910 | 700 | 210 | 183 | 393 | 84 | 80 | 5 | 5 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Indian Township | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maine | 309 | 283 | 26 | 4 | 30 | 0 | 0 | 0 | 1 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Massachusetts | 1,032 | 886 | 146 | 382 | 508 | 94 | 155 | 8 | 101 | 5 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| New Hampshire | 276 | 211 | 65 | 30 | 95 | 9 | 16 | 0 | 7 | 5 | 0 | 0 | 0 | 4 | 1 | 0 | 0 |
| New York | 5,285 | 4,775 | 510 | 1,235 | 1,745 | 1,093 | 82 | 22 | 0 | 16 | 12 | 1 | 0 | 0 | 0 | 0 | 0 |
| Pleasant Point, Maine | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rhode Island | 243 | 225 | 18 | 58 | 76 | 22 | 27 | 1 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Seneca Nation, New York | 5 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Vermont | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Northeast Region** | 8,068 | 7,093 | 975 | 1,872 | 2,847 | 1,302 | 360 | 36 | 122 | 31 | 12 | 2 | 0 | 5 | 1 | 0 | 0 |
| **Mid-Atlantic Region** | | | | | | | | | | | | | | | | | |
| Delaware | 82 | 74 | 8 | 1 | 9 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| District of Columbia | 40 | 29 | 11 | 0 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryland | 645 | 481 | 164 | 1 | 165 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| New Jersey | 844 | 626 | 218 | 110 | 328 | 72 | 4 | 29 | 1 | 0 | 1 | 1 | 2 | 0 | 0 | 0 | 0 |
| Pennsylvania | 1,638 | 1,409 | 227 | 14 | 241 | 11 | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Puerto Rico | 736 | 0 | 736 | 0 | 736 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virgin Islands | 12 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Virginia | 837 | 786 | 51 | 38 | 89 | 10 | 4 | 8 | 0 | 13 | 3 | 0 | 0 | 0 | 0 | 0 | 0 |
| West Virginia | 464 | 430 | 34 | 49 | 83 | 24 | 7 | 0 | 0 | 14 | 3 | 1 | 3 | 0 | 0 | 0 | 0 |
| **Total Mid-Atlantic Region** | 5,296 | 3,847 | 1,449 | 213 | 1,662 | 118 | 15 | 39 | 2 | 27 | 4 | 3 | 5 | 0 | 0 | 0 | 0 |

[1] Either the vendor was not authorized by the FSP, or the FSP authorization number in TIP did not match the number in STARS.

**FSP Category Codes:**

| | |
|---|---|
| CG - Combination Grocery | OF - Other Firm |
| CM - Combination Grocery/Merchandise | PS - Produce Stand |
| CO - Convenient Other | SF - Specialty Food |
| CR - Combination Grocery/Restaurant | SM - SuperMarket |
| CS - Convenient Store | |
| GS - Grocery Store | |
| HF - Health Foods | |
| MC - Military Commissary | |

01038

# Potential Above-50-Percent Vendors - FY-2004

01039

| State Agency | WIC Vendors Authorized | WIC Vendors Authorized by FSP | No WIC/FSP Match[1] | WIC-to-FSP + WIC Redemptions Ratio Above 50% | Total Potential Above-50% Vendors | Potential Above 50% Vendors — WIC Vendors with WIC/FSP and WIC Redemptions Ratio Above 50% | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | CS | SM | CO | CG | SF | MC | CM | CR | OF | HF | PS |
| **Southeast Region** | | | | | | | | | | | | | | | | | |
| Alabama | 958 | 843 | 115 | 41 | 156 | 15 | 9 | 2 | 0 | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cherokee, North Carolina | 5 | 5 | 0 | 3 | 3 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Choctaw, Mississippi | 10 | 10 | 0 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Florida | 2,292 | 2,001 | 291 | 90 | 381 | 37 | 14 | 25 | 0 | 7 | 0 | 5 | 1 | 1 | 0 | 0 | 0 |
| Georgia | 1,930 | 1,504 | 426 | 166 | 592 | 47 | 38 | 22 | 20 | 35 | 2 | 0 | 1 | 1 | 0 | 0 | 0 |
| Kentucky | 1,284 | 1,099 | 185 | 78 | 263 | 38 | 18 | 0 | 4 | 12 | 0 | 1 | 4 | 1 | 0 | 0 | 0 |
| Mississippi | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| North Carolina | 2,163 | 1,873 | 290 | 368 | 658 | 75 | 176 | 20 | 5 | 34 | 49 | 1 | 4 | 4 | 0 | 2 | 2 |
| South Carolina | 942 | 662 | 280 | 25 | 305 | 8 | 9 | 8 | 1 | 1 | 2 | 1 | 2 | 1 | 0 | 0 | 0 |
| Tennessee | 1,187 | 1,066 | 121 | 87 | 208 | 35 | 23 | 5 | 9 | 7 | 0 | 0 | 3 | 1 | 0 | 0 | 0 |
| **Total Southeast Region** | **10,771** | **9,063** | **1,708** | **860** | **2,568** | **257** | **287** | **81** | **38** | **111** | **53** | **8** | **15** | **8** | **0** | **2** | **2** |
| **Midwest Region** | | | | | | | | | | | | | | | | | |
| Illinois | 1,953 | 1,653 | 300 | 284 | 584 | 71 | 2 | 50 | 156 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Indiana | 692 | 592 | 100 | 38 | 138 | 6 | 0 | 6 | 26 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Michigan | 2,128 | 1,586 | 542 | 17 | 559 | 3 | 11 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Minnesota | 1,213 | 940 | 273 | 243 | 516 | 114 | 50 | 40 | 5 | 28 | 3 | 0 | 3 | 0 | 0 | 0 | 0 |
| Ohio | 1,558 | 1,379 | 179 | 142 | 321 | 62 | 30 | 5 | 34 | 3 | 0 | 0 | 0 | 3 | 0 | 0 | 0 |
| Wisconsin | 1,151 | 951 | 200 | 240 | 440 | 124 | 31 | 35 | 35 | 10 | 2 | 2 | 1 | 1 | 0 | 0 | 0 |
| **Total Midwest Region** | **8,695** | **7,101** | **1,594** | **964** | **2,558** | **380** | **124** | **138** | **257** | **50** | **6** | **2** | **7** | **1** | **0** | **0** | **0** |

[1] Either the vendor was not authorized by the FSP, or the FSP authorization number in TIP did not match the number in STARS.

