UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS AND CHILDREN GROCERS ASSOCIATION, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> FOOD AND NUTRITION SERVICE, <br><br> Defendant | Case No. 1:05-cv-02432-EGS <br><br> Judge Emmet G. Sullivan |

## **LOCAL RULE 7(h) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), defendant Food and Nutrition Service ("FNS") hereby submits the following statement of facts as to which there is no genuine issue.

**Background**

1. The FNS is an agency within the United States Department of Agriculture ("USDA") with responsibility for administering the several nutrition assistance programs of the USDA, including the Special Supplemental Nutrition Program for Women, Infants and Children ("WIC"). Declaration of Ronald Vogel ("Vogel Decl.") ¶ 2.

2. Under WIC, the FNS approves grants to state agencies. State agencies typically provide vouchers for supplemental foods to eligible women and children, who then may redeem those vouchers for specific food items from authorized vendors. Authorized vendors may then seek reimbursement from the state. See 7 U.S.C. § 1786; 7 C.F.R. § 246.

3. On June 30, 2004, Congress enacted the Child Nutrition and WIC Reauthorization Act. See Pub. L. 108-265, Title II, 118 Stat. 771. The WIC Reauthorization Act includes provisions requiring new cost containment measures to be implemented by state agencies. See 42 U.S.C. § 1786(h)(11). States must be in compliance as of December 30, 2005. Id. § 1786(h)(11)(G).

4. Many of the new requirements are intended to control rising food costs associated with vendors for whom WIC sales constituted a majority of their business ("WIC only" or "above-50-percent" vendors) and who routinely sought reimbursement at above-market rates, resulting in higher costs to the program. S. Rep. 108-279 at 54-57, 2004 U.S.C.C.A.N. 668, 715-16 (June 7, 2004); Regulatory Impact Analysis, 70 Fed. Reg. 71724, 71724-25 (November 29, 2005).

**Development of the Interim Rule and Concurrent Responsibilities**

5. The WIC Reauthorization Act requires the USDA to issue guidance to the states and implementing regulations; it also authorizes the issuance of interim final regulations. See Pub. L. No. 108-265, Tit. V § 501, 118 Stat. 789 (June 30, 2004) (codified at 42 U.S.C. § 1758 note).

6. After enactment of the WIC Reauthorization Act, the FNS immediately began the process of analyzing the new requirements. Vogel Decl. ¶ 5.

7. In July 2004, the FNS conducted two briefings for Congressional staff members on FNS plans to implement the Act. Vogel Decl. ¶ 6.

8. In July and August 2004, Under Secretary Eric M. Bost sent letters to State Health Commissioners and WIC state agencies regarding the issue of vendor cost

containment. The letter asked state agencies to review and assess their vendor selection policies to ensure that only those vendors who offer competitive prices receive WIC authorization. Vogel Decl. ¶ 7.

9. In July and August 2004, the FNS began the process of collecting information on effective competitive price selection criteria and price limitation approaches currently used by state agencies. Vogel Decl. ¶¶ 7-10.

10. October 5-7, 2004, FNS held a WIC Vendor Cost-Containment Meeting with state experts. Vogel Decl. ¶ 8.

11. After the October meeting, the FNS devoted substantial staff resources to developing the necessary information just to identify WIC-only vendors. Vogel Decl. ¶ 9.

12. As a result of these and other efforts, the FNS collected copious data on cost-containment practices, above-50-percent vendors, and WIC redemption prices. Vogel Decl. ¶ 10.

13. By December 2004, the FNS had developed a first working draft of the Vendor Cost Containment Rule. Vogel Decl. ¶ 11.

14. Over the course of the rule's development, the FNS conducted, as required by law, a regulatory impact analysis, an analysis pursuant to the Unfunded Mandates Reform Act of 1995, a federalism impact analysis, a civil justice reform analysis, a civil right impact analysis, an analysis required under the Paperwork Reduction Act of 1995, and a review under the Paperwork Elimination Act. See Preamble to the Interim Rule, 70 Fed. Reg. 71708; Vogel Decl. ¶ 11.

15. From December 2004 to March 2004, the FNS worked through several drafts of the rule. Vogel Decl. ¶ 12.

16. In an effort to gain input from the representatives of WIC vendors, the FNS met with the Food Marketing Institute and the National Grocers Association on January 25, 2005, meetings which were "extremely important" to the development of means to identify above-50-percent vendors. An invitation to the meeting was extended to John Bode, a member of plaintiffs' counsel's firm, but no one from his office was able to attend. Vogel Decl. ¶ 12.

17. Beginning on March 17, 2005, the rule entered the formal clearance process in USDA, which requires review and approval by FNS and by twelve different departmental offices in order to ensure consistency with applicable statutes and regulations, as well as the policy objectives of the Administration. Vogel Decl. ¶¶ 13-15. At each stage of this process, it is typical to have discussions with each reviewer regarding various portions of the regulation and to make changes as necessary. Vogel Del. ¶ 12.

18. Internal FNS review, required to ensure consistency with the policy directives of the Under Secretary's office and to perform the required regulatory impact analysis, was completed May 9, 2005. Vogel Decl. ¶¶ 13-14.

19. The USDA Office of General Counsel reviewed the rule for consistency with applicable statutes and regulations and cleared the rule May 18, 2005. Vogel Decl. ¶ 14.

20. To expedite the process, the rule was then submitted simultaneously to all other USDA offices whose approval was required, including for policy review by the USDA Office of Budget and Program Analysis and the USDA Chief Analysis. The rule was cleared by all necessary USDA offices by the end of July 2005. Vogel Decl. ¶ 14.

