IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS, AND ) <br> CHILDREN GROCERS ASSOCIATION, ) <br> NUTRITIONAL FOOD DISTRIBUTORS, INC.,) <br> COUNTY FOOD SERVICES, INC., and ) <br> DILLARD FOODS, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FOOD AND NUTRITION SERVICE, ) <br> ) <br> Defendant. ) | Civil Action No. 05-2432 (EGS) |

*AMICUS CURIAE* NATIONAL FEDERATION OF INDEPENDENT BUSINESS
LEGAL FOUNDATION'S SUPPLEMENTAL BRIEF

*Amicus Curiae* National Federation of Independent Business Legal Foundation respectfully submits the following supplemental memorandum, as the Court authorized at its January 26, 2006, summary judgment hearing, regarding remedial issues in this case relating to the Regulatory Flexibility Act, 5 U.S.C. §§ 601-612 ("RFA").

As an initial matter, the summary judgment hearing brought the RFA's scope, a predicate question to remedy, into sharper focus. The RFA's definitions section states: "For purposes of this chapter - the term 'rule' … include[es] any rule of general applicability governing Federal **grants** to State and local governments for which the agency provides an opportunity for notice and public comment …." 5 U.S.C. § 601(2) (emphasis added). Incongruously, the Federal Defendant, Food and Nutrition Service ("FNS"), has sought to *evade* the RFA's applicability by characterizing its WIC program as a grant and benefit program administered through the states.

Instead of considering the RFA's expressly defined scope, FNS inaptly directs the Court to cases involving whether a regulation directly regulates a small entity. *See, e.g., Cement Kiln*

*Recycling Coalition v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001). These RFA "indirect regulation" cases stem from *Mid-Tex Elec. Coop. v. FERC*, 773 F.2d 327, 432 (D.C. Cir. 1985). *See, e.g., Cement Kiln*, 255 F.3d at 869. For its part, *Mid-Tex* derived the standard from the RFA's preamble, rather than its operative terms. *See* 773 F.2d at 341. A statute's operative terms control over its preamble, *Ass'n of American Railroads v. Costle*, 562 F.2d 1310, 1316 (D.C. Cir. 1977); *Yazoo and Miss. Valley R.R. Co. v. Thomas*, 132 U.S. 174, 188 (1889), particularly when the operative language establishes a specific "definition which declares what a term 'means' [and] is binding upon the court," *Nat'l City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1133-34 (8th Cir. 1982), *relying on Colautti v. Franklin*, 439 U.S. 379, 392-93 n.10 (1979).

Turning now to remedy, the RFA specifically provides for deferral of a rule's effectiveness as against small entities, pending agency compliance with this important law, unless the public interest countervails. *See* 5 U.S.C. § 611(a)(4)(B). This Court has directed the parties to consider Judge Kessler's decision in *Nat'l Ass'n of Psychiatric Health Sys. v. Shalala*, 120 F. Supp. 2d 33 (D.D.C. 2000). That case based its analysis regarding an RFA-based injunction on two standards, irreparable injury and the public interest. 120 F. Supp. 2d at 44-45.

First, the RFA's "[c]ongressional intent and statutory purpose can be taken as a statement of public interest." *Johnson v. United States Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984). Furthermore, the D.C. Circuit has recently concluded that the FCC's failure to comply with the RFA in connection with its implementation of telephone number porting requirements required deferral of the rule's effectiveness as to small entities until the FCC complied with the RFA, notwithstanding the FCC's argument that the Telecommunications Act of 1996, P.L. No. 104-104, § 251(b)(2) (codified at 47 U.S.C. § 251(b)(2)), required it to implement the number porting regime at issue and notwithstanding the fact that the D.C. Circuit failed to find a violation of

Administrative Procedure Act ("APA") rulemaking requirements based on the same operative facts. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38, 41-43 (D.C. Cir. 2005). Significantly, *USTA*'s strong affirmation of the public interest in agency RFA compliance to protect small businesses post-dates *Nat'l Ass'n of Psychiatric Health Sys.*

Other courts have provided for injunctive relief under the RFA, rejecting agency arguments that statutory commands for substantive agency action to protect the environment (as opposed to simply saving money, as in the case at bar), out-weighed the RFA as a matter of the public interest. *Northwest Mining Ass'n v. Babbitt*, 5 F. Supp. 2d 9, 15-16 (D.D.C. 1998) (issuing injunction for failure to apply the correct small business size standard, notwithstanding Interior Department arguments regarding its statutory obligation to mitigate environmental harm from hard-rock mining operations); *Harlan Land Co. v. U.S. Dep't of Agric.*, 186 F. Supp.2d 1076 (E.D. Cal. 2001) (enjoining environmental risk-based USDA citrus importation requirements for, among other things, APA and RFA violations).

