UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS AND CHILDREN GROCERS ASSOCIATION, et. al.,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>FOOD AND NUTRITION SERVICE,<br><br>　　　　　　　　　　　　　　Defendant. | SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:05-cv-02432-EGS<br>Judge Emmet G. Sullivan |

## INTRODUCTION

Defendant Food and Nutrition Service ("FNS") submits this supplemental memorandum in response to questions posed by the Court at the summary judgment hearing on January 26, 2006, regarding (1) appropriate relief if the Court should find a violation of the Regulatory Flexibility Act ("RFA"), and (2) the "retroactivity" of the interim final rule. As to the first question, if this Court concludes that the RFA requires a regulatory flexibility analysis of the interim final rule that was not satisfactorily completed, then the appropriate remedy is a remand without vacatur, the approach taken by Judge Kessler in Nat'l Ass'n of Psychiatric Health Sys. v. Shalala, 120 F. Supp. 2d 33, 44-45 (D.D.C 2000). Regarding the second question, the interim rule does not permit retroactive recoupment. As FNS has already advised the states, the rule, 7 C.F.R. § 246.12(g)(4)(i)(D), does not permit recoupment actions by states against vendors (nor by FNS against the states) based on retroactive application of cost containment requirements. Any hypothetical possibility that some state agency might ignore the definitive federal guidance on this issue raises no issue of wrongdoing on the part of the FNS.

**ARGUMENT**

I.   EVEN IF THERE COULD BE AN RFA VIOLATION HERE, THE APPROPRIATE REMEDY IS TO REMAND WITHOUT VACATING THE RULE

As defendant has shown (Def. SJ Mem 38-40; Def. SJ Opp. 20-21), an RFA analysis was not required for the promulgation of the interim final rule principally because the D.C. Circuit has repeatedly and unequivocally held that the RFA does not apply where, as here, the rule in question does not directly regulate small businesses.  See, e.g., American Trucking Assoc. v. EPA, 175 F.3d 1027, 1045 (D.C. Cir. 1999), rev'd in part on other grounds, sub nom Whitman v. American Trucking Assoc., 531 U.S. 457 (2001).[1]

If this Court should nevertheless conclude that a regulatory flexibility analysis was required but was not performed, the statute would then require the Court to order "corrective action" by the agency, including "remanding the rule to the agency" and "deferring enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest." 5 U.S.C. § 611(a)(4).  The Court made such a finding in Nat'l Ass'n of Psychiatric Health Sys. ("NAPHS").  In that case, the Court found that the agency had failed to comply with the RFA, 120 F. Supp. 2d at 43-44, and in light of this deficiency, the Court considered the propriety of injunctive relief under the usual four-factor standard: "(1) success on the merits; (2) irreparable harm absent the injunction; (3) the balance of hardship tips in favor of the plaintiff if an injunction is not granted; and (4) the public interest." Id. at 44.  Finding that the plaintiffs "offer[ed] no concrete, reliable

---

[1] An RFA analysis was not required for the additional reasons that (1) notice and comment was not required, see 5 U.S.C. § 604(a); and (2) the certification provided by the FNS (that there would not be a significant effect on a substantial number of small businesses) was adequate certification under 5 U.S.C. § 605(b).  Furthermore, all of the elements of a regulatory flexibility analysis were in fact completed and published in the Federal Register, and the RFA discourages duplicative analyses.  5 U.S.C. § 605(a). (Def. SJ Mem 37-45; Def. SJ Opp. 20-23.)

evidence to support their contentions of irreparable harm" and that "the public interest would best be served by continued enforcement of the Rule, " the Court declined to enjoin enforcement of the rule against small entities, and simply remanded to the agency for completion of a final regulatory flexibility analysis.[2] Id. at 44-45.

Here, as in NAPHS, the public interest would be best served by continued enforcement of the rule, even if there could be an RFA violation in this case. As a threshold matter, the injunctive relief that is principally (albeit not exclusively) contemplated by the RFA – deferring "enforcment of the rule against small entities," is not as a practical matter available here. The interim rule cannot be enforced in the first place against small entities because it only regulates state agencies. The Court cannot enjoin enforcement action by state agencies because they are not parties before the Court. The only relief which may be available to plaintiffs – relief of the sort under the TRO, which prevents the FNS from enforcing parts of the rule against states – would be contrary to the public interest, not only as the agency views it, but also as Congress itself has defined it.

