IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN, INFANTS, AND )
CHILDREN GROCERS ASSOCIATION, )
NUTRITIONAL FOOD DISTRIBUTORS, INC., )
COUNTY FOOD SERVICES, INC., and )
DILLARD FOODS, INC., )
)
                Plaintiffs, )
  v. ) Civil Action No. 05-2432 (EGS)
)
FOOD AND NUTRITION SERVICE, )
)
                Defendant. )
)

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs National Women, Infants, and Children Grocers Association, Nutritional Food Distributors, Inc., County Food Services, Inc., and Dillard Foods, Inc. respectfully submit this supplemental memorandum in support of their motion for summary judgment. This memorandum addresses several issues raised by this Court during the hearing on motions for summary judgment on January 26, 2006.

\*    \*    \*

1. **This Court Should Vacate The Rule And Remand For Notice And Comment Rulemaking Consistent With Both The Administrative Procedure Act And The Regulatory Flexibility Act**

This Court inquired whether the remedy adopted by Judge Kessler in *National Association of Psychiatric Health Systems v. Shalala*, 120 F. Supp. 2d 33 (D.D.C. 2000) – remand without vacating the underlying rule – would be the appropriate remedy if this Court concludes that FNS had failed to comply with the RFA when promulgating its Rule.

Plaintiffs rely upon *National Association of Psychiatric Health Systems* to establish that FNS failed to conduct an adequate RFA analysis, as FNS's purported analysis is very similar to the RFA analysis that was found to be "severely lacking" in that case because the Department of Health and Human Services ("HHS") had failed to provide any "discussion of what, if any, steps the agency took to minimize the significant economic impact on small businesses." *Nat'l Ass'n of Psychiatric Health Sys. v. Shalala*, 120 F. Supp. 2d at 43-44. *See* Plfs. Mem. at 24-25; Plfs. Opp. Mem. at 29.

In that case, Judge Kessler found that HHS had not complied with the RFA and remanded the regulation with instructions to conduct a compliant RFA analysis. *Id.* at 44-45. However, the Court declined to enjoin enforcement of the regulation because the plaintiffs had failed to demonstrate irreparable harm and because continued enforcement of the regulation was in the public interest. *Id.*

In *National Association of Psychiatric Health Systems*, HHS had published a proposed rule and sought public comment. After consideration of the 60,000 comments submitted, HHS published an interim final rule which responded to the comments the agency had already received and invited additional public comment. The interim final rule was challenged because, among other reasons, HHS purportedly had not provided adequate notice of the issues addressed in the interim final rule. The Court rejected that contention, concluding that the interim final rule was a "logical outgrowth" of the proposal. Thus, the Court found that HHS had not violated the notice-and comment requirement of the APA. *Id.* at 41. The Court also rejected the contention that HHS's rule was substantively deficient because it was purportedly not rational. *Id.* at 42.

Except for the inadequate RFA analysis, the contrast with the present case is obvious. Here, FNS published its Rule without the benefit of *any* prior public notice and comment. As Plaintiffs have discussed, FNS's action violated the APA and USDA's 1971 policy. *See* Plfs. Mem. at 17-22; Plfs. Opp. Mem. at 8-21. Plaintiffs have also demonstrated a number of reasons why FNS's Rule is substantively deficient. *See* Plfs. Mem. at 26-35 and Plfs. Opp. Mem. at 1-7.

2

In determining the appropriate remedy in *National Association of Psychiatric Health Systems*, Judge Kessler was not confronted with a regulation fraught with APA and substantive deficiencies. Rather, the *only* violation found by Judge Kessler was HHS's failure to comply with the RFA. Here, the remedy adopted by Judge Kessler would be inadequate for four reasons. First, FNS's Rule was promulgated with complete disregard of notice-and comment requirements under the APA and USDA's 1971 Federal Register notice. *See* Plfs. Mem. at 17-22 and Plfs. Opp. Mem. at 8-21. Second, as Plaintiffs have demonstrated and this Court has held, WIC-only stores will suffer irreparable harm if FNS's Rule is implemented. *See* Plfs. TRO Mem. at 15-18; Plfs. TRO Reply at 3-6; TRO of December 29, 2005. Third, the public interest will be served if FNS is enjoined from enforcing its Rule. *See* Plfs. TRO Mem. at 18-20. Fourth, FNS's Rule is substantively deficient. *See* Plfs. Mem. at 26-35 and Plfs. Opp. Mem. at 1-7. Thus, vacatur of FNS's Rule is the appropriate remedy where the agency's RFA violations are coupled with notice and comment violations, s*ee Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 15 (D.D.C. 2004) ("vacatur is the normal remedy for an APA violation"), where the Rule is substantively deficient, and where the injury to Plaintiffs is documented as substantial.[1]

2. **The Draft Guidance Distributed By FNS Contains A Rational Option For Implementing The Cost Containment Provisions Of The Reauthorization Act**

Plaintiffs have discussed how FNS's interpretation – which reads a retroactive averaging requirement into the cost neutrality provision of 42 U.S.C. § 1786(h)(11)(A) – is inconsistent with

---

[1] The RFA provides that one judicial remedy for the failure to comply with its requirements is "deferring the enforcement of the rule against small entities unless the court finds that continued enforcement of the rule is in the public interest." 5 U.S.C. § 611(a)(4)(B). In the event this Court concludes that FNS's only violation was the failure to conduct an adequate RFA analysis, this Court should, at a minimum, defer enforcement of the Rule against small entities. Because continued enforcement of the Rule would deprive WIC Program beneficiaries of the many benefits of being able to shop at WIC-only stores and put most WIC-only stores out of business, *see* Plfs. TRO Mem. at 18-20, Plaintiffs respectfully submit that there is no factual basis for concluding that continued enforcement of the Rule is in the public interest.

the Reauthorization Act. The Rule will subject WIC-only stores to after the fact price averaging that will be lower than the prices which they have been authorized to charge using comparable prices that form the basis for the certification requirement found at section 1786(h)(11)(E)). *See* Plfs. Mem. at 26-30 and Plfs. Opp. Mem. at 1-6.

