# EXHIBIT A

**USDA**

**United States
Department of
Agriculture**

DEC 1 5 2005

**Food and
Nutrition
Service**

**3101 Park
Center Drive**

**Alexandria, VA
22302-1500**

Mr. Evan Brennan
Olsson, Frank, and Weeda, P.C.
1400 16th Street, N.W.
Suite 400
Washington, D.C.  20036

Dear Mr. Brennan:

Enclosed is the draft guidance on WIC cost containment requirements as requested in your email message of December 9, 2005.  Please be advised that the guidance is considered draft and does not reflect final policy.

Sincerely,

PATRICIA N. DANIELS
Director
Supplemental Food Programs Division

Enclosure

**DRAFT**

# GUIDANCE ON VENDOR COST CONTAINMENT

## Contents

Page

Reason for Issuance...................................................................... 1

Content of Guidance...................................................................... 1

Above-50-Percent Vendors.............................................................. 2
    Legislative Provision
    Choosing to Authorize Above-50-Percent Vendors
    Methodology for Identifying Above-50-Percent Vendors
        Current Vendors
        Vendor Applicants
    Establishing Competitive Price Criteria for Above-50-Percent Vendors
    Participant Access Determination
    Administrative Review Requirements

Vendor Cost Containment Certification................................................. 9
    Legislative Provision
    The Purpose of Certification
    Identifying Comparable Vendors
    Calculating Average Food Instruments Payments
    The Request for Certification
    Notification of Certification
    Maintaining the Cost Neutrality of Above-50-Percent Vendors
    Term of a Certification

Exemption from the Vendor Peer Group Requirement............................... 18
    Legislative Provision
    Requesting an Exemption
    Term of an Exemption

Vendor Peer Groups...................................................................... 21

Determining Competitive Price........................................................... 21

Dates....................................................................................... 21

**DRAFT**

## GUIDANCE ON VENDOR COST-CONTAINMENT

Reason for Issuance

This guidance is intended to assist State agencies to achieve compliance with section 17(h)(11) of the Child Nutrition Act of 1966 (CNA), as amended by the Child Nutrition and WIC Reauthorization Act of 2004 (Public Law 108-265). Section 17(h)(11), *Vendor Cost Containment*, imposes more stringent requirements on State agencies than those found in current WIC regulations (7 CFR Part 246). The new requirements underscore the State agency's responsibility to ensure that the program pays all vendors competitive prices for supplemental foods. While State agencies have flexibility under the CNA to design vendor cost containment systems that meet their individual needs, they also have increased accountability to demonstrate that these systems are operating effectively. A primary measure of effectiveness is a State agency's ability to contain the costs to the program of vendors that derive more than 50 percent of their annual food sales revenue from WIC food instruments (referred to in this guidance as "above-50-percent vendors"). Other measures of effective vendor cost containment apply to all State agencies; thus FNS expects that every State agency will view the new requirements as both a mandate and an opportunity to enhance present performance.

Content of Guidance

As the Food and Nutrition Service (FNS) prepares to issue regulations pursuant to section 17(h)(11) of the CNA as amended, this guidance enunciates federal policy on selected vendor cost containment requirements in the legislation in order to facilitate implementation by State agencies. This guidance applies to all State agencies that:

1. Intend to authorize above-50-percent vendors after December 30, 2005, and therefore must obtain FNS certification in accordance with section 17(h)(11)(E) of the CNA regarding payments to these vendors; or

2. Do not intend to authorize any above-50-percent vendors after December 30, 2005, and therefore must take action to ensure that currently authorized vendors and new vendor applicants are not above-50-percent vendors; or

3. Intend to request an exemption from the vendor peer group system requirement in section 17(h)(11)(A) of the CNA; or

4. Need to implement a vendor peer group system as required by section 17(h)(11)(A) of the CNA or modify an existing peer group system, competitive price criteria, and/or allowable reimbursement levels to meet the new vendor cost containment requirements.

FNS will issue further guidance with the publication of vendor cost containment regulations.

1

# ABOVE-50-PERCENT VENDORS

**DRAFT**

## Legislative Provision

Section 17(h)(11)(A)(i) of the CNA contains a new requirement that a State agency must establish a vendor peer group system, unless FNS exempts the State agency from this requirement. In implementing its peer group system, a State agency that chooses to authorize above-50-percent vendors must distinguish such vendors from other vendors within the peer group system. A State agency may distinguish above-50-percent vendors by establishing separate peer groups for them or by applying distinct competitive price criteria and allowable reimbursement levels to above-50-percent vendors that are in peer groups with other vendors.

## Choosing to Authorize Above-50-Percent Vendors

Each State agency that operates a retail food delivery system (as defined in section 246.12(e) of the WIC regulations) must identify the above-50-percent vendors that are currently authorized and any new vendor applicants that are expected to be above-50-percent vendors. This requirement applies to State agencies that use a vendor peer group system and to those that receive approval from FNS to utilize an alternative vendor cost containment system (such as a bid system).

Section 17(h)(11)(A)(i)(III) of the CNA gives State agencies the discretion to choose whether or not to authorize above-50-percent vendors. A State agency that chooses to authorize above-50-percent vendors must first identify these vendors in order to meet requirements of section 17(h)(11) of the CNA related to their selection and reimbursement. A State agency that chooses not to authorize above-50-percent vendors must determine whether any such vendors currently are authorized so that it can take appropriate action to end their authorization. State agencies must ensure that their decision not to authorize above-50-percent vendors does not result in inadequate participant access to supplemental foods. A State agency that authorizes above-50-percent vendors only when needed to ensure participant access must comply with all requirements of section 17(h)(11) related to such vendors.

