**EXHIBIT B**

## OLSSON, FRANK AND WEEDA, P.C.
ATTORNEYS AT LAW
SUITE 400
1400 SIXTEENTH STREET, N.W.
WASHINGTON, D.C. 20036-2220
(202) 789-1212
FACSIMILE (202) 234-3550

PHILIP C. OLSSON
RICHARD L. FRANK
DAVID F. WEEDA (1945-2001)
DENNIS R. JOHNSON
ARTHUR Y. TSIEN
JOHN W. BODE*
STEPHEN D. TERMAN
MARSHALL L. MATZ
MICHAEL J. O'FLAHERTY
DAVID L. DURKIN
NEIL F. O'FLAHERTY
PAMELA J. FURMAN
BRETT T. SCHWEMER
TISH E. PAHL
ROBERT A. HAHN

*PRACTICE WITHIN THE DISTRICT OF COLUMBIA
IS LIMITED TO MATTERS AND PROCEDURES
BEFORE FEDERAL COURTS AND AGENCIES

STEPHEN L. LACEY
EVAN P. PHELPS
VALERIE B. SOLOMON
JOLYDA O. SWAIM
KATHRYN E. BALMFORD

COUNSEL
NAOMI J.L. HALPERN

OF COUNSEL
JUR T. STROBOS
JACQUELINE H. EAGLE
KENNETH D. ACKERMAN
MARK L. ITZKOFF
DAVID A. BIEGING

SR. GOVERNMENT AFFAIRS ADVISOR
JOHN R. BLOCK
CHARLES W. STENHOLM
BRIAN E. JOHNSON
SALLY S. DONNER

August 11, 2005

**BY ELECTRONIC MAIL**

Mr. Dean Clancy
Associate Director
Human Resource Programs
Office of Management and Budget
1650 Pennsylvania Avenue, N.W.
Washington, D.C. 20502

Dear Mr. Clancy:

Again, thank you for the time and consideration you generously gave to meeting with leading owners of California WIC-Only stores (WIC stores) and me on June 22, 2005. This letter provides information that will facilitate understanding of the role and practices of WIC stores, summarizes the positions we outlined in that meeting, and conveys one important refinement in our policy recommendations. This letter is sent on behalf of the Nutritional Grocers Association of California (NGAC), and the newly formed National Women, Infants and Children Grocers Association (NWGA), a national trade association representing WIC stores.

## SUPPLEMENTAL INFORMATION

1. WIC STORES are stores that sell primarily WIC food package items to WIC program participants. Many, but not all WIC stores, only accept payment in the form of WIC vouchers. A majority of WIC stores are minority owned, primarily Hispanic owned, privately held "small businesses." Female ownership is common and the vast majority of WIC store employees are former WIC participants.

2. COMPETITION is robust between WIC stores, as well as between WIC stores and other WIC vendors. WIC stores compete with conventional vendors by providing WIC participants a preferable shopping experience, particularly in redeeming WIC vouchers. WIC stores assure that embarrassment and stigma are avoided in redemption of WIC

Letter to Mr. Dean Clancy
August 11, 2005
Page 2

vouchers. GAO has documented that negative shopping experiences are a leading barrier to WIC participation. WIC stores have personnel with language skills of the community (Spanish, Russian, Hmong, and other languages) and gear their operations to assist with the accurate, easy redemption of vouchers for any authorized food package item. On the other hand, conventional vendors have a significant advantage since the limited product inventory of WIC stores assures that all WIC store customers also shop in conventional grocery stores. To minimize this disadvantage, WIC stores generally locate close to WIC clinics and in neighborhoods with substantial WIC populations that are poorly served by conventional grocers. Aggressive competition between WIC stores and conventional vendors has also been expressed in policy advocacy by conventional WIC vendors and their employee unions seeking to impose unique regulatory restrictions on competitively priced WIC stores.

3. INCENTIVES are complimentary products provided to customers. FNS has also suggested that customer services should be considered incentives. Incentives typically take the form of free food items (typically ethnic food items such as tortillas or rice; or "buy one, get one free" promotions), or inexpensive household items. In California inner city locations, both WIC stores and conventional vendors provide transportation services to customers. In states that have poorly managed WIC vendor cost (California is the primary example), some vendor competition has taken the form of lavish incentives from both WIC stores and conventional vendors. Incentives are a marketing activity that is paid for by the store, not the WIC Program. Outside of California, WIC stores generally do not employ incentive marketing practices. However, incentive marketing is not strictly a reflection of poor vendor cost containment, but the marketplace as well. California conventional vendors engage in incentive marketing practices that are uncommon in other parts of the country. WIC stores should not be prohibited from engaging marketing practices that their conventional store competitors employ.

