IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS, AND CHILDREN GROCERS ASSOCIATION, NUTRITIONAL FOOD DISTRIBUTORS, INC., COUNTY FOOD SERVICES, INC., and DILLARD FOODS, INC.,<br><br>        Plaintiffs,<br>v.<br><br>FOOD AND NUTRITION SERVICE,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-2432 (EGS)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' SECOND SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs National Women, Infants, and Children Grocers Association, Nutritional Food Distributors, Inc., County Food Services, Inc., and Dillard Foods, Inc. respectfully submit this second supplemental memorandum in support of their motion for summary judgment. This memorandum responds to issues raised by *amicus* Center on Budget and Policy Priorities ("CBPP").

\*     \*     \*

This lawsuit challenges FNS's actions in promulgating the Rule and the agency's failure to comply with the APA and the RFA, based on the administrative record before FNS. Nothing in the CBPP *amicus* is relevant to the legal issues before this Court. Instead, CBPP focuses on non-germane matters intended to portray WIC-only stores in a bad light.

CBPP submitted the Declaration of Zoë Neuberger that, among other things, highlighted the involvement of the Nutritional Grocers Association of California ("NGAC") in the legislative process that resulted in the Reauthorization Act. The declaration also included information regarding the pricing and distribution of retail stores in California. NGAC's exercise of its First Amendment right to petition Congress has no bearing on the issues before this Court, just as the significant involvement of CBPP in that process has no relevance. Likewise, the data Ms. Neuberger

provided have no bearing. Accordingly, the Court should disregard the Neuberger Declaration and accompanying material.

CBPP also provided misleading information. Among other things, this included use of severely outdated participation rates for the WIC Program, misleading statements about the discretionary nature of WIC Program funding, and a misleading declaration of an advocacy organization to disparage how the WIC Program operates in California.

Plaintiffs question CBPP's self-portrayal as an organization that produces "balanced, authoritative" materials for use by "a wide range of policymakers and not-for-profit organizations." CBPP Mem. at 1-2. Plaintiffs note CBPP's apparently intentional use of 1998 participation data, when current data are readily available from FNS and well known to CBPP. According to current FNS data, the WIC Program has "achieved full coverage of eligible infants" and serves roughly 93 percent of all eligible recipients. *See* http://www.fns.usda.gov/wic/FAQs/FAQ.htm. Instead, CBPP misleadingly cited 1998 participation data from a National Academy of Sciences ("NAS") report to support the proposition that 27 percent of eligible infants and 62 percent of eligible children do not participate. CBPP Mem. at 3, 4-5. While this NAS report was *published* in 2003, the underlying data are 8 years old. *See* http://fermat.nap.edu/books/030908962X/html/124.html (clearly identifying the data cited by CBPP as 1998 participation rates). The WIC Program has made significant strides in improving participation rates since 1998 and it is disingenuous for CBPP to rely on outdated data.

CBPP also predicted dire consequences based on the fact that WIC is a discretionary program subject to the annual appropriations process and not an entitlement program. CBPP Mem. at 3, 7-8. This criticism is again disingenuous. Ironically, CBPP has consistently opposed conversion of the WIC Program to an entitlement program as a change that would be "highly problematic" and "could have serious adverse effects on the program." CBPP Summary of Issues in Making WIC an

2

Individual Entitlement at 2 (available at http://www.cbpp.org/4-2-02wic.htm). CBPP has preferred the current funding approach of discretionary funds with a contingency reserve because it "avoids the disruptive and adverse impacts on the program of converting WIC to an individual entitlement...." *Id.*

Moreover, there is no realistic likelihood that adequate funds will not be appropriated to ensure that the WIC Program can maintain – and even increase – its exemplary participation rates. For the current fiscal year (FY 2006), Congress has fully funded the program and provided a $125 million contingency reserve. Pub. L. No. 109-97, *see also* H.R. Rep. No. 109-102 at 72 and S. Rep. No. 109-92 at 131. FNS's budget request for FY 2007, which was released on February 6, 2006, would likewise fully fund the program and provide $125 million contingency reserve. *See* The Budget for Fiscal Year 2007, Appendix at 176 (available at http://www.gpoaccess.gov/usbudget/fy07/pdf/appendix/agr.pdf). According to USDA, this level of funding would accommodate an *increase* in participation rates. *See* USDA Press Release No. 0037.06 ("Johanns Outlines President Bush's FY 2007 Agriculture Budget") (available at http://www.usda.gov/wps/portal/!ut/p/_s.7_0_A/7_0_1RD?printable=true&contentidonly=true&contentid=2006/02/0037.xml).

Finally, CBPP relied heavily on the Declaration of Laurie True to describe how state agencies, particularly California, utilize federal funds and how it is imperative for state agencies to have the Rule in place so that they can implement the Reauthorization Act's vendor cost containment provisions. CBPP Mem. at 8, 15-16. Ms. True is the Executive Director of an advocacy organization that has consistently lobbied for the wholesale elimination of WIC-only stores. Moreover, her declaration utilized questionable participation data. As previously noted, current FNS data show that nationally the WIC Program serves essentially all eligible infants and 93 percent of all eligible recipients. *See* http://www.fns.usda.gov/wic/FAQs/FAQ.htm. In other words, with the

3

current participation level of 8.02 million (*see* http://ww.fns.usda.gov/pd/wifypart.htm), there are approximately 600,000 eligible individuals nationally that do not participate, virtually none of whom are infants. Ms. True noted that, in California, funding has been adequate to ensure that there are no waiting lists to participate, but inexplicably she asserts that there are up to 400,000 individuals in California that are eligible but not participating. True Decl. ¶ 8. This means that two-thirds of all non-participating eligible individuals in the U.S. reside in the State of California. Only two conclusions are possible: either Ms. True's figures are grossly exaggerated, or the local California clinics she purports to represent are doing a remarkably poor job at program outreach compared to their peers in other states.

\*   \*   \*

For the reasons discussed above, and in Plaintiffs' prior memoranda, this Court should grant Plaintiffs' motion for summary judgment and deny FNS's motion for summary judgment. This Court should vacate FNS's Rule.

Dated: February 9, 2006                    Respectfully submitted,

                                              Philip C. Olsson, Bar No. 172163
                                              Arthur Y. Tsien, Bar No. 411579
                                              OLSSON, FRANK AND WEEDA, P.C.
                                              1400 16th Street, N.W., Suite 400
                                              Washington, D.C. 20036-2220
                                              (202) 789-1212
                                              (202) 234-3537 (fax)

                                              Attorneys for National Women, Infants, and
                                              Children Grocers Association, Nutritional Food
                                              Distributors, Inc., County Food Services, Inc., and
                                              Dillard Foods, Inc.