UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN, INFANTS, AND CHILDREN GROCERS ASSOCIATION, *et. al.* <br><br> Plaintiffs, <br><br> v. <br><br> FOOD AND NUTRITION SERVICE, <br><br> Defendant. | Civil Action No. 05-2432 (EGS) |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES
OF *AMICUS CURIAE* THE CENTER ON BUDGET AND POLICY PRIORITIES**

*Amicus Curiae* the Center on Budget and Policy Priorities ("CBPP") respectfully submits this supplemental memorandum to respond to two specific factual points raised by plaintiffs in their Second Supplemental Memorandum in Support of Motion for Summary Judgment. Specifically, CBPP addresses whether: (1) any eligible families are not served by WIC and (2) funding will be adequate to serve all eligible applicants in the future.

First, plaintiffs conflated WIC participation *levels* with WIC participation *rates*. The WIC participation *level* measures the actual number of individuals participating in the WIC program. The WIC participation *rate* measures the percentage of eligible individuals who are participating (i.e. the number of WIC participants as a fraction of the total number of individuals eligible to participate in WIC). The key issue at hand is whether there are eligible families not being served by WIC, which would be reflected in a participation rate less than 100 percent.

The National Academy of Sciences ("NAS") report shows that in 1998 only about half of eligible individuals participated in WIC (i.e. a participation rate below 50 percent); for all

eligible individuals to have participated in WIC that year, and, therefore, for the participation rate to equal 100 percent, an additional 6.9 million individuals would have had to participate. *See* Estimating Eligibility and Participation for the WIC Program, National Research Council of the National Academies, Final Report (2003) Table 8-2. Between fiscal year 1998 and fiscal year 2005, the WIC participation level increased by about 660,000 individuals. This participation increase is ten times smaller than the 6.9 million increase that would have been needed to achieve full participation if the number of *eligible* individuals remained constant over that period. However, according to the U.S. Census Bureau's Current Population Survey, between 1998 and 2004 the number of pregnant women and children under 5 with incomes below 175 percent of the poverty level increased by over 4 percent. This increase suggests that the number of WIC-eligible individuals grew as well and that number of WIC participants would have to have grown by even more than 6.9 million to achieve full participation. Thus, CBPP's original point holds: not all eligible families participate in WIC.

      Plaintiffs criticize CBPP's reliance on the NAS report because its estimates of participation rates are based on 1998 data. More recent data on the WIC participation *level* are indeed available, but the NAS report remains the most recent reliable estimate of WIC participation *rates*, which are crucial to determining whether eligible families remain unserved. FNS commissioned the NAS report because FNS' own methodologies for estimating WIC participation rates had been harshly criticized. FNS has since publicly repudiated its earlier methodologies. In response to a question about the number of individuals eligible for WIC that Representative Bonilla, Chair of the House Appropriations Subcommittee that handles WIC funding, submitted in spring 2005, FNS responded, "We do not have a reliable estimate at this time. An expert panel, convened at our request by the National Research Council's Committee

on National Statistics (NRC/CNSTAT), reported that the historical USDA methodology substantially underestimates the number of WIC eligibles . . . FNS is currently considering the recommendations of this important report in order to improve our estimation methodology." The statement on FNS' web page regarding participation rates cited by plaintiffs was an outdated estimate based on FNS' obsolete methodology. (*See* Pls.' Sec. Supp. Mem. in Support of Mot. for Summ. J., p. 2.) The cited statement has since been removed from FNS' web site.

Second, plaintiffs assert that "there is no realistic likelihood that adequate funds will not be appropriated to ensure that the WIC program can maintain — and even increase — its exemplary participation rates." (*See* Pls.' Sec. Supp. Mem. in Support of Mot. for Summ. J., p. 3.) Plaintiffs point to the fiscal year 2007 WIC funding level proposed in the recently released President's budget to support this assertion. They do not note, however, that the proposed funding level assumed full implementation of the interim final vendor cost-containment regulation at issue in this suit, and the $75 million in savings associated with it. If the regulation is not fully implemented, the proposed funding level would be insufficient to accommodate the food costs associated with WIC-only stores.

The President's budget also includes the Administration's estimates of the funding level needed to maintain the current level of services in the WIC program and the funding level proposed by the Administration for fiscal years 2008 through 2011. (*See* Budget of the United States for Fiscal Year 2007, Analytical Perspectives, Table 25-12 and Office of Management and Budget computer run, p. 86, available at http://www.cbpp.org/2-9-06bud-computerrun.pdf.) The proposed funding level for each year after 2007 is lower than the proposed level for fiscal year 2007. By 2011, the proposed funding level is 13 percent lower than the level the budget says would be needed to maintain the current level of WIC services. The budget includes savings

proposals related to WIC funding for nutrition services and administration, which may or may not be adopted by Congress. Even if these changes were adopted, CBPP estimates that under the WIC funding level proposed by the Administration, the WIC program would be able to serve 450,000 fewer participants in fiscal year 2011 than in fiscal year 2006. (This estimate was derived by using the funding level the budget says would be needed to maintain the current level of WIC services to calculate an annual per-participant food cost; the per-participant food cost was then used to calculate how many individuals could be served with the proposed funding level.) If the Administration's savings proposals are not adopted by Congress, the program would be able to serve even fewer participants at the proposed funding level. Although these funding levels are proposals and Congress may provide higher funding levels, there is a very real possibility that future funding levels will not be sufficient to serve all eligible people who apply.

DATED:     February 17, 2006

    WELFARE LAW CENTER, INC.

    */s/ Marc Cohan*

    Marc Cohan, of Counsel
    Mary R. Mannix, of Counsel
    275 Seventh Avenue, Suite 1205
    New York, New York 10001
    Tel: (212) 633-6967

    SONOSKY, CHAMBERS, SACHSE,
        ENDRESON & PERRY, LLP

    */s/ Reid Peyton Chambers*

    Reid Peyton Chambers (D.C. Bar No. 148296)
    Anne D. Noto (D.C. Bar No. 460438)
    1425 K Street, N.W., Suite 600
    Washington, D.C.  20005
    Tel: (202) 682-0240

    Counsel for *Amicus*