FSP Category Codes:
CG - Combination Grocery
CM - Combination Grocery/Merchandise
CO - Convenient Other
CR - Combination Grocery/Restaurant
CS - Convenient Store
GS - Grocery Store
HF - Health Foods
MC - Military Commissary
OF - Other Firm
PS - Produce Stand
SF - Specialty Food
SM - SuperMarket

# Potential Above-50-Percent Vendors - FY-2004

| State Agency | WIC Vendors Authorized | WIC Vendors Authorized by FSP | No WIC/FSP Match[1] | Potential Above 50% Vendors | | WIC Vendors with WIC/FSP and WIC Redemptions Ratio Above 50% | | | | | | | | | | | |
| | | | | WIC-to-FSP + WIC Redemptions Ratio Above 50% | Total Potential Above-50% Vendors | GS | CS | SM | CO | CG | SF | MC | CM | CR | OF | HF | PS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Southwest Region** | | | | | | | | | | | | | | | | | |
| ACL, New Mexico | 7 | 5 | 2 | 1 | 3 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Arkansas | 557 | 498 | 59 | 14 | 73 | 11 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Cherokee Nation, Oklahoma | 72 | 67 | 5 | 3 | 8 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| Chickasaw, Oklahoma | 28 | 27 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Choctaw Nation, Oklahoma | 42 | 42 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| Eight Northern Pueblo, NM | 11 | 10 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Five Sandoval, New Mexico | 6 | 8 | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Isleta, New Mexico | 5 | 5 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| Inter-Tribal Council, Oklahoma | 11 | 10 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Louisiana | 898 | 879 | 19 | 106 | 125 | 56 | 29 | 8 | 0 | 6 | 0 | 1 | 3 | 1 | 2 | 0 | 0 |
| Muscogee Creek, Oklahoma | 58 | 57 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| New Mexico | 265 | 252 | 13 | 31 | 44 | 18 | 3 | 2 | 0 | 3 | 1 | 1 | 0 | 0 | 3 | 0 | 0 |
| Oklahoma | 578 | 529 | 49 | 18 | 67 | 12 | 0 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Osage Nation, Oklahoma | 34 | 32 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Otoe-Missouria, Oklahoma | 20 | 19 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Potawatomi, Oklahoma | 35 | 31 | 4 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| San Felipe, New Mexico | 5 | 0 | 5 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Santo Domingo, New Mexico | 4 | 0 | 4 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Texas | 2,653 | 2,302 | 351 | 191 | 542 | 58 | 67 | 43 | 1 | 14 | 0 | 4 | 0 | 1 | 3 | 0 | 0 |
| WCD, Oklahoma | 42 | 39 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Zuni, New Mexico | 9 | 9 | 0 | 2 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| **Total Southwest Region** | 5,340 | 4,819 | 521 | 369 | 890 | 159 | 100 | 56 | 2 | 27 | 2 | 7 | 6 | 2 | 8 | 0 | |

01040

[1] Either the vendor was not authorized by the FSP, or the FSP authorization number in TIP did not match the number in STARS.

FSP Category Codes:
CG - Combination Grocery
CM - Combination Grocery/Merchandise
CO - Convenient Other
CR - Combination Grocery/Restaurant
CS - Convenient Store
GS - Grocery Store
HF - Health Foods
MC - Military Commissary
OF - Other Firm
PS - Produce Stand
SF - Speciality Food
SM - SuperMarket

# Potential Above-50-Percent Vendors - FY-2004

| State Agency | WIC Vendors Authorized | WIC Vendors Authorized by FSP | No WIC/FSP Match[1] | WIC-to-FSP + WIC Redemptions Ratio Above 50% | Total Potential Above-50% Vendors | WIC Vendors with WIC/FSP and WIC Redemptions Ratio Above 50% | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Potential Above 50% Vendors | | GS | CS | SM | CO | CG | SF | MC | CM | CR | OF | HF | PS |
| **Mountain Plains Region** | | | | | | | | | | | | | | | | | |
| Cheyenne River, South Dakota | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Colorado | 439 | 403 | 36 | 27 | 63 | 5 | 0 | 20 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Eastern Shoshone Tribe, WY | 5 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Iowa | 728 | 630 | 96 | 63 | 159 | 36 | 2 | 11 | 12 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Kansas | 408 | 340 | 66 | 24 | 90 | 14 | 0 | 2 | 1 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 |
| Missouri | 818 | 688 | 132 | 12 | 144 | 5 | 2 | 1 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Montana | 266 | 246 | 20 | 4 | 24 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Nebraska | 440 | 387 | 53 | 40 | 93 | 19 | 0 | 6 | 13 | 1 | 1 | 1 | 0 | 1 | 0 | 0 | 0 |
| North Dakota | 211 | 182 | 29 | 23 | 52 | 18 | 0 | 1 | 0 | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 0 |
| Northern Arapahoe, Wyoming | 6 | 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Omaha Santee, Nebraska | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rosebud, South Dakota | 11 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| South Dakota | 221 | 214 | 7 | 31 | 38 | 26 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| Standing Rock, North Dakota | 8 | 7 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Utah | 327 | 286 | 41 | 26 | 67 | 15 | 2 | 3 | 3 | 4 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| Ute Mountain, Colorado | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Three Affiliated Tribes, ND | 12 | 12 | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 |
| Winnebago, Nebraska | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Wyoming | 95 | 90 | 5 | 8 | 13 | 4 | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| **Total Mountain Plains Region** | 3,997 | 3,511 | 486 | 259 | 745 | 147 | 6 | 53 | 26 | 9 | 2 | 11 | 3 | 2 | 0 | 0 | 0 |

01041

[1] Either the vendor was not authorized by the FSP, or the FSP authorization number in TIP did not match the number in STARS.