21. On August 8, 2005, the rule was submitted to the Office of Management and Budget ("OMB") as required by Executive Order 12866. As part of its review, OMB posed ninety technical questions to which the FNS prepared responses within three weeks. Subsequently, OMB made thirteen additional comments on the rule, resulting in changes to the Regulatory Flexibility Act analysis. OMB cleared the rule just within the ninety-day deadline, on November 7, 2005. On November 18, 2005, OMB also cleared the information burden collection package. Vogel Decl. ¶ 15.

22. On November 22, 2005, the rule was signed by Kate Coler, Deputy Under Secretary for Food, Nutrition and Consumer Services, and hand-carried to Federal Register. Vogel Decl. ¶ 15. The rule was published November 29, 2005. Interim Rule, Special Supplemental Nutrition Program for Women, Infants and Children (WIC): Vendor Cost Containment, 70 Fed. Reg. 71708.

**Additional Concurrent Responsibilities of WIC and FNS**

23. Concurrent with this ongoing development of the rule, FNS had been developing the guidance required by the WIC Reauthorization Act. On July 19-20, 2005, and on July 27, 2005, the FNS provided draft guidance and extensive training to state

agencies in each of seven FNS regions. The agency also responded to extensive questions from state agencies about the statute and the guidance. Vogel Decl. ¶ 16.

24. From July 2004 through Summer 2005, WIC staff was heavily involved in a review of the cost containment policies of California. Corrective action was eventually taken against California, including withdrawal approval of the state agency's 2004 State Plan. The action was deemed necessary because California had experienced a 16 percent increase in food costs in one year and was forced to request additional funds. Vogel Decl. ¶ 17.

25. Concurrent with the development of the interim rule, WIC staff has also been responsible for the development of six policy memoranda and four other regulations related to the WIC Reauthorization Act, including one extensive proposed regulation to implement historic revisions to the WIC food packages. Vogel Decl. ¶ 18.

26. Concurrent with the development of the interim rule, WIC staff was also responsible for developing a policy memorandum and providing extensive technical assistance to state agencies regarding a moratorium on the authorization of new above-50-percent vendors. Vogel Decl. ¶ 18.

27. The FNS staff available to work on WIC-related issues was five fulltime employees. Vogel Decl. ¶ 5.

28. Concurrent with the development of the interim rule, the FNS has been responsible for developing about 70 policy memoranda and 25 regulations, all required to implement the requirements of the WIC Reauthorization Act. Vogel Decl. ¶ 5.

29. The FNS decided to issue an interim final rule without prior notice and comment based on the explicit Congressional authorization to do so, the need to provide states with guidance prior to the December 30, 2005 implementation deadline to comply with the Congressional mandate and restrain program costs, and the necessity of data collection. A notice and comment period prior to the effective date of the rule would have rendered meeting the Congressional deadline impracticable. Vogel Decl. ¶ 19.

**The Impact of Above-50-Percent Vendors**

30. The FNS received data that the WIC-only stores in California were paid prices 13 to 16 percent higher than prices paid to other authorized vendors. Vogel Decl. ¶ 17. Their prices were higher even than those of comparable vendors. See also Presentation by Zoe Neuberger, Center on Budget and Policy Priorities (Dec. 10, 2004) (filed as Exhibit B, AR 01540-01552).

31. Despite rising program costs, the California agency was unable to check skyrocketing program costs without federal intervention. Without the allocation of additional $26.4 million in contingency funds, California would have been forced to turn away eligible women and children. Vogel Decl. ¶¶ 17, 19-20.

32. In Texas, prices at WIC-only stores were more than 28 percent higher than the state average. See Burger, Carroll & Associates, Inc., Retailer Peer Grouping Study for Competitive Pricing (Dec. 30, 2003) (filed as Exhibit C, AR 00456-00466).

33. A Texas peer grouping study found that the authorization of WIC-only stores tends to expand the use and food sales of the most expensive vendors. See Burger, Carroll

        & Associates, Inc., Retailer Peer Grouping Study for Competitive Pricing (Dec. 30, 2003) (filed as Exhibit C, AR 00456-00466).

34. The limitation of the average payments to above-50-percent vendors only to allegedly comparable vendors with no further limit would still result in higher total program costs because such vendors would be compared to the most expensive regular vendors, smaller stores that lack the economies of scale of major grocery store chains. Vogel Decl. ¶ 20.

35. A comparison only to comparable vendors with no further limit would result in payments for WIC-only stores at the highest reimbursement level and less total monies available for the provision of benefits. Vogel Decl. ¶ 20.

**Regulatory Flexibility Act Analysis**

36. About 2.5 percent of the approximately 45,000 authorized vendors are WIC-only stores. Vogel Declaration in Opposition to Plaintiffs' Motion for TRO ¶ 8.

37. About 3-4 percent of all authorized vendors will need to make some changes in their prices in order to be deemed competitive. 70 Fed. Reg. 71709.

38. The FNS does not believe that the rule will have a significant economic impact on a substantial number of small entities. However, it is not currently feasible to fully consider the rule's impact on small entities because of the flexibility given States to implement the requirements in a manner appropriate to their markets. 70 Fed. Reg. 71709.

Dated: January 17, 2005                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

JAMES J. GILLIGAN
Assistant Director, Federal Programs Branch


/s/ Amy E. Powell
AMY E. POWELL
Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W. Rm. 7217
Washington, D.C. 20530
Telephone: (202) 514-9836
Facsimile: (202) 616-8202
Email: amy.powell@usdoj.gov

Attorneys for Defendants