Critical to the public interest inquiry, moreover, FNS is violating more than just the RFA. In fact, FNS informed the Court at the recent hearing that it has no plans to comply with the WIC Reauthorization Act's requirement to implement a final rule setting the applicable cost containment standards within two years of the law's June 30, 2004, enactment. *See* P.L. No. 108-265, § 501(c) (implementation deadline). FNS instead unilaterally decided to avail itself of that Act's optional authority to employ an interim final rule, *id.*, § 501(b), and then to treat that interim final rule as a proposed rule, allowing it to obtain comments on how the interim final rule operates for purposes of the RFA and presumably the APA. 70 Fed. Reg. 71708, 71708 & 71709 (Nov. 29, 2005).

At this stage, the public interest and long-term, hence irreparable injury intersect. If FNS complied with the WIC Reauthorization Act's timeline, there would at least be the possibility that, in five months (by the law's June 30, 2006 deadline), the FNS would have considered the RFA issues more fully.[1] But FNS is instead planning to implement the draconian interim cost containment rule for the foreseeable future, though FNS recognizes the rule's deleterious impact on small business, WIC-only stores. *See* 70 Fed. Reg. at 71709 (projecting significant economic impact on "smaller grocery stores that serve WIC participants exclusively or predominantly …."). Judge Kessler did not identify the same compounding of agency violations of law in her public interest and injury calculations in *Nat'l Ass'n of Psychiatric Health Sys.*

Courts have provided for injunctive relief under the RFA when, following an initial remand, an agency's RFA violations were not remedied. *Southern Offshore Fishing Ass'n v. Daley*, 55 F. Supp. 2d 1336, 1345 (M.D. Fla. 1999) (*SOFA II*), *vacated upon settlement*, No. 97-1134-CIV-T-23C, 2000 U.S. Dist. LEXIS 20496 (M.D. Fla. Dec. 7, 2000); *cf. North Carolina Fisheries Ass'n, Inc. v. Daley*, 27 F. Supp. 2d 650, 666-67, 668 (E.D. Va. 1998) (injunctive relief under RFA and Magnuson-Stevens Act, 16 U.S.C. § 1801, *et seq.*). Inasmuch as FNS has already announced that it will not comply with the RFA in the time that Congress required in the WIC Reauthorization Act, there is no need for a fruitless remand of the type demonstrated in the cases cited immediately above to establish the on-going nature of the RFA violation and injury presented. In short, the WIC-only vendors should not find themselves in a position similar to those in *SOFA II* of having "reaped no reward and enjoyed no relief" from demonstrating and

---

[1] As *Amicus* explained in its earlier submission, however, FNS's approach is based on the highly debatable premise that it can construct rational RFA analyses on top of a fundamentally flawed "no significant impact" finding lacking any administrative record support. *See Southern Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411, 1436-37 (M.D. Fla. 1998) (invalidating Commerce Department efforts, eerily paralleling FNS's announced plans, to construct a final regulatory flexibility analysis based on an irrational 5 U.S.C. § 605(b) certification).

*Amicus Curiae*, **NFIB's Supplemental Brief- Page 4**

suffering from the FNS's RFA defalcations by having to face a fruitless remand. 55 F. Supp. 2d at 1345.

Furthermore, this case is distinguishable from *Nat'l Ass'n of Psychiatric Health Sys.* in that this Court has been presented with detailed declarations from the Plaintiffs and the *Amicus* regarding the adverse economic impact that the FNS cost containment rule is expected to have on small business, WIC-only vendors – the universe within the regulated community that the rule is specifically designed to target. *Compare* 120 F. Supp. 2d at 44 (plaintiffs project $100 million in compliance costs, but "offer no concrete, reliable evidence to support their contentions of irreparable harm"). By contrast, the FNS in its RFA analyses has already, as quoted above, recognized the adverse and debilitating impact this rule will have on small business, WIC-only stores. Accordingly, this Court should defer the cost containment rule at issue as against small entities pursuant to the RFA, 5 U.S.C. § 611(a)(4)(B).

DATED:  January 31, 2006

>Respectfully submitted,
>_____/s/_____
>David E. Frulla (D.C. Bar No. 414170)
>Shaun M. Gehan (D.C. Bar No. 483720)
>COLLIER SHANNON SCOTT, PLLC
>3050 K Street, N.W., Suite 400
>Washington, D.C.  20007
>Telephone:  (202) 342-8400
>Facsimile:   (202) 342-8451
>
>OF COUNSEL:
>Karen R. Harned (D.C. Bar No. 456803)
>Elizabeth Gaudio (D.C. Bar No. 458688)
>NFIB Legal Foundation
>1201 F Street, N.W., Suite 200
>Washington, D.C. 20004
>Telephone:  (202) 314-2061
>Facsimile:   (202) 484-1566
>Counsel for Amicus Curiae National Federation of Independent Business Legal Foundation