Unlike the case in NAPHS, where the agency acted at its own initiative, 120 F. Supp. 2d at 36, the rule here was mandated by act of Congress. By expressly directing that states implement vendor cost-containment measures by December 30, 2005, and directing the FNS to issue regulations to ensure that those reforms are followed, Congress has already made the determination that it is

---

[2] A brief survey of the caselaw suggests that courts often, perhaps usually, take this approach. See, e.g., Ashley County Medical Center v. Thompson, 205 F.Supp.2d 1026, 1068 (E.D.Ark. 2002) (noting that the public interest in fiscal integrity of the Medicaid program would prevent the Court from enjoining enforcment even if an RFA violation were found); Southern Offshore Fishing Ass'n v. Daley, 995 F.Supp. 1411, 1437 (M.D.Fla. 1998) (finding public interest to justify a remand to agency for RFA analysis without enjoining enforcement). In U.S. Telecom Ass'n v. FCC, 400 F.3d 29, 43 (D.C. Cir. 2005), the D.C. Circuit did stay enforcement of a regulation against small entities, but in that case, the Court expressly noted that the agency asserted *no* public interest in continued full enforcement of the regulation.

important *now* to control costs, and to maximize the number of eligible women and children who may be served by the WIC program, regardless of any effect on the bottom line of WIC-only vendors. As the defendant has shown, vacatur of the interim final rule would frustrate these Congressional purposes. (Def. SJ Opp. 23-31.)

Moreover, deferring enforcement of the rule would disserve the public interest by creating regulatory confusion and uncertainty. Regardless of the status of the interim final rule, the states must implement the vendor cost-containment requirements, see 42 U.S.C. § 1786(h)(11)(A), (E), (G), and the FNS must make decisions about certifying state plans, see 42 U.S.C. § 1786(f)(1), (h)(11)(E). These actions are mandated by the statute regardless of the outcome of this proceeding or of a regulatory flexibility analysis. Without federal guidance, however, state implementation may be less effective – or harder on WIC-only vendors – than necessary to achieve Congress's objective; the certification process may be less fair to the states in the absence of objective criteria.

Plaintiffs have made no showing of irreparable harm that outweighs the public interest against vacatur. The conclusory but doomsday predictions of the plaintiffs' original affidavits have not come to pass. As plaintiffs' counsel admitted at oral argument, WIC-only vendors have not been forced to shut their doors under the burden of catastrophic new state regulations; it has been, in the words of plaintiffs' counsel, "business as usual," notwithstanding the limited numbers of WIC-only vendors to which the TRO applies. Indeed, injunctive relief might heighten the risk of such harm if states, lacking federal guidance, act to protect their bottom line against future FNS enforcement action, by imposing draconian cost controls on WIC-only vendors. For these reasons, as in NAPHS, a remand without vacatur would be the only appropriate remedy for an RFA violation.[3]

---

[3] Such a remedy would be consistent with the remand that the FNS suggested in its opposition brief as appropriate if this Court should find a violation of agency policy or a

II.     THE INTERIM FINAL RULE DOES NOT ALLOW RETROACTIVE RECOUPMENT

In the plaintiffs' memorandum in support of their motion for summary judgment, the plaintiffs argued for the first time that the interim final rule is impermissibly retroactive in light of its alleged provision for "retroactive recoupment" from WIC-only vendors. (Pls. SJ Mem. 33-35.)[4]

A retroactive law or rule is one which "attaches new legal consequences to events completed before its enactment." Landgraf v. USI Film Products, 511 U.S. 244, 269-70 (1994). See also Miller v. Florida, 482 U.S. 423, 430 (1987) ("A law is retrospective if it changes the legal consequences of acts completed before its effective date.") (internal quotation marks omitted). Because "[r]etroactivity is not favored in the law," there is a presumption that statutes are not intended to have retroactive effect. See Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 208 (1988). In Bowen, for example, the Court held that Congress did not intend to confer authority on the Department of Health and Human Services to recoup money from Medicare service providers that was lawfully paid *prior* to issuance of the regulations in question. 488 U.S. at 215.

The interim final rule imposes several cost-containment measures on state agencies, none of which are retroactive. Among the cost-containment requirements imposed by the rule is a quarterly assessment of whether or not the state agency has achieved the statutorily-required cost-neutrality of WIC-only vendors. See 7 C.F.R. § 246.12(g)(4)(i)(D). If the state has not done so, the state must "take necessary action to ensure compliance, such as adjusting payment levels, recouping excess

---

substantive deficiency in the rule. (Def. SJ Opp. 23-31.)