As Plaintiffs discussed during argument, there is at least one other interpretation available to FNS that is not only consistent with the statute but also reasonable. In FNS's July 2005 draft guidance document, which was distributed to states but never published, the agency stated that the certification process of section 1786(h)(11)(E) could be used to ensure compliance with the aggregate cost neutrality requirement in section 1786(h)(11)(A). In particular, the agency said that through consistent application of the certification requirement in section 1786(h)(11)(E) "the State agency would satisfy the overarching cost neutrality requirement in section [1786(h)(11)(A)]." FNS Draft Guidance on Vendor Cost Containment at 9 (July 2005) (Exhibit A).[2] FNS has offered no explanation as to why it discarded this previous reasonable interpretation (as set forth in the draft guidance) in favor of the interpretation set forth in the Rule, which is both inconsistent with the statute and extraordinarily harmful to WIC-only vendors.

---

[2] FNS's draft guidance does not appear in the Administrative Record, was not published in the Federal Register, and is not available at the FNS website. The draft guidance was provided to Plaintiffs' counsel by FNS by letter dated December 15, 2005, and though other informal communications.

### 3. The Retroactive Averaging And Remedial Actions Required By § 246.12(g)(4)(i)(D) Remain Part Of The Rule Despite FNS's Disavowal Of Recoupment And Will Be Fatally Damaging To Plaintiffs' Businesses

Unless the Rule is vacated, it will cause continuing injury to WIC-only stores because of its requirement for after the fact reimbursement adjustments. Apparently, FNS has advised states that they will not be allowed to seek "recoupment"[3] from vendors on the basis of after the fact reimbursement adjustments based on section 1786(h)(11)(A)(i)(III)(bb).[4] Nevertheless, FNS will still take compliance action against states that fail to enforce after the fact averaging requirements that FNS has included in 7 C.F.R. § 246.12(g)(4)(i)(D), and FNS will require "remedial action" by states which fail to "ensure that [WIC-only] vendors do not result in higher costs to the program… [than] … regular vendors." 7 C.F.R. § 246.12(g)(4)(i)(D). In such instances, "FNS will establish a claim against the State agency to recover excess food funds expended and will require remedial action." Id. This means FNS will recoup funds from a state, even though the state will not be permitted to recoup funds from a vendor.

Since states will be exposed to financial liability if the "cost neutrality" averages calculated quarterly pursuant to § 246.12(g)(4)(i)(D) are lower than the "competitive price criteria" and "allowable reimbursement levels" previously certified by FNS under § 246.12(g)(4)(vi), state officials will inevitably set their "competitive price criteria" and "allowable reimbursement levels" on the basis of food instrument costs at "regular vendors," rather than on the basis of food instrument costs at average "comparable" stores, even though the latter test is specifically required both by § 246.12(g)(4)(vi) and by the statutory language of 42 U.S.C. § 1786(h)(11)(E). The result will be

---

[3] Despite FNS's statement that the Rule does not provide for recoupment (FNS Mem. at 13 n. 8), authority for "recouping excess payments" remains in the Rule at 7 C.F.R. § 246.12(g)(4)(i)(D).

[4] See January 11, 2006 "Final WIC Policy Memorandum #2006-4, Vendor Cost Containment Interim Rule," attached to Jan. 20, 2006 Vogel Declaration.

that WIC-only stores will in effect be subject to anticipatory recoupment and held to prices and reimbursement levels calculated to be well within the average for regular vendors. If that average is exceeded, the state will get a bill from FNS. No state official can risk such an occurrence. Thus, WIC-only stores will not receive the benefit of the statutory standard set forth in section 1786(h)(11)(E). As previously discussed (Plfs. Mem. at 29-30 and Plfs. Opp. Mem. at 4-6), the effect is to read section 1786(h)(11)(E) out of the statute and to subject WIC-only stores – but not their comparable competitors – to a very harsh averaging requirement that the vast majority will be unable to meet.

\* \* \*

For the reasons discussed above, and in Plaintiffs' opening memorandum and memorandum in opposition to FNS's motion for summary judgment, this Court should grant Plaintiffs' motion for summary judgment and deny FNS's motion for summary judgment. This Court should vacate FNS's Rule.

Dated: January 31, 2006                     Respectfully submitted,

Philip C. Olsson, Bar No. 172163
Arthur Y. Tsien, Bar No. 411579
OLSSON, FRANK AND WEEDA, P.C.
1400 16th Street, N.W., Suite 400
Washington, D.C. 20036-2220
(202) 789-1212
(202) 234-3537 (fax)

Attorneys for National Women, Infants, and Children Grocers Association, Nutritional Food Distributors, Inc., County Food Services, Inc., and Dillard Foods, Inc.