All State agencies should complete the process of identifying currently authorized above-50-percent vendors by August 30, 2005, using the methodology contained in this guidance. State agencies must continue to apply this methodology annually thereafter to identify above-50-percent vendors. Every State agency that utilizes any above-50-percent vendors after December 30, 2005, must obtain prior FNS approval as discussed below under "Vendor Cost Containment Certification."

## Methodology for Identifying Above-50-Percent Vendors

This guidance provides a uniform procedure for all State agencies to follow in identifying above-50-percent vendors so that they may meet legislative requirements that pertain to these vendors. The procedure relies on objective data and documentation of the revenue that a vendor derives from food sales. The State agency must obtain and assess the relevant

2

**DRAFT**

information and designate each currently authorized vendor and new vendor applicant as an above-50-percent vendor or a regular vendor.

*Defining "Food Sales"*

State agencies must utilize the following definition of "food sales" when identifying above-50-percent vendors. "Food sales" means sales of all foods that are eligible items under the Food Stamp Program (FSP). These foods are intended for home preparation and consumption and include meat, fish, and poultry; bread and cereal products; dairy products; fruits and vegetables. Food items such as condiments and spices, coffee, tea, cocoa, and carbonated and noncarbonated beverages may be included in food sales when offered for sale along with foods in the four primary categories. Food sales do not include sales of any items that are not approved for purchase with food stamp benefits, such as alcoholic beverages, hot foods, or food that will be eaten on the store premises. The use of this definition does not require that a vendor be authorized by the FSP.

*Current Vendors*

To determine whether a currently authorized vendor meets the above-50-percent criterion in section 17(h)(11)(A) of the CNA, the State agency must calculate annual WIC redemptions as a percentage of the vendor's total annual foods sales revenue. If a vendor was authorized by more than one State agency during the fiscal year under consideration, then the State agency must obtain the amount of WIC redemptions the vendor received from every other State agency that authorized the vendor and use the sum of all the WIC redemptions to calculate the ratio of WIC redemptions to total annual food sales. This calculation must be performed annually by December 31st. A State agency may perform more frequent assessments of some or all vendors as deemed necessary.

The State agency shall use the results of its assessment to classify each vendor as being either a regular vendor or an above-50-percent vendor during the subsequent fiscal year. A State agency may automatically designate as above-50-percent vendors all vendors that have been classified as WIC-only stores. State agencies must include commissaries and pharmacies in the assessment of above-50-percent vendors, unless the pharmacy provides only exempt infant formula or medical foods as defined in section 246.2 of the WIC regulations. Section 17(h)(11)(D)(i) allows a State agency to exempt pharmacies that supply only exempt infant formula or medical foods from competitive price criteria and allowable reimbursement levels. However, pharmacies that provide standard infant formula may not be excluded from the assessment. If WIC redemptions constitute more than 50 percent of the total annual food sales revenue, the vendor must be designated as an above-50-percent vendor.

As an initial step in identifying above-50-percent vendors, the State agency must compare a vendor's WIC redemptions to the vendor's FSP redemptions for the same period. Since most WIC vendors are also FSP-authorized, a comparison of readily available WIC and FSP redemption data will reduce the level of effort a State agency must expend to identify above-50-percent vendors. If a vendor's FSP redemptions exceed its WIC redemptions, **no further**

**assessment would be required.** The vendor would be deemed a regular vendor. Collection of annual revenue from food sales data for the vendor would not be necessary.

The State agency must further assess food sales data for all vendors whose WIC redemptions exceed their FSP redemptions. The State agency must ask each of these vendors to provide the total amount of revenue derived from the sale of foods that can be purchased using food stamp benefits. For all vendors that are not authorized by the FSP, the State agency must provide a list of FSP-eligible items that clarifies the types of foods that may be included in the annual food sales amount the vendor provides to the State agency. The State agency should use the list of eligible and ineligible food items found at the FSP website. The State agency also must request and evaluate verifiable documentation on the store's revenue from food sales (such as tax forms or other written statements). After evaluating the information provided by the vendor, the State agency must calculate WIC redemptions as a percent of total food sales revenue and then classify the vendor as being a regular vendor or an above-50-percent vendor.

If a currently authorized vendor is unable to provide satisfactory documentation of the total annual food sales revenue, the State agency should request a signed affidavit from the vendor reflecting the vendor's self-declared total annual food sales amount, and should request and review the vendor's inventory invoices for FSP-eligible food items purchased during the past year. This should be a one-time self declaration. The State agency is not required to make an extraordinary effort to determine whether a vendor is an above-50-percent vendor, but should use its best judgment to classify the vendor after reviewing available information provided by the vendor, including information already on file (such as the size and location of the store). At its discretion, a State agency may require that the vendor provide acceptable documentation of food sales for a specific period of time (e.g., three or six months), and then reassess the vendor's status.

The State agency must apprise vendors in the vendor agreement, vendor handbook, or other appropriate document that they are responsible to provide acceptable documentation of their total food sales revenue annually upon request. A State agency is only required to request and collect the total food sales amount for vendors whose status could not be determined through the annual comparison of WIC and FSP redemptions.