4. WIC STORE COST is highly variable. The assertion that all WIC stores have prices far above comparable stores and set their prices at the maximum redemption amount permitted by the state is a falsehood that stands in stark contrast to all available data. In states where vendor cost containment has been closely managed, WIC store costs are not significantly different from costs of comparable vendors. Particularly in California where maximum redemption levels are relatively high, many WIC stores have prices significantly below maximum redemption levels. Attached for your review is the most recent data available regarding WIC vendor redemptions in California. Please note that approximately 25% of WIC store redemptions were below 95% of the maximum redemption rate. Also, almost 30% of redemptions in excess of 95% of the maximum redemption rate were not at WIC stores. It should be no surprise that conventional vendors with sizable WIC customer populations would take advantage of high maximum

Letter to Mr. Dean Clancy
August 11, 2005
Page 3

    redemption amounts, while using other items as loss leaders. Thus, both equity and the need for optimal vendor cost containment compel inclusion of all vendors in cost containment programs, as the law provides. *Attachment A: Summary of California WIC vendor food costs, by type of vendor, June 2005.*

5.   WIC STORE MORATORIUM is a patently discriminatory and ineffective cost containment strategy. The moratorium does not distinguish between WIC stores according to pricing. At least some WIC store companies with low costs have been denied authorization for new stores that had been leased prior to proposal of the moratorium. Meanwhile conventional vendors with records of higher pricing have been authorized. Furthermore, the moratorium is not presented as an interim measure; there has been no expression of intention from the Administration that the moratorium should conclude upon implementation of the vendor cost containment regulations. Implementation of the moratorium is also a concern. States have cited the moratorium as authority for denying WIC stores permission to transfer or relocate stores that are already operating, an act that is clearly outside the scope and intent of the moratorium.

## SUMMARY OF POLICY RECOMMENDATIONS

1.   REQUIRE ANY STATE WITH EXCESSIVE MAXIMUM VOUCHER REDEMPTION LEVELS TO LOWER THOSE LEVELS. As we explained in our meeting, NGAC petitioned the State of California one year ago to reduce maximum redemption amounts by 5%. Had California done so, substantial food cost savings would have been realized, as *Attachment A* makes clear.

2.   AVOID WHOLESALE REMOVAL OF COMPETITIVELY PRICED WIC STORES. WIC stores with competitive pricing should have a continued role in the WIC Program. Summarily removing WIC stores from the WIC Program was specifically denounced not only in the policy statements of all stakeholders, but also in the legislative history of the WIC and Child Nutrition Reauthorization Act of 2004 (2004 Amendments). Instead, the objective of the 2004 Amendments was to provide tools that permit effective cost containment of all vendors. Based on recently released guidance, USDA's draft cost containment rule now under review at OMB would apparently force states to bear a heavy regulatory burden unless the state summarily removes all WIC stores from its program. For many states, there may be no practical alternative to summarily removing all WIC stores from their program. *Attachment B: Statement of Chairman Boehner explaining vendor cost containment provisions of the 2004 Amendments.*

3.   SUPPORT VENDOR COST CONTAINMENT THAT LIMITS FOOD COSTS TO LEVELS OF COMPARABLE STORES. Vendor cost containment is critical to fiscal

Letter to Mr. Dean Clancy
August 11, 2005
Page 4

responsibility and the well being of the WIC Program. We support vendor cost containment that applies to all WIC vendors, as noted above. As explained by Chairman Boehner in his description of the cost containment provisions of the 2004 Amendments, vendor cost containment applies to all WIC vendors. To the extent that peer groupings are adopted by states, WIC stores should be grouped with comparable stores.

4. MORATORIUM should be clarified to assure that it does not prevent relocation or transfer of WIC stores. Further, the moratorium should be refined to permit opening new WIC stores by WIC store companies with a record of, and commitment to, competitive pricing. Finally, the moratorium should end upon implementation of the cost containment regulation.

## POLICY REFINEMENT

1. Out of respect for the importance of prompt achievement of vendor cost containment, WIC stores did not previously object to USDA exercising its authority to implement vendor cost containment rules through interim final rulemaking. However, USDA's recently released guidance suggests that the draft cost containment rule now under review at OMB would require states to immediately implement a burdensome regulatory scheme unless the state summarily removes all WIC stores from the program. Such a regulatory scheme would be wholly inconsistent with the intent of the 2004 Amendments and hostile to the best interests of the WIC Program, as well as the WIC stores that have lawfully participated in the program. Therefore, we respectfully urge that USDA promptly:

   - require California and any other states where appropriate to reduce maximum redemption amounts as appropriate; and
   - publish a **proposed, rather than an interim final,** vendor cost containment rule, so that public comment may be considered prior to implementation of the rule.