FSP Category Codes:
CG - Combination Grocery
CM - Combination Grocery/Merchandise
CO - Convenient Other
CR - Combination Grocery/Restaurant

CS - Convenient Store
GS - Grocery Store
HF - Health Foods
MC - Military Commissary

OF - Other Firm
PS - Produce Stand
SF - Speciality Food
SM - SuperMarket

# Potential Above-50-Percent Vendors - FY-2004

01042

| State Agency | WIC Vendors Authorized | WIC Vendors Authorized by FSP | No WIC/FSP Match[1] | WIC-to-FSP + WIC Redemptions Ratio Above 50% | Total Potential Above-50% Vendors | GS | CS | SM | CO | CG | SF | MC | CM | CR | OF | HF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Western Region** | | | | | | | | | | | | | | | | |
| Alaska | 227 | * | * | * | * | * | * | * | * | * | * | * | * | * | * | * |
| American Samoa | 84 | 0 | 84 | 0 | 84 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Arizona | 610 | 579 | 31 | 61 | 92 | 31 | 15 | 1 | 2 | 6 | 3 | 4 | 5 | 1 | 3 | 1 |
| California | 4,479 | 3,641 | 838 | 473 | 1,311 | 150 | 51 | 241 | 0 | 0 | 0 | 13 | 5 | 0 | 0 | 0 |
| Guam | 13 | 13 | 0 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Hawaii | 132 | 128 | 4 | 8 | 10 | 2 | 0 | 5 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 |
| Idaho | 218 | 214 | 4 | 17 | 21 | 8 | 0 | 0 | 1 | 3 | 0 | 0 | 1 | 0 | 1 | 0 |
| ITCA, Arizona | 177 | 170 | 7 | 10 | 17 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ITCN, Nevada | 41 | 40 | 1 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Navajo Nation, Arizona | 140 | 140 | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Nevada | 217 | 179 | 38 | 3 | 41 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 1 | 0 |
| Oregon | 651 | 574 | 77 | 32 | 109 | 25 | 1 | 2 | 1 | 3 | 0 | 1 | 4 | 1 | 0 | 0 |
| Washington | 773 | 733 | 40 | 33 | 73 | 9 | 3 | 14 | 1 | 3 | 0 | 4 | 1 | 0 | 0 | 0 |
| **Total Western Region** | 7,451 | 6,411 | 1,040 | 640 | 1,764 | 236 | 72 | 263 | 4 | 16 | 3 | 27 | 9 | 2 | 7 | 1 |
| **National Total** | 49,818 | 41,845 | 7,773 | 5,177 | 13,034 | 2,599 | 964 | 664 | 451 | 271 | 82 | 60 | 45 | 20 | 16 | 3 |

Potential Above 50% Vendors

WIC Vendors with WIC/FSP and WIC Redemptions Ratio Above 50%

[1] Either the vendor was not authorized by the FSP, or the FSP authorization number in TIP did not match the number in STARS.

* Alaska was unable to report redemption data on their FY-2004 TIP report, therefore, we were unable to match WIC redemption data with FSP redemption data.

FSP Category Codes:
CG - Combination Grocery
CM - Combination Grocery/Merchandise
CO - Convenient Other
CR - Combination Grocery/Restaurant
CS - Convenient Store
GS - Grocery Store
HF - Health Foods
MC - Military Commissary
OF - Other Firm
PS - Produce Stand
SF - Specialty Food
SM - SuperMarket

UNITED STATES DEPARTMENT OF AGRICULTURE
OFFICE OF THE SECRETARY

HANDLE PROMPTLY:   Send
by messenger to next person.

# SIGNIFICANT/ECONOMICALLY SIGNIFICANT REGULATION ROUTING SLIP

Workplan number:  FNS-04-029

Received by OBPA:  7/18/2005

Includes:
OGC Legal Sufficiency ✓
Cost Benefit Assessment ✓
Agency Head Clearance ✓
Civil Rights Assessment ✓

Title of Regulation:

## WIC Vendor Cost Containment

Special Instructions **RUSH**

| DATE DUE | SEND TO | IN | OUT |
|---|---|---|---|
| 8/1/2005 | Scott Steele, Director<br>Office of Budget and Program Analysis | | |
| 7/55 | Keith Collins<br>Chief Economist Room 112-A | 7/20/05 | 7/28/05 |
| 7/55 | Dave Combs<br>Acting Chief Information Officer<br>414-W | | |
| 7/55 | Vernon Parker<br>Assistant Secretary - Civil Rights<br>240-W | | |
| 7/55 | Eric M. Bost<br>Under Secretary - Food, Nutrition, and Consumer Services<br>240-E | | |
| | OSEC | 8-2 | |

01729



| United States Department of Agriculture | Office of the Secretary | Office of Budget and Program Analysis | Washington, D.C. 20250 |

JUL 2 0 2005

**NOTE TO REVIEWERS**

**FROM:**    W. Scott Steele
             Director

**SUBJECT:**    Interim Rule – WIC Vendor Cost Containment of P.L. 108-265, the Child
                Nutrition and WIC Reauthorization Act of 2004 (Act)

Attached for your review and clearance are the subject interim rule and regulatory impact analysis codifying section 203(e)(10) of the Act, which relates to vendor cost containment under the WIC Program. This provision took effect October 1, 2004, and the Act requires the States to comply no later than December 30, 2005. The rule has been designated "Significant."

The Act which is codified and implemented by this rule requires State agencies to implement vendor peer group cost containment systems, competitive price criteria for the selection of authorized vendors, allowable reimbursement levels and other procedures to ensure WIC pays the most competitive prices it can consistent with ensuring reasonable access to stores for WIC recipients. Such procedures were already implemented voluntarily by some States, but due to sharply rising food costs for WIC, the procedures are now required nationwide. Also, a key component of the rule focuses explicitly on so called WIC-only stores, those deriving more than 50 percent of their food sales from WIC food instruments. Many WIC-only stores took advantage of recipient insensitivity to food prices and sold only, or primarily WIC foods to WIC recipients and did so at higher than competitive prices.

The impact analysis estimates 5-year savings of $377 million from more competitive pricing at WIC-only stores if all States make diligent efforts to implement the rule and statutory intent, with minimal costs in the form of administrative burden on the States. The analysis notes savings could be lower or much higher. For example, if the analysis factored in the ending of rapid growth of WIC-only vendors that was stemmed by the Act, savings would be much higher. Similarly, estimation of savings that would accrue to States that had not yet instituted voluntary peer group cost containment systems would also increase the savings effects. Such estimates of higher savings potential, however, would not have affected decision making for the rule.

We find the rule ready for clearance.

Attachments

01730

July 28, 2005

TO: FNS

FROM: Keith Collins

SUBJ: WIC Vendor Cost Containment

We understand FNS is resolving issues in the preamble and we are clearing the analysis.