[4]This claim was not made in the plaintiffs' complaint or in their motion for a TRO, but for the first time in the plaintiffs' motion for summary judgment. As argued in the opposition, the claim should be dismissed because it is untimely, because it misconstrues the interim rule and thus fails to state a claim, and because the plaintiffs lack standing to bring the claim in the first place. (Def. SJ Opp. 9-14.)

payments, or terminating vendor agreements with above-50-percent vendors whose prices are least competitive and that are not needed to ensure participant access." Id. (emphasis added).

Contrary to plaintiffs' suggestions, the recoupment language of section 246.12(g)(4)(i)(D) does not even permit, much less require, states to retroactively apply new payment levels in order to recoup lawfully-made payments to WIC-only vendors that were within the maximum reimbursement levels in effect at the time the payments were made. The rule is intended to require recoupment solely of <u>unlawful</u> payments, i.e., those above the maximum reimbursement levels in place at the time. The FNS has already made its interpretation of this recoupment language crystal clear in written guidance to the states: "FNS <u>will not permit</u> a State agency to recoup any payment to a vendor that is within the established maximum allowable reimbursement level for that vendor, either in whole or in part, for cost containment purposes." See Final WIC Policy Memorandum #2006-4 (emphasis added) (attached to Supplemental Vogel Declaration, filed with Def. SJ Opp).[5]

Thus, the recoupment provision of the interim rule is not retroactive, because it does not impose "new legal consequences [on] events completed prior to its enactment." See Landgraf, 511 U.S. at 269-70. Any such argument by plaintiffs must be rejected as contrary to FNS's own interpretation of the rule. An agency's reasonable interpretation of its own rule is controlling unless it is plainly erroneous. See Auer v. Robbins, 519 U.S. 452, 461 (1996); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). A reviewing court does not choose among competing alternative interpretations; rather courts must defer to the agency's interpretation "unless an alternative reading is <u>compelled</u>" by the plain language of the regulation. Id. (emphasis added). Nothing in the interim

---

[5] The FNS has a number of means to enforce this memorandum. For example, it can refuse to certify or require revision to a state plan. See 7 C.F.R. § 246.12(g)(4)(vi), 246.12(a)(3). The FNS can even withhold funds from a state under 7 C.F.R. § 246.12(a)(3).

final rule <u>compels</u> a finding that the agency authorized retroactive recoupments, particularly in light of the agency's express disavowal of such interpretation.  Thus, nothing in the phrase "recouping excess payments" can be taken to authorize a state to apply a new rule of law to past acts.[6]

Plaintiffs also suggested at oral argument that the rule may be retroactive insofar as it provides that, if a state has failed to ensure the cost-neutrality of WIC-only vendors, "FNS will establish a claim against the State agency to recover excess food funds expended . . . ." 7 C.F.R. § 246.12(g)(4)(i)(D).  Such a claim would not be a retroactive measure taken against the states; it would merely amount to enforcement of cost-containment requirements (with which the states have been obligated to comply since December 30, 2005) through recoupment of funds expended after December 30 in excess of those requirements.  Furthermore, there is ample statutory authority for the FNS to establish such a claim against a state.  <u>See</u> 42 U.S.C. § 1786(f)(10) (explicitly allowing the agency to take action against states, including to "withhold such amounts of the State agency's funds for nutrition services and administration as the Secretary deems appropriate.").  In any event, insofar as plaintiffs are purporting to challenge the FNS's authority to bring a recoupment claim against a state at some unknown point in the future, the claim is not only speculative, but also must be rejected because plaintiffs cannot assert the rights of third parties.  <u>U.S. Dept. of Labor v. Triplett</u>, 494 U.S. 715, 720 (1990) (a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties . . . even when the very same allegedly illegal act that affects the litigant also affects a third party") (internal quotation marks omitted).

---

[6] Nor is the quarterly assessment required by subparagraph (g)(4)(i)(D) retroactive within the meaning of <u>Landgraf</u>.  If an assessment reveals that a state agency has failed to meet its cost containment obligations, the state is required to take prospective steps to come into compliance with the previously-imposed rule.

Dated: January 31, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

JAMES J. GILLIGAN
Assistant Director, Federal Programs Branch

/s/ Amy E. Powell
AMY E. POWELL
Attorney, Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W. Rm. 7217
Washington, D.C. 20530
Telephone:   (202) 514-9836
Facsimile:   (202) 616-8202
Email:   amy.powell@usdoj.gov

Attorneys for Defendants