*Vendor Applicants*

State agencies must assess all new vendor applicants during the vendor selection process and identify those that they expect will be above-50-percent vendors. To conduct the assessment, the State agency must first ask vendor applicants whether they expect to derive more than 50 percent of the store's annual food sales revenue from WIC food instruments. Vendor applicants include a new store location for an owner that currently has a WIC-authorized store, and entirely new vendor applicants with no prior involvement with WIC. If the vendor applicant's answer is "yes," no further assessment would be necessary. The State agency must designate the vendor as an above-50-percent vendor.

The State agency must further assess all vendor applicants that state that they do not expect to derive more than 50 percent of the store's revenue from WIC food instruments using the data

4

**DRAFT**

sources and methodologies listed in the chart on the next page. At its discretion, the State agency may use additional data sources and methodologies. Failure of a vendor applicant to provide documentation requested by the State agency shall result in denial of the vendor's application.

The indicators shown in the following chart provide the State agency with a composite picture of how the new vendor applicant is likely to operate if the store were authorized. They assume that a new store location is likely to be an above-50-percent vendor if other WIC-authorized stores operated by the same ownership entity currently are above-50-percent vendors. The indicators rely on historical and current data that the State agency maintains in its vendor management system and relevant documentation provided by the vendor applicant. If the State agency determines that the vendor applicant may be authorized, the State agency shall use the on-site preauthorization visit (required by current WIC regulations at 7 CFR Part 246.12(g)(4)) to confirm that the new store is or is not expected to be an above-50-percent vendor. State agency staff must document the findings of its assessment of each vendor applicant's status as a potential above-50-percent vendor.

The State agency shall monitor all newly-authorized vendors subsequent to authorization to assure that they have been properly designated as being or not being above-50-percent vendors. Such monitoring shall include a comparison of WIC and FSP redemption data and/or a review of WIC redemptions to total food sales for the six-month period from the date of authorization. The State agency shall notify vendors of this assessment in writing at authorization and the requirement to provide proper written documentation of their total food sales during the six-month period.

Establishing Competitive Price Criteria for Above-50-Percent Vendors

In accordance with section 17(h)(11)(A)(i) of the CNA, a State agency that authorizes any above-50-percent vendors must apply competitive price selection criteria to these vendors that are based on the prices charged by vendors that are not above-50-percent vendors. If a State agency elects to group above-50-percent vendors in a separate peer group(s), the State agency shall use competitive price criteria established for regular vendors to determine whether the prices offered by above-50-percent vendors are competitive, and thus whether they may be selected for authorization. The State agency has the discretion to determine which regular vendors to use for this purpose. (See the paragraph on *Identifying Comparable Vendors* on page 9 of this guidance.)

If a State agency places above-50-percent vendors in peer groups with regular vendors, the State agency shall exclude the prices of the above-50-percent vendors in computing competitive price criteria for the peer groups. After determining the competitive price criteria for regular vendors, the State agency shall use the criteria to evaluate the competitiveness of the prices of the above-50-percent vendors assigned to the peer group. If the prices of the above-50-percent vendors exceed the competitive price criteria established for the peer group, then the above-50-percent vendors may not be authorized unless they are needed to ensure participant

**DRAFT**

## Data Sources and Methodologies for Determining Whether a Vendor Applicant is Expected to be an Above-50-Percent Vendor

| Indicator | Data Sources and Methodologies |
|---|---|
| The vendor applicant currently has one or more stores where WIC food sales are more than 50 percent of total annual food sales. | 1) Determine if the vendor (i.e., the ownership entity) currently has one or more stores that are authorized by the State agency or by another State agency to accept WIC food instruments. 2) If the vendor (the ownership entity) has one or more stores that are authorized to accept WIC food instruments, determine whether any of these stores (including the applicant store location, if it is authorized by another State agency) are above-50-percent vendors. |
| The vendor applicant is expected to accept WIC as the primary form of payment for the sale of supplemental food items. | 1) Request the percentage of anticipated food sales by type of payment, i.e., cash, FSP, WIC, and credit/debit. 2) If the applicant store is already open for business, request the total food sales during the last year. To the extent possible, validate the information on the percentage of anticipated food sales by type of payment and/or the total food sales against other data sources. 3) If the vendor (i.e., ownership entity) was previously authorized by the State agency, and the State agency has the necessary historical data (e.g., annual WIC and FSP redemptions, a total food sales amount, documentation that the store was a WIC-only store) determine whether the previously authorized store location(s) was an above-50-percent vendor. |
| The vendor applicant is expected to or currently offers for sale primarily WIC-authorized food items (i.e., does not offer a variety of foods, including meat, poultry, fish; bread or cereal; vegetables or fruits, and dairy products). | 1) Request inventory invoices to substantiate foods that have been purchased for sale. 2) Determine whether a variety of foods in each of the following four groups will be or are currently being offered for sale on a continuous basis: meats, poultry, or fish; bread or cereal; vegetables or fruits; and dairy. Continuous basis means that on any given day of operation, a store offers for sale and normally displays in a public area no fewer than three different varieties of food items in each of the four categories. 3) Request the percentage of foods intended to be offered for sale in each category, i.e., 15% meat, poultry, or fish; 30% bread or cereal; 30 % fruits and vegetables; 20% dairy products, etc. 4) If the vendor selection process proceeds to the point of a site visit, determine through the site visit whether the percentages provided by the vendor are realistic. |
| The vendor applicant is dependent upon WIC authorization before the store can open for business. | On the vendor application, request the date the store will open for continuous business. |

**DRAFT**

access to supplemental foods. Some regular vendors might also exceed the revised competitive price criteria and likewise must be deemed ineligible for authorization. The State agency must treat all vendors whose prices exceed the competitive price criteria equitably.