   We submit that addressing excessive maximum redemption rates would likely achieve more effective vendor cost containment, particularly in FY 06, than attempting implementation of a flawed interim final rule. In addition, providing an opportunity for public comment on the cost containment rule would likely assist USDA in avoiding potential grave errors. An opportunity for particularly rich public comment is available, as both the Economic Research Service and the General Accounting Office have initiated studies of WIC vendor cost containment, the results of which may be available to enhance public comment on the cost containment rule. Thus, without sacrificing vendor cost containment objectives, this approach has much greater potential for development of an equitable cost containment rule that advances the interests of the WIC Program.

Letter to Mr. Dean Clancy
August 11, 2005
Page 5

2. Alternatively, if an interim final rule is issued, great care should be taken to assure that the regulatory burden on states is sufficiently light that no state with current WIC store authorizations will decline to permit WIC store participation and that WIC store prices are regulated to a level similar to those of comparable conventional vendors.

\* \* \* \* \*

Thank you for consideration of our views.

Sincerely,

John W. Bode

Attachments
JWB:mhh

cc: Honorable Eric Bost, Under Secretary for Food and Consumer Services
    Mr. Roberto Salazar, Administrator, Food and Nutrition Service
    Ms. Benita Jenkins, NGAC
    Mr. Manuel Castaneda, NGAC
    Ms. EAnn Robinson, NWGA
    Mr. Michael Amiri, NWGA

ATTACHMENT A

Supplemental Nutrition Program for Women, Infants and Children (WIC)

June 2005 Redemption by Store Type

| TYPE | VENDOR COUNT | % VENDOR COUNT | TOTAL FI COUNT | TOTAL REDEMPTION AMOUNT | AVERAGE PRICE OF FI | % OF TOTAL REDEMPTION | TOTAL FI COUNT >=90% | TOTAL REDEMPTION AMT >=90% | TOTAL FI COUNT >=95% | TOTAL REDEMPTION AMT >=95% |
|---|---|---|---|---|---|---|---|---|---|---|
| Chain | 2,057 | 53.30% | 2,656,997 | $29,957,777.53 | $11.28 | 38.89% | 1,033,463 | $15,863,165.74 | 573,329 | $6,312,799.73 |
| Independent | 302 | 7.83% | 348,541 | $3,822,166.69 | $10.97 | 4.96% | 136,828 | $2,143,824.22 | 79,223 | $1,266,730.24 |
| Neighborhood | 878 | 22.75% | 574,824 | $6,515,664.74 | $11.34 | 8.46% | 305,332 | $4,438,651.85 | 214,076 | $3,328,152.32 |
| Other | 1 | 0.03% | 2,705 | $37,193.73 | $13.75 | 0.05% | 1,544 | $27,174.42 | 1,074 | $18,207.62 |
| WIC-Only | 621 | 16.09% | 3,082,901 | $36,693,141.08 | $11.90 | 47.64% | 2,445,149 | $32,132,028.94 | 1,937,556 | $27,005,779.30 |
|  | 3,859 | 100.00% | 6,665,968 | $77,025,943.77 | $11.56 | 100.00% | 3,922,316 | $54,604,844.97 | 2,805,258 | $37,931,669.21 |

FI = Food Instrument

Other = pharmacies, FI issued to any authorized vendor (unknown store type)

ATTACHMENT B

### CHILD NUTRITION AND WIC REAUTHORIZATION ACT OF 2004 --
(Extensions of Remarks - July 08, 2004)
[Page: E1328]

SPEECH OF
HON. JOHN A. BOEHNER
OF OHIO
IN THE HOUSE OF REPRESENTATIVES
THURSDAY, JUNE 24, 2004

Mr. BOEHNER. Mr. Speaker, effective, fair vendor cost containment is critical to ensure that federal funds for the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC) are managed appropriately. It is equally important that this objective be achieved with balance. WIC cost containment measures in S. 2507 should provide assurance that WIC-Only stores have prices that are consistent with traditional retail WIC vendors. It is the intent of Congress that the provisions of this bill be implemented in a fair and equitable manner. Cost containment measures contained in S. 2507 are not to be used to drive vendors out of the program.

Central to the vendor cost containment provisions is the authority to establish a series of vendor peer groups, each with its own competitive price criteria and allowable reimbursement levels. These vendor peer groups recognize that there are economic realities that cause pricing to vary among stores based on store size and geographic location. Large supermarket chains and box stores bypass wholesalers and purchase directly from manufacturers. Other stores, including some WIC-Only stores do not. Much more important, supermarket chains receive significant price discounts and concessions from manufacturers, such as allowances for product promotion, product shelf placement, etc. Independently owned stores, including independently owned chains and most WIC-Only stores, generally do not have the negotiating power to bargain for these benefits. As a result, independently owned stores may spend as much to purchase a product at wholesale as the retail price at a big chain. Because of this, vendor peer groups should allow for somewhat higher prices at small stores, relative to the larger supermarkets.