This is an interim final rule aimed at controlling WIC food costs. The rule requires State agencies to establish peer groups for price comparison and control. The costs of the rule fall on the State agencies and on the vendors. Costs are for data collection and administrative effort to establish reasonable peer groupings of vendors. Vendors will have to provide additional information to State agencies. The analysis would be improved if data collection burden (page 10) were monetized using a reasonable hourly wage rate. Approximately 136,000 hours of respondent burden are cited. The respondent burden hours reported in the economic analysis (page 10) are slightly different than the hours reported in the preamble (page 18). This should be reconciled.

The benefits are cost savings resulting from reimbursement at lower average prices. The RIA estimates this savings (page 14) at $6.27 million per month, or $75 million annually based on the impacts in just 12 States believed to account for most of the WIC-only and above 50-percent vendors. Above 50 percent vendors are stores that derive more than 50% of their food sales receipts from sale of WIC foods.

In the discussion on pages 42-44 of the preamble, much is made of the weighted average reimbursement to the above 50 percent vendors being higher than the weighted average to so-called regular vendors. On a peer group by peer group basis, the average redemption by above 50 percent is probably not statistically different from that for regular vendors for the Food Instrument ABC. It seems to make sense that the bare-bones, a.k.a., above 50 percent vendors would be more heavily represented in higher average price places. These above 50 percent stores compete by having lower cost structures than stores with large varieties of foods. That is, they don't have extensive meat and fish counters, and large fruit and vegetable selection. It seems impractical for WIC rules to look at cost structure and profitability. Also, we cannot reproduce what FNS reports as the simple and weighted averages.

Please call Jim Schaub or me for any concerns.

01731

WIC vendor rule        Table page 42-43

Regular

|   |   |   | percent | weight |   |
|---|---|---|---|---|---|
| 1 | 17.57 | 22,160 | 0.34625 | 0.346 |   |
| 2 | 26.35 | 23,640 | 0.369375 | 0.369 |   |
| 3 | 36.43 | 18,200 | 0.284375 | 0.284 |   |
| X̄ ≈ 26.78333 | | 64,000 | 1 | 0.999 |   |
| Weighted average | | | | 25.64 | 26.14849 |
| Simple average of all 64,000 | | | | 26.17 | 26.17643 |

Above 50 Percent

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| 1 | 17.9 | 5,712 | 0.150316 | 0.15 |   |
| 2 | 26.9 | 8,584 | 0.225895 | 0.226 |   |
| 3 | 36.78 | 23,704 | 0.623789 | 0.624 |   |
| X̄ ≈ 27.19333 | | 38,000 | 1 | 1 |   |
| Weighted average | | | | 30.15 | 31.71512 |
| Simple average of all 38,000 | | | | 27.8 | 31.7102 |

*ORACBA calculations in red*

01732



**United States
Department of
Agriculture**

**Office of the
Assistant Secretary
for Civil Rights**

**Office of
Civil Rights**

**1400 Independence
Avenue SW**

**Washington, DC
20250**

**TO:**    Eric M. Bost
Under Secretary
Food, Nutrition and Consumer Services

**FROM:**    Vernon B. Parker    *Clyde Thompson*    JUL 29
*for* Assistant Secretary for Civil Rights

**THROUGH:** Sadhna G. True
*for* Director
Office of Civil Rights    JUL 29 2005

**SUBJECT:** Interim Rule – Women, Infants and Children (WIC): Vendor Cost
Containment

Thank you for the opportunity to review the proposed interim rule, "Women,
Infants and Children (WIC): Vendor Cost Containment," submitted by the Food
and Nutrition Service (FNS). As required by Departmental Regulation (DR) 4300-
4, "Civil Rights Impact Analysis," we have completed our review and concur with
the proposed interim rule.

### Background

The proposed interim rule amends the regulations governing the Special
Supplemental Nutrition Program for WIC to strengthen vendor cost containment.
The proposed interim rule incorporates into program regulations new legislative
requirements, as well as, reflect statutory provisions that require State agencies to
implement a vendor peer group system, competitive price criteria, allowable
reimbursement levels, and other procedures to ensure WIC pays the most
competitive prices it can consistent with ensuring reasonable access to stores for
WIC recipients. Although some States, due to rising food costs for WIC, already
implemented such procedures voluntarily, the procedures are now required
nationwide.

Specifically, provisions of the proposed interim rule would accomplish the
following:

- Ensure that payments to vendors that derive more than 50 percent of their
  annual food sales revenue from WIC food instruments do not result in
  higher food costs than if WIC participants had purchased supplemental
  foods from vendors that do not meet the more than 50 percent criterion; and

- Maximize the Federal funding available for serving potentially eligible
  women, infants, and children.

AN EQUAL OPPORTUNITY EMPLOYER

Eric M. Bost
Page 2

The following table summarizes current provisions of the WIC Vendor Cost
Containment interim rule as compared to the proposed provisions of Pub. L. 108-265.

### WIC Vendor Cost Containment Provisions of Pub.L. 108-265

| Current Regulations | Interim Rule | Reason for Change |
|---|---|---|
| Provide detailed standards for effective vendor management systems, including mandatory vendor selection criteria, other requirements related to authorizing, reimbursing, training, monitoring, sanctioning, and providing administrative reviews to vendors. | Amends current WIC regulations to add new vendor cost containment requirements from the Child Nutrition and WIC Reauthorization Act of 2004, Pub. L. 108-265. The law requires State agencies to implement a vendor peer group system, competitive price criteria for use in selecting vendors for authorization, and allowable reimbursement levels to limit payments to vendors. It also requires State agencies to ensure that payments to vendors that derive more than 50 percent of their annual food sales revenue from WIC food instruments (i.e., above 50 percent vendors) do not exceed payments to comparable vendors. | Implements new legislative requirements and strengthens vendor cost containment in the WIC program. <br><br> Ensures that the WIC program pays competitive prices for supplemental foods, including foods provided by vendors that serve WIC participants predominantly. |
| 1. Definitions (Section 246.2) – Contains definitions of terms used throughout the WIC regulations. | Adds definitions of "Above 50 percent vendors," "Food sales," and "Vendor peer group system." | Establishes the meaning of terms used in the interim rule and Pub. L. 108-265. |
| 2. State plan (Section 246.4(a)(14)(ii)) – Requires a State agency to include in the State Plan a description of its vendor limiting and selection criteria. | Expands the current State Plan requirement to include a (1) description of the State agency's vendor peer group system, competitive price criteria, and allowable reimbursement levels; (2) information on non-profit above 50 percent vendors that State agency exempts from competitive price criteria and allowable reimbursement levels; (3) a justification to support a State agency's request for an exemption from the vendor peer group system requirement; and (4) information required to certify a State agency cost containment system. | Implements requirements in Section 203(e)(10)(B) of Pub. L. 108-265 and enables FNS to monitor State agency compliance with the law. |

Eric M. Bost
Page 3

FNS states that the benefits of the proposed interim rule will reduce unnecessary food expenditures, thereby, increasing the potential to serve more eligible women, infants, and children.  Also, this rulemaking is intended to ensure that payments to vendors, particularly vendors that derive more than 50 percent of their annual food sales revenue from WIC food instruments, reflect competitive prices for WIC foods.