If a State agency must authorize vendors whose prices are not competitive because they are needed for participant access purposes, the State agency may not use these vendors' prices to establish competitive price criteria or allowable reimbursement levels for the peer group. The State agency must devise a means to reimburse non-competitive vendors as exceptions to the competitive price criteria and allowable reimbursement levels. FNS believes that exceptions to the established competitive price criteria and allowable reimbursement levels should be rare. Even if the State agency must authorize a vendor whose prices exceed the competitive price criteria, the State agency should seek to secure from the vendor the most competitive prices possible.

Whenever the State agency changes its competitive price criteria, it must make corresponding changes in the allowable level of reimbursement established for each peer group. In accordance with section 17(h)(11)I of the CNA, a State agency may not reimburse a vendor for supplemental foods at a level that would make the vendor ineligible for authorization under the competitive price criteria applicable to the vendor. As discussed below (under *Certification of Vendor Cost Containment System*), the State agency must set allowable reimbursement levels for above-50-percent vendors so that the average payments per food instrument to these vendors do not exceed average payments per food instrument to comparable vendors.

A State agency that authorizes (i.e., authorizes new applicants or continues the authorization of) any above-50-percent vendors after December 30, 2005, must be in compliance with the requirements to establish new competitive price criteria and allowable reimbursement levels for above-50-percent vendors and must present documentation of compliance to FNS. (See *Certification of Vendor Cost Containment System* below for specific requirements.) FNS expects that the new requirements related to competitive price selection criteria will result in the application of lower competitive price and allowable reimbursement levels to above-50-percent vendors and potentially to some regular vendors as well. State agencies should make appropriate changes in the vendor agreement and advise vendors of these changes as required by the notification provisions in section 246.12(h)(7) of the WIC regulations.

Participant Access Determination

WIC regulations at 7 CFR Part 246.12(g) require State agencies to authorize an appropriate number and distribution of vendors in order to ensure adequate participant access to supplemental foods and to ensure effective State agency management, oversight, and review of its authorized vendors. In making the decision to authorize or not authorize any above-50-percent vendors, the State agency shall ensure adequate participant access to supplemental foods. In developing its participant access criteria, the State agency must consider the availability of other authorized vendors in the area and any geographic barriers to using such vendors. Further, section 246.4(a)(14)(xiii) of the regulations requires that a description of the participant access determination criteria be included in the State Plan. Each State agency that

7

**DRAFT**

chooses not to authorize above-50-percent vendors shall use the participant access criteria included in its State Plan to determine whether a currently authorized vendor who is an above-50-percent vendor shall retain its authorization, and whether a new vendor applicant who is expected to be an above-50-percent vendor should be authorized for participant access reasons.

### Administrative Review Requirements

Consistent with 7 CFR 246.18(a)(1)(ii) of the WIC regulations, vendors who are denied authorization because the State agency determines that they are expected to be above-50-percent vendors are eligible for an abbreviated administrative review. The validity and appropriateness of the State agency's *criteria* for determining whether a vendor applicant is expected to be an above-50-percent vendor are <u>not</u> subject to administrative review, as stated in section 246.12(a)(1)(iii)(A). In addition, the State agency's participant access determination is not subject to administrative review as stated in section 246.18(a)(1)(iii)(B) of the WIC regulations. The administrative review is solely to determine if the State agency properly applied the criteria based on the documentation provided by the vendor applicant.

**DRAFT**

## VENDOR COST CONTAINMENT CERTIFICATION

### Legislative Provision

Section 17(h)(11)(E) of the CNA contains a new requirement that a State agency that elects to authorize above-50-percent vendors shall demonstrate to the Department, and the Department shall certify, that the State agency's competitive price criteria and allowable reimbursement levels do not result in average payments per food instrument to above-50-percent vendors that are higher than average payments per food instrument to comparable vendors that are not above-50-percent vendors. State agencies that plan to utilize above-50-percent vendors after December 30, 2005, must obtain prior certification from FNS that they meet this legislative requirement.

### The Purpose of Certification

Vendor cost containment certification verifies that the State agency meets the requirement in section 17(h)(11)(E) of the CNA. This requirement is one of two cost neutrality requirements contained in law. According to section 17(h)(11)(A), to be cost neutral means that above-50-percent vendors do not result in higher food costs to the program than would result if participants were to transact their food instruments at regular vendors (i.e., vendors other than above-50-percent vendors). Achieving cost neutrality begins with the selection of vendors that offer the program the most competitive prices in their geographic area. It proceeds with the application of a reimbursement methodology that limits payments to levels consistent with the competitive price levels applied to the vendors at authorization.