During implementation of vendor peer groups to achieve cost-containment, it is vital that transparent, objective criteria be used in defining peer group characteristics. It is expected that the criteria that have traditionally been used, the square footage of stores or the number of store registers, will continue to be used as appropriate. However, there is clear authority for adoption of other readily discernible, objective criteria that define appropriate peer group distinctions. WIC sales volume alone may not be an appropriate basis for defining peer groups since it accounts for only a portion of the sales of a given product and, in many situations, would be a poor indicator of factors that affect retail pricing decisions.

Special authority is provided for establishing competitive price criteria and allowable reimbursement levels for WIC-Only stores because those stores are insulated from

marketplace price competition. It is not discriminatory to regulate them in a different manner. However, it would be inconsistent with the intent of Congress to use that unique regulatory treatment to apply a different standard to WIC-Only stores.

The objective of cost containment measures contained in S. 2507 is for WIC Program food costs to be the same regardless of whether program participants redeemed food instruments at a WIC-Only store or comparable market-based vendor. This neutrality objective is expressed by the dual statements in the bill: First, the bill provides for establishing and publishing competitiveprice criteria and allowable reimbursement levels that do not result in higher food costs in WIC-Only stores than in other authorized vendors. Second, the bill is clear that it is not to be construed to compel a State agency to achieve lower food costs in WIC-Only stores than in other authorized vendors. The objective is neutrality; for WIC-Only store costs to be at the same level as costs at comparable market-based vendors.

The language now before the House is different from the language reported by the Senate Committee on Agriculture, Nutrition, and Forestry, but the neutrality objective has been consistently pursued throughout this legislative process. Refinements in that language are intended to remove any question that the objective is cost neutrality.

S. 2507 includes language requiring that competitive price criteria and allowable reimbursement levels will "not result in higher food costs if program participants redeem supplemental food vouchers" at WIC-Only stores than other vendors. This language is a statement of the general cost neutrality objective previously explained. It is not to be construed to compel a rigid cost limitation test. Neither USDA nor individual states can know with absolute certainty or ongoing precision what food prices will be.

In the bill's system of vendor peer groups, provision is made for peer groups for WIC-Only stores. It does not necessarily require a single peer group for WIC-Only stores because not all WIC-Only stores are alike. WIC-Only store peer groups are to have their prices limited to the same levels as prices of comparable market-based stores. The legislation is not prescriptive in specifying characteristics that make stores "comparable." However, as with the regulatory basis for defining peer groups, the basis for comparing peer groups must be objective and readily discernable. Absent compelling basis for a different approach, the same criteria as are used to distinguish between traditional vendor peer groups should be used to distinguish between peer groups in WIC-Only stores and to identify peer groups of comparable market-based stores.

Another provision that warrants close oversight is a prohibition on certain marketing practices for WIC-Only stores. The Department of Agriculture is charged with promulgation of a rule to prohibit WIC-Only stores from giving certain "incentive items" to WIC participants unless the vendor proves that the incentive items were obtained at no cost. The provision was adopted because of reports that some WIC-Only stores have given incentive items that are out of the bounds of traditional vendor

marketing practices. It is the intent of this provision to halt such marketing practices and to ensure that the acquisition of incentive items does not increase WIC Program costs.

This provision is intended to prevent marketing practices that are wholly inconsistent with those that occur in traditional food retailing. It is not intended that this provision would be used to create a situation where WIC-Only stores are prohibited from employing the same marketing practices that traditional stores use to induce customers. The fact that this restriction applies only to WIC-Only stores must not be viewed as an intention to create marketing restrictions that afford traditional vendors a competitive advantage over WIC-Only stores. The Secretary has authority in its implementing rulemaking to require a State Agency to waive restrictions on marketing practices of WIC-Only stores where competing traditional vendors engage in those practices.

The bill makes clear that merchandise of nominal value and food are not to be prohibited. Likewise, this provision does not provide authority to restrict incentives other than free merchandise. Specifically, it does not authorize restriction of services provided to program participants that are attendant to the redemption of supplemental food vouchers, such as assistance in complying with WIC program rules as they select their purchases or assistance in getting the food to their transportation or home, even if traditional vendors do not provide such services. The provision only authorizes restriction of use of non-food merchandise in marketing practices; it does not authorize restriction of retail services. Therefore, the Department of Agriculture rulemaking is to prohibit merchandise gifts that are inconsistent with marketing practices of the traditional food retail trade, but not marketing practices that are employed by other authorized vendors.

Mr. Speaker, I commend my colleagues for including vendor provisions in S. 2507 that will provide for effective cost containment, particularly in WIC-Only stores that are generally insulated from marketplace price competition. This bill does a commendable job in providing fair and balanced regulation. WIC-Only stores have become very popular with WIC participants because of their convenience and service. That should continue.

*END*