## Civil Rights Impact Analysis

Our civil rights review was conducted in accordance with the requirements of DR 4300-4," " DR 1512-1, "Regulatory Decision Making Requirements," and 7 C.F.R. 15a, "Nondiscrimination in Federally-Assisted Programs and Activities by the United States Department of Agriculture."

In accordance with DR 4300-4, FNS submitted a Civil Rights Impact Analysis (CRIA).  The CRIA indicates that the proposed interim rule will not have any unfavorable impacts.  FNS submitted a comparison chart of WIC participants.  The following table shows race and ethnicity of WIC participant population in 2002, in comparison to that of the United States population as a whole.

RSNOD data for Women, Infants and Children Households*

| | White | Black | Asian | American Indian | Hispanic | Disabled |
|---|---|---|---|---|---|---|
| Total U.S. Population | 68% | 12% | 4% | .6% | 14% | N/A |
| WIC Participants | 36% | 20% | 4% | 1% | 38% | N/A |

*Source: 2002 U.S. Census Bureau's on-line data tables.

The CRIA indicates that the proposed interim rule will not in any way limit or reduce participants' ability to apply for and receive WIC benefits, nor limit or reduce participation of members of the protected population.  Based on the information contained in FNS' CRIA, we concur with the proposed interim rule.

We are available to discuss our review and respond to any questions you may have. If additional information is needed, please contact Robert J. Day, Jr., Chief, Equal Opportunity and Compliance Division, at (202) 720-8106.

**REGULATORY CLEARANCE RECORD**          Last Updated: 05/06/0

Docket No.: 430  Workplan No.: 04-009    Action Type: __ FR _X_ IR __ DFR __ PR __ N

Designation: __ Major __ Economically Significant _X_ Significant __ Non-Significant __ Routine

Title: WIC Vendor Cost Containment

Description: This interim rule amends the WIC regulations to implement the vendor cost containment provisions of the Child Nutrition and WIC Reauthorization Act of 2004 (P.L. 108-265). The rule seeks to assure that the WIC Program pays competitive prices for supplemental foods provided by authorized vendors.

**Part I - Internal FNS Clearance**

| Originator's Name: Geraldine Tompkins | Room No./Bldg.: Rm. 540/Park Center | Phone No.: 703-305-2743 | |
|---|---|---|---|
| Signature of Clearing Official | ID Code | Date In | Date Out |
| Patricia N. Daniels | | | |
| R. Vogel | SN-2 | 13-17-05 | 13-18-05 |
| Christ | OANE-1 | | X-18-05 |
| Angelle Loe Fbn | RAV | 4-22-05 | 4-27-05 |
| for Robert Salazar | AO-1 | 5/5/05 | 5/5/05 |
| SALAZAR | AO-1 | 06-16-05 | 06-16-05 |

**Part II - External Clearance (Significant and above actions only)**

| Signature of Clearing Official | Date In | Date Out |
|---|---|---|
| Associate General Counsel  Myrna Conwey | 5/10 | 5/18/05 |
| Director, Office of Budget and Program Analysis  W. Scott Steele | | |
| Chief Economist  Keith Cole | 7/20/05 | 7/28/05 |
| Chief Information Officer  (attached) | | |
| Assistant Secretary for Civil Rights (for the Office of Civil Rights)  (attached) | | |
| Under Secretary for Food, Nutrition, and Consumer Services  (attached) | | |
| Secretary of Agriculture | | |

MAY -5/ 2005   13344

01736

**REGULATORY CLEARANCE RECORD**    Last Updated: 05/06/0

et No.: 430    Workplan No.: 04-009    Action Type: __ FR __X__ IR __ DFR __ PR __ N

signation: __ Major __ Economically Significant __X__ Significant __ Non-Significant __ Routine

**Title:** WIC Vendor Cost Containment

**Description:** This interim rule amends the WIC regulations to implement the vendor cost containment provisions of the Child Nutrition and WIC Reauthorization Act of 2004 (P.L. 108-265). The rule seeks to assure that the WIC Program pays competitive prices for supplemental foods provided by authorized vendors.

## Part I - Internal FNS Clearance

| Originator's Name: Geraldine Tompkins | Room No./Bldg.:<br>Rm. 540/Park Center | Phone No.: 703-305-2743 | |
|---|---|---|---|
| Signature of Clearing Official | ID Code | Date In | Date Out |
| Patricia N. Daniels | | | |
| R.Y. Vzel | SN-2 | 13-17-05 | 13-18-05 |
| C. Frost | OAME-1 | | 4-18-05 |
| Angella Love Blair | RAV | 4-22-05 | 4-27-05 |
| for Roger Salazar | AO-1 | 5/5/05 | 5/5/05 |
| SALAZAR | AO-1 | 06-16-05 | 06-16-05 |

## Part II - External Clearance (Significant and above actions only)

| Signature of Clearing Official | Date In | Date Out |
|---|---|---|
| Associate General Counsel — Thomas Conway | 5/10 | 5/18/05 |
| Director, Office of Budget and Program Analysis — W. Scott Steele | | |
| Chief Economist | | |
| Chief Information Officer (attached) | | |
| Assistant Secretary for Civil Rights (for the Office of Civil Rights) | | |
| Under Secretary for Food, Nutrition, and Consumer Services — Kate Coler | | 7/27/05 |
| Secretary of Agriculture | | |

MAY 8 2005    13844
4/10/05
5/6/05

01737

SIMULTANEOUS CLEARANCE

STATES DEPARTMENT OF AGRICULTURE
E OF THE SECRETARY

HANDLE PROMPTLY:  Send
by messenger to next person.