During the certification process, a State agency that authorizes above-50-percent vendors must demonstrate to FNS that it has an effective methodology for selecting vendors with competitive prices and for paying these vendors competitive prices subsequent to authorization. Just as the State agency must compare the prices of above-50-percent vendors against the prices of regular vendors for selection, the State agency also must set the maximum reimbursement levels for above-50-percent vendors based on those of regular vendors. In accordance with section 17(h)(11)(E) of the CNA, the average payment per food instrument that a State agency makes to above-50-percent vendors may not exceed the average payment per food instrument to comparable vendors. This second cost neutrality requirement works in tandem with the first. Through consistent application of this second cost neutrality principle in the food instrument redemption process, the State agency would satisfy the overarching cost neutrality requirement in section 17(h)(11)(A) of the CNA.

### Identifying Comparable Vendors

Section 17(h)(11) of the CNA gives the State agency discretion to define comparable vendors as it deems appropriate, as long as the State agency achieves cost neutrality of above-50-percent vendors. The State agency may identify different categories of comparable vendors in its peer group system for different types of above-50-percent vendors, and thus may reimburse such vendors at different levels. In identifying vendors that are comparable to above-50-percent vendors, the State agency must consider vendors in the same geographic area.

**DRAFT**

The State agency may not apply a single statewide allowable reimbursement amount per food instrument type to all above-50-percent vendors, but must establish allowable reimbursement levels for different above-50-percent vendors that reflect the price differences between comparable vendors in the State agency's vendor peer group system.

## Calculating Average Food Instrument Payments

To meet the requirement in section 17(h)(11)(E) of the CNA, the State agency must calculate the average redemption amount for each type of food instrument redeemed by each grouping of regular vendors in its vendor peer group system and for each grouping of above-50-percent vendors. To calculate average payments per food instrument, the State agency must include either all food instruments redeemed by all authorized vendors or a representative sample of the redeemed food instruments. The State agency must add the redemption amounts for all redeemed food instruments of the same type and divide the sum by the number of food instruments of that type. If the State agency does not designate food instruments by type, it must calculate the average payment for each distinct combination of foods prescribed on the food instrument.

The State agency may calculate average payments per food instrument type for groups of vendors that meet the above-50-percent criterion and comparable groups of regular vendors (e.g., all above-50-percent vendors with a sole proprietor in a particular county versus all regular vendors with a sole proprietor in the same county), or the State agency may compare average payments for each food instrument type for individual vendors. The State agency's request for certification must explain and include data to illustrate how the State agency calculates and compares average payments per food instrument for above-50-percent vendors and regular vendors.

## Submission of the Request for Certification

Not later than October 31, 2005, each State agency that elects to authorize any above-50-percent vendors, including currently authorized vendors and new vendor applicants, must submit a written request for certification to the FNS Regional Office that contains, at a minimum, a detailed explanation of the following:

1. The methodology the State agency used to derive new competitive price levels for regular vendors, which may not include the prices of above-50-percent vendors; and any other changes the State agency made to the competitive price criteria to secure the lowest prices for supplemental foods (e.g., requiring a vendor's prices to be within 5 percent of the average prices for the peer group, rather than within 10 percent);

2. The State agency's methodology for establishing allowable reimbursement levels for regular vendors and above-50-percent vendors, including:

   a. How the allowable reimbursement levels are linked to the competitive price criteria applied to the vendors at authorization to ensure that vendors continue to meet the competitive price criteria throughout the authorization period;

10

**DRAFT**

    b.  How the State agency will ensure that average payments to above-50-percent vendors do not exceed average payments to comparable vendors;

    c.  Whether the State agency has exempted any above-50-percent vendors from the competitive price criteria and allowable reimbursement levels for participant access reasons, and if so, how many vendors have been exempted;

    d.  How the State agency applies peer-group-specific maximum allowable amounts to food instruments during the food instrument redemption process; and

    e.  If the State agency includes a factor to reflect wholesale price fluctuations, how the State agency derived this amount.

3. The State agency's methodology for grouping above-50-percent vendors in its peer group system (i.e., separately or in peer groups with regular vendors) and how the State agency identifies comparable vendors for each group of above-50-percent vendors;

4. If the State agency plans to exempt any *non-profit* above-50-percent vendors (except non-profit health or human services agencies or organizations such as Catholic Charities) from competitive price criteria and allowable reimbursement levels, explain:

    a.  The reason the State agency decided to exempt such vendors (i.e., the benefits to the program) and the number of non-profit vendors exempted;

    b.  Whether the non-profit above-50-percent vendors are needed to ensure participant access to supplemental foods;

    c.  How the prices of the non-profit vendors compare to those of other vendors in their geographic area that are subject to competitive price criteria and allowable reimbursement levels; and

    d.  How the State agency established the level of reimbursement for the non-profit above-50-percent vendors that it has exempted.

5. Confirmation that the competitive price criteria and allowable reimbursement methodologies described in the State agency's submission to FNS have been fully implemented.   If the State agency has not fully implemented revised competitive price and allowable reimbursement methodologies, the State agency must provide the current status of its efforts to meet the requirements of section 17(h)(11)(E) of the CNA and its timetable for achieving full implementation;

6. Whether the State agency has exempted above-50-percent *pharmacy* vendors from competitive price criteria and allowable reimbursement levels, and if so, confirm that these pharmacies provide only exempt infant formula and medical foods as defined in section 246.2 of the WIC regulations; and

7. The data specified on the following three charts to demonstrate that the State agency's methodologies for establishing and implementing competitive price criteria and allowable reimbursement levels are achieving the required outcomes.  The State agency may provide additional data, if desired.