# SIGNIFICANT/ECONOMICALLY SIGNIFICANT
# REGULATION ROUTING SLIP

Workplan number:  FNS-04-029

Received by OBPA:   7/18/2005

Includes:
OGC Legal Sufficiency ___
          Cost Benefit Assessment ___
Agency Head Clearance ___
Civil Rights Assessment ___

Title of Regulation:

WIC Vendor Cost Containment

Special Instructions    RUSH  PRIORITY

| DATE DUE | SEND TO | IN | OUT |
|---|---|---|---|
| | Scott Steele, Director Office of Budget and Program Analysis | | |
| 7/25/05 | Keith Collins Chief Economist Room 112 | | |
| 7/25/05 | Dave Combs Chief Information Officer 414-W | 7/26/05 | 7/26/05 |
| 7/25/05 | Vernon Parker, Assistant Secretary for Civil Rights 240-W | | |
| 7/25/05 | Eric M. Bost Under Secretary - Food, Nutrition, and Consumer Services 240-E | | |
| | OSEC | | |

Please call 720-1272 for pick-up when ready.

01738

REGULATORY CLEARANCE RECORD    Updated: 05/06/0

ket No.: 430  Workplan No.: 04-009    Action Type: __ FR _X_ IR __ DFR __ PR __ N

esignation: __ Major __ Economically Significant _X_ Significant __ Non-Significant __ Routine

Title: WIC Vendor Cost Containment

**Description:** This interim rule amends the WIC regulations to implement the vendor cost containment provisions of the Child Nutrition and WIC Reauthorization Act of 2004 (P.L. 108-265). The rule seeks to assure that the WIC Program pays competitive prices for supplemental foods provided by authorized vendors.

**Part I - Internal FNS Clearance**

| Originator's Name: Geraldine Tompkins | Room No./Bldg.: Rm. 540/Park Center | Phone No.: 703-305-2743 | |
|---|---|---|---|
| **Signature of Clearing Official** | **ID Code** | **Date In** | **Date Out** |
| Patricia Y. Daniels | | | |
| K.P.Vd | SN-2 | 13-17-05 | 13-18-05 |
| afrost | OME-1 | | 4-18-05 |
| Angelu Love John | RAV | 4-22-05 | 4-27-05 |
| for Robert Salazar   SALAZAR | RO-1 | 5/5/05 | 5/5/05 |
| | Ao-1 | 05-16-05 | 06-16-05 |

**Part II - External Clearance (Significant and above actions only)**

| Signature of Clearing Official | | Date In | Date Out |
|---|---|---|---|
| Associate General Counsel | | 5|10 | 5/18/05 |
| Director, Office of Budget and Program Analysis | | | |
| Chief Economist | | | |
| Chief Information Officer | | | |
| Assistant Secretary for Civil Rights (for the Office of Civil Rights) | | | 7/0 8/-5 |
| Under Secretary for Food, Nutrition, and Consumer Services | | | |
| Secretary of Agriculture | | | |

MAY 2005  1384

01739

**Tompkins, Geraldine**

| | |
|---|---|
| **From:** | Norman, Eric |
| **Sent:** | Friday, October 14, 2005 5:51 PM |
| **To:** | Tompkins, Geraldine |
| **Subject:** | Numbers of >50% vendors |

Geraldine – The TIP 04 data shows that the national total of retail, pharmacy, and WIC-only vendors = 49,568. Our best estimate for WIC-only's in 04 is 1,241. All of our data thus far on >50% vendors only pertains to the potential >50% vendors because the State agencies are in the process of determining which of the potentials are actuals, and we know that some State agencies have adopted selection criteria prohibiting >50% vendors. Thus we don't currently know the actual number of >50% vendors, or have a reasonable means to guesstimate what this number will be. Hopefully, the 05 TIP data will give us the number of actuals. In the meantime, I've decided to use 2,000, based on rounding up the 49,568 to 50,000 X .04 (4%), 4% being the high end of our previous 3 – 4 % guesstimate. - Eric

01831

Tompkins, Geraldine

| | |
|---|---|
| From: | STEWART, MICHELLE |
| Sent: | Wednesday, September 28, 2005 1:17 PM |
| To: | Tompkins, Geraldine |
| Cc: | MCGILL, CARLA; MIKKELSON, JULIE |
| Subject: | Questions for the MWR Vendor Meeting |

| | |
|---|---|
| Follow Up Flag: | Follow up |
| Flag Status: | Red |

Hi Geraldine:

We asked our SA's to provide a list of questions by 9/26/05, in preparation for our vendor meeting. Here is what I received, although I am sure additional questions will arise during the meeting.

- It is not clear to us how the definition of WIC only food stores changed from 100% WIC vendors to above 50% WIC vendors. Can the USDA official provide some clarification regarding this matter and why states that had proactive rules in place to prevent WIC only food stores end up having to shoulder the burden of the states that failed to recognize the impact of the WIC only stores?

- When will the draft policy dated July 26, 2005 be issued in final form?

- In the past, USDA has provided the states with the opportunity to provide input in the development of its policy guidance. With regard to the development of the draft policy guidance related to the above 50% vendors, it does not appear that USDA is interested in obtaining the input of the states. Is this perception correct?

- Is USDA planning to issue regulations implementing the requirements related to the above 50% vendors or is the policy guidance intended to be the primary method of communicating these policies?

- In the draft policy guidance, the section on determining competitive price is left blank. This would appear to be an essential component of states developing relevant peer group pricing policies. What are the plans for developing this policy and what input will states have?

- The provisions in the new federal statute regarding 50% vendors were not enacted until June 30, 2004, and did not become effective until October 1, 2004. In its draft policy guidance, USDA requested that states use at least a portion of calendar year 2004 information to enforce these provisions. Since the provisions were not effective until October 1, 2004, there is a legal argument that using 2004 data to enforce these provisions denies the vendors of their constitutional rights of due process. In other words, if states that have elected not to authorize "above 50 percent" vendors proceed to disqualify a vendor as an "above 50 percent" vendor based on 2004 data, the vendor could argue that this is a retroactive application of the law, in violation of the vendor's due process rights. Can USDA comment on this due process issue?