11

**DRAFT**

Every State agency that chooses to authorize any above-50-percent vendors must have a means of monitoring average monthly redemptions to such vendors as compared to comparable vendors. FNS expects that each State agency will generate a report or other appropriate monitoring tool for this purpose. Attach a copy of the report(s) that the State agency plans to use to verify that its allowable reimbursement levels are operating effectively.

If the State agency does not have such a report, describe the State agency's plans to develop and implement a report for monitoring average food instrument redemption amounts of above-50-percent vendors and comparable vendors. Include target dates for implementation, a description of the report contents or fields, and any other relevant information.

## Notification of Certification

Upon receipt of the State agency's request for certification, the FNS Regional Office will review the information submitted and any other relevant data to determine whether the State agency's competitive price criteria and allowable reimbursement levels established pursuant to section 17(h)(11)(E) of the CNA do not result in higher average payments per food instrument to above-50-percent vendors than to comparable regular vendors. If FNS determines that the State agency's competitive price criteria and allowable reimbursement levels meet this requirement, then FNS will notify the State agency that it has received certification. If the State agency fails to demonstrate that its methodology for establishing and implementing competitive price criteria and allowable reimbursement levels meets the requirement of section 17(h)(11)(E) of the CNA, then FNS will disapprove the State agency's request for certification.

A State agency that fails to receive certification will be required to take the following actions until certification is received:

1. After December 30, 2005:
   a. May not authorize any new above-50-percent vendors unless such vendors are needed for participant access; and
   b. May not pay above-50-percent vendors more than the statewide average payment per food instrument (by type). The Statewide average payment may not be calculated using data from above-50-percent vendors.

2. By June 30, 2006: Must have established peer groups consistent with criteria established by FNS

3. By September 30, 2005: Must have established acceptable peer groups, competitive price and appropriate reimbursement methods, including methods to ensure that above-50-percent vendors are not paid more than comparable vendors.

12

**DRAFT**

## DATA FOR WIC VENDOR COST CONTAINMENT CERTIFICATION

**Part I.** **Please provide the following information on the regular vendors and the above-50-percent authorized by the State agency as of August 30, 2005.**

| | |
|---|---|
| 1. How many authorized regular vendors did the State agency have as of August 30, 2005? | 1. |
| 2. For all of these regular vendors combined, what was the total amount of WIC redemptions paid in August 2005? | 2. |
| 3. How many above-50-percent vendors did the State agency have as of August 30, 2005. | 3. |
| a. Non-pharmacy above-50-percent vendors | a. |
| ▪ Number of WIC-only stores | ▪ |
| ▪ Number of other types of above-50-percent vendors (excluding pharmacies) | ▪ |
| b. Above-50-percent pharmacy vendors | b. |
| c. Total above-50-percent vendors (sum of a and b) | c. |
| 4. What was the total amount of redemptions paid to these above-50-percent vendors in August 2005? | 4. |
| a. Non-pharmacy above-50-percent vendors | a. |
| b. Above-50-percent pharmacy vendors | b. |
| c. Total above-50-percent vendors | c. |
| 5. How many peer groups of above-50-percent vendors (either separate peer groups or groups with regular vendors) has the State agency identified? | 5. |
| 6. How many peer groups of comparable vendors for these above-50-percent vendors has the State agency designated? | 6. |

# DRAFT

## DATA FOR WIC VENDOR COST CONTAINMENT CERTIFICATION

**PART II.** In the following chart, please describe all vendor peer groups and identify the regular vendors that are comparable to each group of above-50-percent vendors.

| No. (1) | Description (e.g., supermarkets, chain stores, pharmacies) (2) | Number of Vendors in Peer Group | | | Comparable Vendors Peer Group Number (6) |
| | | Regular Vendors (3) | Above-50% Vendors (4) | Total (5) | |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |

Peer Group

Instructions:

Column 1 – Assign a sequential number to each peer group.
Column 2 – Describe the vendors in the peer group.
Column 3 – Insert the number of authorized vendors that are regular vendors.
Column 4 – Insert the number of above-50-percent vendors currently authorized.
Column 5 – Insert the total number of authorized vendors. This number should be the sum of columns 4 and 5, since the State agency must identify each vendor as being either a regular vendor or an above-50-percent vendor.
Column 6 – For each peer group that contains above-50-percent vendors, insert the number of the peer group that contains comparable regular vendors. The comparable vendor peer group is the peer group that the State agency uses to derive the competitive price criteria and maximum reimbursement levels that it applies to the above-50-percent vendors. If above-50-percent vendors are placed in a peer group with regular vendors, then the number in column 1 should be the same as that in column 6. If above-50-percent vendors are in separate peer groups, then the number in column 1 will be different from that in column 6.

14

# DRAFT

## DATA FOR WIC VENDOR COST CONTAINMENT CERTIFICATION

**PART III.** Using the format below, provide the requested redemption data for the calendar month of August 2005 for the ten (10) most frequently redeemed food instrument types. Then indicate how these amounts have changed or will change with the implementation of the revised competitive price criteria and allowable reimbursement amounts. Prepare a separate chart for each group of above-50-percent vendors identified in chart for PART II.