- It appears that the 50% requirement for vendors will only impact the owners of small convenience stores. Since most small convenience stores (at least in our state) are minority owned businesses, how can USDA and the individual states protect against a claim that this policy has a disparate impact on minorities?

- Why are pharmacies included on the potential 50% vendor list? Based on our analysis of store redemptions and the analysis of other states, pharmacies are clearly not 50% WIC vendors.

1

01837

- Has USDA considered providing states with the ability to obtain federal tax records to help us assess the gross retail food sales of vendors?

- Can state agencies get a list of their entire Food Stamp and WIC redemption match spreadsheet instead of just the potential above 50% stores?  State agencies want to be able to look at all of their WIC stores redemption data against same vendor FSP redemption data.

- Why are pharmacies, chain stores, new stores and stores with $40,000 or less of total food sales appearing on the list of potential above 50% vendors?

- FNS WIC and/or FSP provide to WIC state agencies the 301L Report (formerly the EBT 4 Report) for use in identifying and analyzing WIC store redemption data?

- What dollar amount does the Food Stamp Program have for these stores?

That's it.  Talk to you soon.  If you need clarification, let me know and I'll email the SA.  Thanks,

***Michelle Stewart,  Senior Program Specialist***
***USDA, FNS, MWRO, SSNP, WIC***
***312-353-6883 - Direct Line***
***312-353-1706 - Fax Line***
***michelle.stewart@fns.usda.gov***

01838

$A$

| From: | Phillip Kaufman |
| To: | Debbie Whitford |
| Date: | Wed, Nov 9, 2005  3:09 PM |
| Subject: | Re: Staff Analysis Request |

Hi Debbie,

  Attached is my staff analysis to provide additional guidance on determining comparable vendors for Above-50% stores.  I felt this was an area that could be improved upon.  Feel free to edit as needed.  Let me know if there are any questions.
thank you,
Phil Kaufman
(attachment)

Phil Kaufman
Senior Food Markets Analyst,
Economic Research Service,
U.S. Dept. of Agriculture
E-mail: pkaufman@ers.usda.gov
V-mail: 202-694-5376
Mailing address:
Phil R. Kaufman
Economic Research Service
1800 M St., NW,  Rm. 2121N
Washington, DC 20036

Visit the ERS web site at: www.ers.usda.gov

>>> "Whitford, Debbie" <Debbie.Whitford@fns.usda.gov> 11/7/2005 2:08:54 PM >>>
Hello Mr. Crutchfield,

Once again, I am writing to request the assistance of Phil Kaufman in providing information related to WIC Vendor Cost Containment.

Phil has been working on guidance for determining comparable peer groups for above-50-percent vendors.  While he has previously provided us with guidance in this area, I understand that he has additional information that would be beneficial to us.  As such, we are requesting that he provide us with the additional information that he has developed.

We would greatly appreciate Phil's continued assistance as we work on vendor cost containment issues.  Therefore, is it possible to avoid individual staff requests provided that any work that Phil completes in this area is first reviewed and approved by you prior to his sending it to us?

Thank you for your consideration of our request.  Please let me know if you have any questions regarding this request.


Debra R. Whitford

Debra R. Whitford, Chief
Policy & Program Development Branch
Supplemental Food Programs Division

CC:          Steve Crutchfield

# Staff Analysis Details

Print This Page
Go Back

| | |
|---|---|
| Log Number | 14 |
| Fiscal Year | 2006 |
| Analysis Requested | Provide FNS with analysis of selected WIC cost-containment practices. |
| Civil Rights? | No |
| ARMS Data Used? | No |
| Program Area | Food and Nutrition Assistance Programs |
| Goal | 3 (Nutrition/Health) |
| Customer | FNS |
| Customer Detail | |
| Customer Contact | Debbie Whitford |
| Relaying Organization | |
| Relaying Org. Detail | |
| Relaying Org. Contact | |
| Dvision (* denotes lead) | FED* |
| Branch (* denotes lead) | FM* |
| Staff (* denotes lead) | Phillip Kaufman* |
| Keyword | WIC, Cost containment |

## Status

| | |
|---|---|
| Received Date | 10/15/2005 |
| Due Date | 03/01/2006 |
| Current Status | delivered to customer |
| Status Date | 10/15/2005 |
| Contact Organization | |
| File Name/Location | |
| File Creation Date | |
| Researcher Hours Spent | |
| Comments | This is an umbrella entry for ongoing case-by-case analyses of selected cost containment practices. |

02074

Phil Kaufman
Economic Research Service
10/31/2005

### Assigning Above-50-percent stores to Comparable Vendors

Under the Vendor Cost Containment rule, any State Agency that authorizes Above-50-percent vendors must set competitive price criteria and allowable reimbursement levels that do not exceed the averages of vouchers redeemed by comparable vendors. The authorization of Above-50-percent vendors also requires that total program food costs incurred by the State Agency be no greater than if Above-50-percent vendors were not authorized.

State Agency guidance is needed to ensure that appropriate criteria are used to assign competitive prices and maximum allowable voucher reimbursements to Above-50-percent vendors. Due to differences in underlying business models of Above-50-percent and regular or "commercial" food retailers, direct comparability of the two basic vendor types is not possible. This section examines various vendor characteristics for their usefulness in determining comparability. The characteristics are those also applied to the formation of vendor peer groups for regular or "commercial" food retailers, but take into account the unique differences of Above-50-percent vendors. For each selected peer group criteria listed below, the assignment of Above-50-percent vendors is considered.

*Store type*: Differences in store type are largely due to the underlying business model of the retailer. For example, supermarkets depend on high volume (sales) in order to lower average cost per unit (cost of goods), which if passed on to consumers, results in lower retail prices. Having high volume also allows supermarkets to spread fixed operating costs (rent, utilities, and insurance, for example) over many units sales, thereby contributing to lower retail margins--the difference between cost of purchased goods and their retail price. Because margins are low, supermarkets have a relatively high minimum sales requirement in order to achieve profitability, the point at which total sales exceeds total costs (food costs plus operating costs). To achieve high sales volume, supermarkets offer a wide variety of items and extensive store services. They also advertise widely and offer sales and promotions as incentives.

In contrast, convenience store retailers offer a limited variety of products and services and are much smaller in selling area (floor space) than supermarkets. They provide "fill-in" grocery products, snack food and beverages, as well as sundries, operate extended hours, and offer easily accessible locations. These retailers typically must apply higher margins and prices than supermarkets in order to achieve profitability at a lower volume of sales.