Chart for: <u>Above-50-Percent Vendors in Peer Group No.</u> _____

| Food Instrument Type/Number and Description (1) | Number of Food Instruments Redeemed (2) | Average Redemption Price Per Food Instrument for August 2005 | | Average Variance in Price Between Above-50% Vendors and Comparable Regular Vendors (5) | Average Redemption Price Per Food Instrument for (Insert Month and Year) | |
|---|---|---|---|---|---|---|
| | | Above-50% Vendors (3) | Comparable Regular Vendors (4) | | Above-50% Vendors (6) | Comparable Regular Vendors (7) |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

_Instructions:_

Begin by identifying the above-50-percent vendors to which the data in the chart refer. Select the corresponding peer group number for the above-50-percent vendors and write it on the line at the top of the chart. All data in the chart should pertain only to the above-50-percent vendors in the peer group and the comparable regular vendors. Complete a separate chart for each group of above-50-percent vendors and comparable vendors identified in the chart for PART II.

Column 1 – Insert the food instrument (FI) type or number and list the foods included on the FI. Include no more than two infant formula food instrument types, but complete the chart using the next most frequently redeemed food instrument types.

15

**DRAFT**

Column 2 – For each type of FI identified in column 1, insert the number of food instruments redeemed (paid) in August 2005 (the calendar month). If the State agency implemented competitive price criteria and allowable reimbursement levels that comply with the new vendor cost containment requirements before August 2005, then select the calendar month before the State agency applied the new competitive price criteria and allowable reimbursement levels.

Columns 3 & 4 – Insert the average food instrument redemption amount for the above-50-percent vendors and for the regular vendors that the State agency has identified in the chart for Part II as comparable vendors.

Column 5 – Subtract the amount in column 4 from the amount in column 3 and enter the difference here. If the amount in column 3 is less than that in column 4, enter the difference as a negative dollar amount.

Column 6 – Insert the average food instrument redemption amount for above-50-percent vendors *after* the State agency has applied the revised competitive price criteria and allowable reimbursement levels. If the State agency has implemented new competitive price criteria and allowable reimbursement levels before submitting its request for certification to FNS, then the data in column 6 should be actual redemption data for the above-50-percent vendors and comparable regular vendors. Insert the calendar month(s) to which the data pertain. If the State agency does not have actual redemption data, then the State agency must estimate the new average redemption amounts.

Column 7 – Insert the average redemption amounts for the corresponding group of comparable vendors. If the State agency has not yet implemented its revised methodologies, insert the target date to which the estimated average redemption amounts would apply. In the narrative that accompanies this data, discuss in detail the rationale for the State agency's estimated average redemption amounts. The average redemption amount for above-50-percent vendors may not exceed the average redemption amount for comparable vendors.

16

**DRAFT**

## Maintaining the Cost Neutrality of Above-50-Percent Vendors

The State agency must maintain effective competitive price criteria and allowable reimbursement levels throughout the certification period. Annually the State agency shall provide data required by FNS in the State Plan to demonstrate whether above-50-percent vendors authorized during the previous fiscal year were cost neutral. FNS shall consider that above-50-percent vendors are cost neutral if the average redemption price per food instrument, by type, for all above-50-percent vendors does not exceed the average redemption price per food instrument for all regular vendors.

To assess cost neutrality of above-50-percent vendors, the State agency must compute statewide average redemption amounts for each type of food instrument redeemed by above-50-percent vendors. The average cost per food instrument must be weighted to reflect the relative proportion of food instruments redeemed by each category of vendors in the peer group system. Using a weighted average takes into account WIC participants' shopping patterns by giving the most weight to redemptions of vendors with the largest number of redeemed food instruments, as shown in the chart below. State agencies that obtain FNS approval to use an alternative cost containment system also must use this procedure to assess the cost neutrality of above-50-percent vendors. FNS will provide further guidance on this requirement.

A State agency must monitor average payments to above-50-percent vendors compared to all regular vendors at least quarterly and, if necessary, adjust payment levels, recoup excess payments, or take other actions to ensure that these vendors are cost neutral to the program. Appropriate action may include terminating vendor agreements with above-50-percent vendors whose prices are least competitive, unless a particular vendor is needed to ensure adequate participant access to WIC foods.

## Term of the Certification

FNS certification that a State agency's competitive price criteria and allowable reimbursement levels meet the requirements of section 17(h)(11)(E) of the CNA will remain in effect until the State agency fails to demonstrate that it still meets the requirements. At least every three years following the initial certification, the State agency must demonstrate that it continues to meet vendor cost containment requirements. FNS will require annual submission of redemption data to demonstrate that above-50-percent vendors do not cost the program more than if participants transacted their food instruments at regular vendors.

17

**DRAFT**

## EXEMPTION FROM THE VENDOR PEER GROUP SYSTEM REQUIREMENT

### Legislative Provision

Section 17(h)(11)(A)(ii) of the CNA authorizes FNS to grant a State agency an exemption from the requirement to establish a vendor peer group system under the following two conditions:

1. The State agency elects not to authorize any above-50-percent vendors *and* demonstrates to FNS that establishing a vendor peer group system would be inconsistent with the efficient and effective operation of the program, or that the State agency's alternative cost containment system would be as effective as a peer group system; or

2. The State agency authorizes above-50-percent vendors whose WIC redemptions comprised less than five percent of the total WIC redemptions (dollars) in the year preceding a year in which the exemption is effective. (For example, total redemptions for above-50-percent vendors in fiscal year 2005 must be less than five percent of total redemptions in order for a State agency to qualify for an exemption from the peer group system requirement in fiscal year 2006.) The State agency also must demonstrate that its alternative vendor cost containment system would be as effective as a vendor peer group system and would not result in higher costs if program participants transact their food instruments at above-50-percent vendors rather than at regular vendors.