Other store types, such as supercenters, warehouse club stores, limited assortment stores, dollar stores, and drugstores sell retail foods under different business models, each with its own characteristics that determine profitability. All of these commercial retailers must compete in the marketplace in order to gain sales.

02075

An important distinction of Above-50-percent vendors is their ability to avoid price competition, due to a primary dependency on redemptions of WIC participant vouchers. Rather than market forces, price is determined by the allowable reimbursement level of each voucher. For this reason, their business model is less comparable to any other commercial food retailer. Competition among Above-50-percent vendors is largely based on non-price characteristics such as convenient location, hours of operation, level of store services, including bi-lingual staff, service-based order filling, and promotions involving free merchandise of both food and non-food items. In order to maximize sales, order fulfillment most likely ensures that all participant vouchers are fully redeemed. In contrast, other vendors depend mostly on non-WIC sales, and are less likely to enforce full redemption of vouchers.

Although sales volume may typically be equivalent to a small grocery store or convenience store, unlike these stores, the Above-50-percent vendors carry a much smaller variety of items with relatively high inventory turnover. As a result, Above-50-percent vendors may be able to obtain volume discounts from wholesale suppliers relative to similar volume grocery stores as well. Lower food costs contribute to greater margins relative to other similar-volume retailers.

*Firm size/number of stores operated*: Multiple-store firms tend to gain efficiencies in procurement and distribution compared with single-store retailers, particularly when the stores are located in the same market or geographic area. The efficiency gains vary depending upon the level of vertical integration of the retail operation with the upstream procurement and distribution activities. Multiple-store retailers have an advantage over single-store operators in wholesale cost, even when they do not own distribution warehouses. Full service grocery wholesalers are available to serve multi-store retailers that do not wish to invest in storage and shipping facilities. Depending on the volume of wholesale purchases, any of several price tiers may apply to the retailer, with single-store operators placed at the highest price tier. Many of the large, multiple-market retailers provide their own buying and distribution services. Others may operate buying offices but rely on grocery wholesalers for shipments from manufacturers and distribution to stores.

Among Above-50-percent vendors, multi-vendor firms may have lower procurement and distribution costs than single-store vendors, depending on the extent of services provided internal to the firm. This distinction may serve as important criteria when assigning comparable vendors.

*Gross sales*: Gross weekly, monthly, or annual sales are another peer group criteria that could be used to determine Above-50-percent comparable vendors. As a measure of size, gross sales (food and nonfood) are closely related to store type as an indicator of cost per unit of output. With higher volume or sales, a store's cost per unit is likely to be lower than a lower volume store, hence margins and item prices are more likely to be negatively correlated with volume measures. Gross sales of commercial retailers are less

comparable to Above-50-percent vendors, however. Typically, gross sales include non-food sales and non-WIC food sales, with potentially higher margins, while Above-50-percent vendors sales are concentrated in WIC food categories.

*Food sales*: The share of sales derived from food can vary considerably between store types. While food sales of supermarkets average 73 percent of gross sales, supercenters may average only 36 percent, while convenience stores sell 45 percent in food. The volume of food sales by a retailer, once determined, may be more comparable to the sales of Above-50-percent vendors than gross sales. Percentiles may be used to define food sales ranges, based on the distribution of vendor sales in a geographic area (exclude Above-50-percent vendors from this calculation). As a test of fit with particular data, percentiles could be calculated, such as quartiles, quintiles, and deciles. For multiple-store firms in a geographic area, the food sales should be combined to account for integration of procurement. Once food sales classes have been defined, Above-50-percent vendors would be assigned to comparable vendors.

*Number of registers*: A store's number of checkout registers has often been used as a classification criterion. Studies that have correlated selected WIC multiple-item voucher values across stores or individual item shelf prices have typically found lower voucher costs as the number of checkouts per store increased. According to a study of WIC vendors in Texas, the WIC-only stores had the highest voucher cost, except for a few 1-2 register vendors (BCA, Inc., 2003). The impact on cost containment of using number of registers as a comparability criterion would therefore be minimal.

One way to address this shortcoming in comparability is to incorporate differences in food sales. By calculating food sales per register, a more appropriate measure of store size would result. With relatively high sales per register, WIC-only and Above-50-percent vendors may be more similar to larger grocery stores and supermarkets, which typically have been found to have lower voucher costs and shelf prices than smaller grocery stores. A greater cost containment impact on Above-50-percent vendors would likely result if competitive prices, average voucher values, and allowable reimbursements of larger grocery stores and supermarkets were applied to Above-50-percent vendors.

*Geographic area*: Geographic area is a required criterion for assignment of vendors to peer groups. The use of BEA Economic Areas has been suggested as a workable definition of a marketplace in which vendors compete. These areas tend to be quite large, encompassing multiple counties and having a metro- or micro-politan core area. Unlike other classes of vendors, Above-50-percent vendors are typically concentrated in urban, residential areas. In these high population density areas, there are fewer supermarkets and a greater number of neighborhood groceries. Operating costs in urban areas are typically higher as well, due to rental rates, taxes, and insurance. Wholesalers may add a premium to servicing costs in urban locations due to the lack of inventory space, requiring more frequent deliveries, and lack of loading dock facilities, requiring less efficient front door unloading. These factors are likely to contribute to higher food prices. State agencies may consider comparing Above-50-percent vendors in urban areas with similarly located comparable vendors.

K:\SAF\2006\06014.doc

*Price level*: The use of a price level, whether based on voucher values or shelf prices as a comparability criterion should be avoided. Assigning Above-50-percent vendors to comparable vendors based on price levels will not serve the interests of competitive pricing or program food cost containment. Comparability and peer groups are best determined by non-price criteria. Ultimately, vendors having similar characteristics are more likely to have similar price levels than those that are different. Differences of means tests and analysis of price variance (explained elsewhere) can be used to measure the degree to which vendors belong in a given peer group. Effective peer group criteria regards price as an outcome measure. By assigning Above-50-percent to comparable peer groups, the State Agency is defining competitive price and maximum allowable voucher reimbursement levels for effective cost containment.

**References**

BCA, Inc. *Texas Peer Group Study: Non-Commercial Vendor Recommendations*. Dec. 30, 2003.