### Requesting an Exemption

A State agency that requests an exemption from the vendor peer group system must demonstrate to FNS that it meets one of the conditions in section 17(h)(11)(A)(ii) of the CNA by submitting the following information:

1. A State agency that elects not to authorize any above-50-percent vendors must submit written documentation that:

   a. Confirms that the State agency has assessed all authorized vendors and new vendor applicants and determined that it (1) does not currently authorize any above-50-percent vendors; and (2) has established policies and procedures to prevent authorization of any new vendor applicants that are expected to be above-50-percent vendors, and to terminate the vendor agreement with any new vendor that is determined to be an above-50-percent vendor subsequent to authorization;

   b. Describes the State agency's alternative vendor cost containment system, including how the system ensures that the State agency—

      (1) Authorizes vendors that offer competitive prices for supplemental foods compared to currently authorized vendors and other vendor applicants; and

18

**DRAFT**

(2) Reimburses vendors subsequent to authorization at levels that are consistent with the competitive price criteria applied to the vendor at authorization.

c.  Demonstrates either of the following:

(1) That implementing a peer group system would be inconsistent with the efficient and effective operation of the program. For example, a State agency might explain that it has too few authorized vendors to establish effective peer groups or that the degree of variability in food prices and types of vendors is so minimal that the costs of implementing a vendor peer group system would outweigh any potential benefits to the program.

(2) That its alternative vendor cost containment system would be as effective as a peer group system. The State agency must explain how it applies competitive price requirements to currently authorized vendors and new vendor applicants under its alternative cost containment system. The State agency's submission should include relevant data (such as current redemption data) and documents (e.g., excerpts from the vendor agreement that describe competitive price requirements and terms of reimbursement) to support its case.

2. A State agency that elects to authorize any above-50-percent vendors must submit written documentation that:

a.  Substantiates that fiscal year 2005 redemptions to above-50-percent vendors authorized by the State agency comprised less than five percent of the total WIC redemptions in fiscal year 2005. (Redemption data will apply to the year prior to the year for which the State agency requests an exemption.) This shall include the total dollar amount and percent of redemptions to above-50-percent vendors and the total amount of redemptions to all WIC vendors;

b.  Demonstrates that the State agency has an effective process for monitoring the percent of redemptions to above-50-percent vendors on a monthly basis to ensure that this percentage remains less than five percent on average; and

c.  Demonstrates that the State agency's alternative cost containment system would be as effective as the vendor peer group system and would not result in higher food costs if program participants redeem food instruments at above-50-percent vendors rather than at regular vendors. The State agency shall apply the weighted mean methodology described on page 16 of this guidance to assess whether or not above-50-percent vendors result in higher costs to the State agency than regular vendors.

The justification must explain how the State agency applies competitive price criteria and allowable reimbursements levels to currently authorized vendors and new vendor applicants; and include the average payments that the State agency makes to above-50-percent vendors and to regular vendors for either the

**DRAFT**

standard food packages or the ten most frequently issued food instrument types for women, infants, and children.

The State agency should submit its request for exemption to FNS by October 31, 2005. FNS will review the information submitted by the State agency and determine whether the State agency qualifies for an exemption. A State agency that obtains an exemption from the peer group requirement still must implement competitive pricing criteria for vendor selection and allowable reimbursement levels to limit payments to vendors.

Term of an Exemption

An exemption from the peer group requirement would remain in effect: until the State agency no longer meets the condition in section 17(h)(11)(A)(ii) of the CNA on which the exemption was based; until FNS revokes the exemption; or for three years, whichever occurs first. During the period of the exemption, the State agency must provide to FNS annually in the State Plan documentation that it either authorizes no above-50-percent vendors, or that such vendors' redemptions continue to represent less than five percent of total WIC redemptions and do not result in higher costs to the State agency than if participants used regular vendors.

**DRAFT**

## VENDOR PEER GROUPS

Section 17(h)(11)(A) gives State agencies broad latitude to implement vendor peer group systems that meet their individual circumstances. FNS believes that State agencies need to determine which peer group criteria best differentiate between and account for variations in prices among vendors in their respective geographic areas. Data on the vendor peer group systems established by many State agencies indicate that many State agencies use geography criterion and most use two or more criteria to define peer groups. FNS is requiring State agencies to use at least two criteria, one of which must be an indicator of geography. Sections 17(h)(11)(B) and (C) of the CNA, require State agencies to consider participant access by geographic area in establishing competitive price criteria and allowable reimbursement levels, respectively. State agencies that can demonstrate that using a single criterion substantially accounts for differences in prices among vendors and that adding a second criterion would not further contain food costs may request FNS approval to use one criterion.

## DETERMINING COMPETITIVE PRICE

To be added.

## DATES

Effective Date

The effective date of all requirements in section 17(h)(11) of the CNA is October 1, 2004.

Implementation Date

The implementation date of all requirements in section 17(h)(11) of the CNA is December 30, 2005.

21